# EXHIBIT 6

TRAVIS J. ILES
SECURITIES COMMISSIONER

CLINTON EDGAR
DEPUTY SECURITIES COMMISSIONER

Mail: P.O. BOX 13167
AUSTIN, TEXAS 78711-3167

Phone: (512) 305-8300
Facsimile: (512) 305-8310

Texas State Securities Board

208 E. 10th Street, 5th Floor
Austin, Texas 78701-2407
www.ssb.texas.gov

E. WALLY KINNE'
CHAIR

KENNY KONCAB,
MEMBER

ROBERT BELT
MEMBER

MELISSA TYROCI
MEMBER

EJIKE E OKPA II
MEMBER

IN THE MATTER OF THE INVESTMENT ADVISER REGISTRATION OF SWIFTARC CAPITAL, LLC AND THE INVESTMENT ADVISER REPRESENTATIVE REGISTRATION OF SIDDHARTH JAWAHAR § § § § §

**Order No. IC22-REV-01**

TO: Swiftarc Capital, LLC (CRD No. 164310)
401 Congress Avenue, Suite 2660
Austin, TX 78701

Siddharth Jawahar (CRD No. 5936822)
401 Congress Avenue, Suite 2660
Austin, TX 78701

## DISCIPLINARY ORDER

Be it remembered that Swiftarc Capital, LLC ("Respondent Swiftarc") and Siddharth Jawahar ("Respondent Jawahar") (collectively, "Respondents") appeared before the Securities Commissioner of the State of Texas ("Securities Commissioner") and consented to the entry of this order ("Order"), the Undertaking incorporated by reference herein, and the Findings of Fact and the Conclusions of Law contained herein.

## FINDINGS OF FACT

1. Respondents have waived (a) Respondents' rights to notice and hearing in this matter; (b) Respondents' right to appear and present evidence in this matter; (c) Respondents' right to appeal this Order; and (d) all other procedural rights granted to the Respondents by The Securities Act, Tex. Gov't Code §§ 4001.001-4008.105 ("Texas Securities Act"), and the Administrative Procedure Act, Tex. Gov't Code Ann. §§ 2001.001 to 2001.902.

2. In or around December 1, 2010, Respondent Jawahar along with several others, created Respondent Swiftarc, as the general partner and investment adviser to a pooled investment vehicle—the Swiftarc Fund, L.P. (the "Fund").

3. On May 17, 2013, Respondent Swiftarc registered as an investment adviser with the Securities Commissioner. This registration is currently effective.

4. Respondent Jawahar, however, has never been registered as an investment adviser representative of Respondent Swiftarc with the Securities Commissioner.

**Background about the Fund**

5. During all relevant times, Respondent Swiftarc has been the investment adviser to the Fund and Respondent Jawahar has been the managing director of Respondent Swiftarc.

6. As both investment adviser and general partner, Respondent Swiftarc is responsible for directing the day-to-day activities of the general partner and responsible for the investing, trading, and portfolio management decisions on behalf of the Fund.

7. According to its offering documents, the Fund would principally invest in common equity securities, corporate/sovereign debt and options of U.S. and foreign issuers.

8. Consistent with its stated objectives, in 2013, the Fund invested across a variety of international food, beverage and retail securities—with no more than 12% of the Fund's capital invested in a single security.

9. However, in 2015, the Fund invested more than half (54%) of its capital in one security: Phillip Morris Pakistan ("PMP").[1] The fund would increase its stake in PMP over the next four (4) years. By December 31, 2018, ninety percent (90%) of the Fund's capital was invested in Phillip Morris Pakistan. And throughout 2019, the Fund was almost exclusively invested in PMP (at 99%).

**The Fund's Valuation**

10. From the inception of the Fund and into 2019, the Fund's records—such as the portfolio holdings value details, partner allocation statements, and redemption payables—listed the value of the Fund's publicly traded equity holdings as the most recent price listed on the Fund's brokerage account statement.

11. For example, the monthly report prepared by the fund administrator in February 2019 reflected a price of PMP at R.s. 2,945.00.[2] This was the same share price as the one reported on the Fund's brokerage statements.

[1] PMP is a public limited tobacco manufacturing company, a subsidiary of Philip Morris International and is listed on the Pakistan Stock Exchange

[2] All values of PMP are reflected in Pakistani rupees (PKR or R.s.) which currently (as of 4/27/2022) has a value of .0054 to $1 USD.

12. However, on September 11, 2019, Respondent Jawahar emailed the firm providing fund administration services[3] directing them to change the methodology for reporting the value of PMP.

13. Per his e-mail, since PMP was not meeting a trading threshold of 3,500 aggregate shares in one calendar month, the Fund's reports were to reflect the price from the last time that PMP had breached that trading threshold: March 2019, when the Fund purchased additional shares of PMP at a price of R.s. 4,000.

14. Consequently, beginning in September 2019 and continuing through February 2022, the monthly Fund reports and investors' capital account statements reflected a valuation of the Fund using the price of R.s. 4,000 for PMP and not the price on the brokerage statements.

15. Notably, PMP experienced a steep decline in trading price from R.s.3230.95 a share in September 2019 to R.s.1760.00 in May 2020. And as of April 26, 2022, PMP was at a trading price of R.s. 607.61 a share.

16. According to the Fund's LPA, for securities listed on a national securities exchange, the last sales price, or market value, would be used as fair valuation.

17. If Respondents determined that the valuation of any security was not fairly represented by market value, Respondents could value such security as it reasonably determined so long as it set forth the basis of such valuation in writing in the Fund's records.

18. When instructing the New Fund Administrator to begin listing the value of PMP at a price of R.s. 4,000 per share, Respondents had not obtained a valuation of PMP from any third-party valuation firm.[4]

**<u>The Fund's Failures to Obtain an Annual Audit</u>**

19. The Fund's LPA also required the Fund to have independent certified accountants (the "Fund Auditor") audit the Fund's books and records at the end of each fiscal year. And Respondents would then provide investors an annual report prepared by the Fund Auditor setting forth a balance sheet, a profit loss statement, and a capital account statement for each investor.

---

[3] From the inception of the Fund through May 2019, Respondents engaged one firm to provide fund administration services including preparing investor capital account statements. But in August 2019, the Fund engaged a new firm to provide fund administration services.

[4] In November of 2021, Respondents engaged a third-party valuation firm (the "Valuation Firm") to perform a valuation of PMP. On March 16, 2022, following the investigation by the staff of the Texas State Securities Board, Respondents obtained the valuation report of the Fund. The Valuation Firm determined that because PMP was lightly traded and subject to diverse, fast-moving economic, geographical, and cultural factors unique to the Asia-Pacific region, the valuation of PMP in the 2019-time frame is difficult to state with precision – even in hindsight and concluded PMP could have had a valuation anywhere between R.s 391 per share and R.s 5,843 per share in 2019.

20. The audit described in the Fund's offering documents mirrored the requirements of Section 116.17(b)(4) of the Board Rules which specifically requires the independent verification by an independent public accountant of client funds and securities for which an investment adviser has custody—as Respondents did with the Fund.

21. On July 9, 2020, while preparing the 2019 audited financial statements for the Fund, the Fund Auditor sent an email to Respondent Jawahar and the New Fund Administrator inquiring about why PMP was valued at R.s. 4,000 a share in the Fund's portfolio holding statements.

22. According to the Fund Auditor, multiple third-party sources as well as the Fund's own brokerage statements showed PMP at a value of R.s. 2,498.98 a share. The Fund Auditor was concerned that a value of R.s. 4,000 per share would have a great impact on the gains/losses the Fund was reporting to investors.

23. In order to capture a compliant and accurate value of the Fund's assets, the Fund Auditor suggested that Respondents obtain an official valuation from a third-party party that specialized in fund valuation.

24. The Fund had never received a valuation before and Respondents did not follow the Fund Auditor's suggestion to obtain an independent valuation. So, the 2019 audit was never completed. Nor was the audit for 2020. And investors did not receive the required audited financial statements for 2019 and 2020.

**The Fund's Liquidity Issues and Investor MZ**

25. By April 2020, the Fund had outstanding redemption requests from investors totaling more than $4,500,000.00.

26. Notably, the Fund's holdings, valued at $7,189,025.99 consisted almost exclusively of the thinly traded foreign stock, PMP. And the Fund's value was based on the R.s. 4,000 price of PMP set by Respondent Jawahar, which remained significantly higher than the price at which PMP was trading during this time.

27. In order to generate cash and satisfy the redemption requests, the Fund would need to liquidate almost all of its positions in PMP, which could cause the value of the shares to drop dramatically and affect the value of any remaining investments.

28. In or around April 2020, a potential investor ("Investor MZ") met with Respondent Jawahar and expressed an interest in investing in the Fund.

29. Respondents did not disclose to Investor MZ that the Fund was 99% invested in one thinly traded security and needed an influx of cash to satisfy multiple outstanding redemption requests. Instead, Respondents described the fund in terms of its original investment objectives as described in the offering documents.

30. On May 1, 2020, Investor MZ invested $250,000 in the Fund. Later that same day, Respondents used the $250,000 from Investor MZ to make payments to two other investors to partially satisfy their outstanding redemption requests from the Fund.

31. No part of Investor MZ's investment was used by the Fund to purchase additional securities. And Respondents never informed Investor MZ that his money would be used to satisfy outstanding redemption requests.

## CONCLUSIONS OF LAW

1. Respondents setting the value of PMP at R.s. 4,000, the highest price PMP has ever traded at and not obtaining a third-party valuation despite an actual steep decline in market price reflected on the brokerage statements and despite the Fund's auditors urging Respondents to obtain a third-party valuation, was a breach of Respondents' fiduciary duties to its clients and constitutes fraud and a fraudulent business practice as defined by Section 4001.058 of the Texas Securities Act.

2. Respondent Jawahar's failure to disclose to Investor MZ that: the Fund had outstanding redemption requests totaling almost $5,000,000; that the Fund was 99% invested in a thinly traded security; and that the investor's money would be used to partially satisfy the outstanding redemption requests were intentional failures to disclose material facts and constitute fraud and fraudulent practices as defined by Section 4001.058 of the Texas Securities Act.

3. Respondent Jawahar's representation to Investor MZ that the fund was following its original investment objectives as outlined in the Fund's offering documents was also a misrepresentation of a relevant fact and constitutes fraud and a fraudulent practice as defined by Section 4001.058 of the Texas Securities Act.

4. Pursuant to Section 4007.105(a)(3)(B) of the Texas Securities Act the aforementioned fraudulent business practices constitute bases for the revocation of Respondent Swiftarc's registration as an investment adviser with the Securities Commissioner.

5. Pursuant to Section 4007.102 of the Texas Securities Act, the aforementioned fraudulent business practices constitute bases for the issuance of a cease and desist order against Respondents.

6. Respondents' failure to timely complete required audits is a violation of Section 116.17(b)(4) of the Rules and Regulations of the Texas State Securities Board ("Board Rules").

7. Pursuant to Section 4007.105(a)(13)(B) of the Texas Securities Act the aforementioned violation of a Board Rule also constitutes a basis for the revocation of Respondent Swiftarc's registration as an investment adviser with the Securities Commissioner.

8. Respondents' failure to timely complete required audits was also a violation of the LPA and constitutes an inequitable business practice.

9. Pursuant to Section 4007.105(a)(3)(A) of the Texas Securities Act the aforementioned inequitable business practice constitutes a basis for the revocation of Respondent Swiftarc's registration as an investment adviser with the Securities Commissioner.

10. Respondent Jawahar's conduct in connection with Respondent Swiftarc and the Fund at a time when Respondent Jawahar was not registered as an investment adviser representative of Respondent Swiftarc constitutes a violation of Section 4004.052 of the Texas Securities Act.

## ORDER

1. It is therefore ORDERED that the registration of Swiftarc Capital, LLC as an investment adviser with the Securities Commissioner is hereby REVOKED.

2. It is further ORDERED that Swiftarc Capital, LLC immediately CEASE AND DESIST from engaging in fraud.

3. It is further ORDERED that Siddharth Jawahar immediately CEASE AND DESIST from engaging in fraud.

SIGNED AND ENTERED BY THE SECURITIES COMMISSIONER this 7th day of June, 2022.

TRAVIS J. ILES
Securities Commissioner

Respondents:

Swiftarc Capital, LLC
By: Siddharth Jawahar,
Managing Director

Siddharth Jawahar, Individually

Approved as to Form:

Clinton Edgar,
Deputy Securities Commissioner

Craig M. Warner

Craig Warner
Counsel for Respondents

Cristi Ramón Ochoa,
Attorney
Inspections and Compliance Division