**IN THE UNITED STATES DISTRICT COURT**
**THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **KATHRYN A. RICHARDSON, TRUSTEE FOR THE KATHRYN A. BILSKI REVOCABLE TRUST, et al.,** | ) | **CASE NO.: 1:24-cv-980** |
| **Plaintiffs,** | ) | **JUDGE DAVID A. RUIZ** |
| **v.** | ) | |
| **SIDDHARTH JAWAHAR, et al.,** | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS FRANK KRASOVEC'S AND ZOHAR ZIV'S MOTION TO DISMISS AND/OR TRANSFER**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

SUMMARY OF THE ARGUMENT ..... 1

INTRODUCTION AND BACKGROUND ..... 2

ARGUMENT ..... 6

I. Defendant Ziv is subject to personal jurisdiction because Plaintiffs bring claims under the Exchange Act. ..... 6

A. The Exchange Act authorizes nationwide service and personal jurisdiction. ..... 6

B. Plaintiffs' remaining claims are subject to pendent personal jurisdiction. ..... 8

II. Defendants' Motion to Dismiss Based on a Forum Selection Clause is Meritless because Defendants Lack Standing and the Clause does not Apply to Plaintiffs' Claims. ..... 8

A. Defendants lack standing to enforce the Clause. ..... 9

B. The Clause does not apply because Plaintiffs' claims do not arise from a "Transaction of Business" in Delaware as required. ..... 11

C. Plaintiffs' claims do not seek to enforce the provisions of the LPAs.. 15

D. Krasovec's and Ziv's intentional misconduct does not arise out of, nor is it otherwise connected with, the LPAs. ..... 17

E. In the alternative, Plaintiffs agree that a transfer to Delaware is proper. ..... 18

1. The Interest of Justice Supports a Transfer Rather than Dismissal. ..... 18

2. The Transfer Statutes Authorize a Transfer of the Matter to Delaware. ..... 20

III. Plaintiffs properly stated causes of action against Defendants Krasovec, Ziv, and Urquijo ..... 22

A. Plaintiffs' Complaint satisfies the required pleading standards. ..... 22

**B. Plaintiffs' fraud-based claims are alleged with sufficient particularity. .......... 23**

**1. Plaintiffs Allege Actionable Omissions and Misrepresentations. .......... 24**

**a. Defendants Krasovec and Ziv had a duty to disclose and correct omissions. .......... 24**

**b. Defendants are liable for affirmative misrepresentations. .......... 26**

**2. Plaintiffs Pled Defendants Acted with the Requisite State of Mind. .......... 28**

**3. Plaintiffs Reasonably Relied Upon Defendants' Omissions and Misrepresentations. .......... 31**

**C. Plaintiffs stated a claim for Control Person Liability (Count II) and Breach of Fiduciary Duty (Count VI). .......... 32**

**D. The Complaint alleges more than sufficient facts to plead Civil Conspiracy (Count V) and Aiding and Abetting Breach of Fiduciary Duty (Count VII) because Krasovec and Ziv knew about the fraud and facilitated its commission. .......... 35**

**E. In the alternative, Defendants Krasovec and Ziv are liable to Plaintiffs for Unjust Enrichment (Count IX) due to their "alignment" with Jawahar and the increase of ownership in the Swiftarc Entities .......... 37**

**F. Defendants Krasovec and Ziv are liable to Plaintiffs as Purported Partners (Count VIII) because they held themselves out as general partners of the Swiftarc Funds. .......... 38**

**CONCLUSION .......... 40**

# TABLE OF AUTHORITIES

**Cases**

*Active Asset Recovery, Inc. v. Real Estate Active Recovery Services, Inc.,* 1999 WL 743479 (Del. Ch. Sep. 10, 1999)........ 10

*AES Corp. v. Dow Chemical Co.*, 325 F.3d 174 (3d Cir. 2003)........ 32

*Affiliate Ute Citizens v. United States*, 406 U.S. 128 (1972)........ 31

*American Greetings, Corp. v. Cookie Jaw Entertainment, Inc.*, 2009 WL 3713686 (N.D. Ohio Nov. 3, 2009)........ 20

*Ashcroft v. Iqbal*, 556, U.S. 662 (2009)........ 22

*AT&T Corp. v. Lillis,* 953 A.2d 241 (Del. 2008)........ 12

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*, 571 U.S. 49 (2013)........ 20

*Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, 2009 WL 1124451 (Del. Ch. Apr. 20, 2009)........ 33

*Blank v. TriPoint Global Equities, LLC*, 338 F. Supp. 3d 194 (S.D.N.Y. 2018)........ 37

*Bragg v. Johnson*, 229 A.2d 497 (Del. Super. 1966)........ 38

*Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901 (6th Cir. 2007)........ 31, 32

*C. Thorrez Indus., Inc. v. LuK Transmissions Sys., LLC*, 2010 WL 1434326 (N.D. Ohio Apr. 8, 2010) (Liou, J.)........ 19

*Canaday v. Anthem Companies, Inc.*, 9 F.4th 392 (6th Cir. 2021)........ 7

*Charles Schwab Corp. v. Bank of America Corp*., 883 F.3d 68 (2d Cir. 2018)........ 8

*Chiarella v. United States*, 445 U.S. 222 (1980)........ 24

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651 (6th Cir. 2005)........ 7

*City of Taylor General Employees Retirement Sys. v. Astec Indus., Inc.*, 29 F.4th 802 (6th Cir. 2022)........ 28

*Clark v. Davenport*, 2019 WL 3230928 (Del. Ch. July 18, 2019)........ 36

*Comi Investments, LLC v. Kiss Industries, LLC*, 2021 WL 12298485 (D. Colo. July 26, 2021) ........ 32

*Cook v. Ohio Nat. Life Ins. Co*., 961 F.3d 850 (6th Cir. 2020)........ 22

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ........ 7

*Doshi v. Gen Cable Corp.*, 823 F.3d 1032 (6th Cir. 2016)........ 28, 30, 31

*E.C. v. Choice Hotels Int'l, Inc.*, 2024 WL 1142162 (S.D. Ohio Mar. 15, 2024) ........ 18

*Feeley v. NHAOCG, LLC*, 62 A.3d 649 (Del. Ch. Nov. 28, 2012)........ 33

*Filtrexx Intern, LLC v. Truelson,* 2013 WL 587582 (N.D. Ohio Feb. 13, 2013) ........ 14

*Firefighters' Pension Sys. of City of Kansas City v. Presidio, Inc*., 251 A.3d 212 (Del. Ch. 2021) ........ 36

*Firefighters' Pension Sys. of City of Kansas City v. Found. Bldg. Materials, Inc*., 318 A.3d 1105 (Del. Ch. 2024) ........ 36

*Firexo, Inc. v. Firexo Group Ltd.,* 99 F.4th 304 (6th Cir. 2024) ........ 11

*Frank v. Data Corp.*, 646 F.3d 954 (6th Cir. 2011)........ 28, 29

*General Environmental Science Corp. v. Horsfall,* 753 F. Supp. 664 (N.D. Ohio 1990) (Battisti, J.)........ 15, 16

*Golf Village North, LLC v. City of Powell, Ohio*, 14 F.4th 611 (6th Cir. 2021)........ 22

*Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980 (Del. Ch. Nov. 26, 2014)........ 35

*Green v. Wisneski*, 2021 WL 4999348 (Del. Ch. Oct. 25, 2021) ........ 9, 11

*Heritage Global Network Los Angeles v. Welch*, 2024 WL 695772(M.D. Tenn Feb. 20, 2024) ........ 26, 27

*Holtzman v. Vill. Green Mgmt. Co. LLC,* 2020 WL 264331 (E.D. Mich. Jan. 17, 2020) ...... 10, 11

*In re American Intern. Group, Inc.*, 965 A.2d 764 (Del. Ch. 2009) ........ 35

*In re FirstEnergy Corp. Sec. Lit.*, 2023 WL 2709373 (S.D. Ohio Mar. 30, 2023)........ 31

*In re Nat'l Century Fin.*, 504 F. Supp. 2d 287 (S.D. Ohio 2007) ........ 34

*In re Nat'l Century Fin.*, 553 F. Supp. 2d 902 (S.D. Ohio 2008) .......... 33

*In re P3 Health Holdings, LLC*, 282 A.3d 1054 (Del. Ch. 2022) .......... 13

*In re Sofamor Danek Group, Inc.*, 123 F.3d 394 (6th Cir. 1997) .......... 25

*In re TransDigm Group, Inc. Sec. Lit.*, 440 F. Supp. 3d 740 (N.D. Ohio 2020) .......... 24

*JAC Holding Enterprises, Inc. v. Atrium Capital Partners, LLC*, 997 F.Supp.2d 710 (E.D. Mich. 2014) .......... 23

*Jacobs v. Meghji*, 2020 WL 5951410 (Del. Ch. Oct. 8, 2020) .......... 38

*Janus Capital Group, Inc. v. First Derivative Traders,* 564 U.S. 135, 142 (2011) .......... 27

*JEM Design, Inc. v. ABB Inc.*, 2012 WL 13012352 (E.D. Mich. Feb. 22, 2012) .......... 19

*Jonna v. GIBF GP, Inc.*, 617 F.Supp.3d 789 (E.D. Mich. 2022) .......... 8

*Kassab v. Hop,* 2024 WL 3890176 (E.D. Mich. Aug. 21, 2024) .......... 11

*Kolominsky v. Root, Inc.*, 100 F.4th 675 (6th Cir. 2024) .......... 22

*LVI Group Investments, LLC v. NCM Group Holdings, LLC,* 2017 WL 3912632 (Del. Ch. Sep. 7, 2017) .......... 12, 13

*Martin v. Stokes*, 623 F.2d 469 (6th Cir. 1980) .......... 21

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) .......... 23

*Mobile Diagnostic Group Holdings, LLC v. Suer,* 972 A.2d 799 (Del. Ch. 2009) .......... 13

*Nemec v. Shrader*, 991 A.2d 1120 (Del. 2010) .......... 37

*Niederst v. Minuteman Cap., LLC*, 2024 WL 3522413 (N.D. Ohio July 24, 2024) .......... 6

*Penton Business Media Holdings, LLC v. Informa PLC,* 252 A.3d 445 (Del. Ch. 2018) .......... 12

*Pittock v. Otis Elevator Co.*, 8 F.3d 325 (6th Cir. 1993) .......... 20

*Plagens v. Deckard*, 2023 WL 2711263 (N.D. Ohio Mar. 30, 2023) .......... 24

*RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816 (Del. 2015) .......... 36

*Roman v. Ashcroft*, 340 F. 3d 314 (6th Cir. 2003) .......... 21

*Salomone v. Gorman,* 106 A.3d 354 (Del. 2014) ........................................................................ 9

*Samaan v. General Dynamics Land System, Inc.,* 835 F.3d 593 (6th Cir. 2016) ........................ 14

*Schock v. Nash*, 732 A.2d 217 (Del. 1999) ................................................................................ 38

*Sherman v. Biglari*, 2020 WL 6273935 (N.D. Ohio Oct. 26, 2020) ........................................... 18

*Smith v. Aegon Companies Pension Plan*, 769 F.3d 922 (6th Cir. 2014) .................................... 19

*Smith v. Swaffer*, 566 F.Supp.3d 791 (N.D. Ohio 2021) (Calabrese, J.) ..................................... 17

*Stanifer v. Brannan*, 564 F.3d 455 (6th Cir. 2009) ..................................................................... 18

*Tellabs, Inc. v. Makor Issues & Rights, LTD.,* 551 U.S. 308 (2007) .................................... 28, 29

*Territory of U.S. Virgin Islands v. Goldman, Sachs & Co.*, 937 A.2d 760 (Del. Ch. 2007) ........ 37

*United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320 (6th Cir. 1993) ............................................ 7

*United States ex rel. Bledsoe v. Community Health Systems, Inc*., 501 F.3d 493 (6th Cir. 2007) 22

*Wilson v. 5 Choices, LLC*, 776 Fed. App'x 320 (6th Cir. 2019) .................................................. 10

*Zaluski v. United American Healthcare Corp.*, 527 F.3d 564 (6th Cir. 2008) ............................ 31

**Statutes**

15 U.S.C. § 78a *et seq*. ......................................................................................................... *passim*

28 U.S.C. § 1404(a) ................................................................................................ 18, 20, 21, 22

28 U.S.C. § 1406(a) ...................................................................................................... 18, 21, 22

28 U.S.C. § 1631 ........................................................................................................... 18, 21, 22

6 Del. C. § 15-308 .................................................................................................................. 38, 39

6 Del. C. § 17-401 ......................................................................................................................... 39

8 Del. C. § 382(b) .......................................................................................................................... 12

**Other Authorities**

17 C.F.R. § 230.405 ....................................................................................................................... 33

17 C.F.R. § 240.10b-5 ........................................................................ 7, 24, 32

Fed. R. Civ. P. 9(b) ........................................................................ 22, 23, 26, 35

Fed. R. Civ. P. 12(b)(6) ........................................................................ 2, 19, 20

Merriam-Webster, *"So long as,"* https://merriam-webster.com/dictionary/so%20long%20as, *last retrieved Oct. 15, 2024* ........................................................................ 13

## SUMMARY OF THE ARGUMENT

Plaintiffs bring claims against Defendants Frank Krasovec ("Krasovec") and Zohar Ziv ("Ziv"), cofounders and General Partners of the Swiftarc Entities, under federal and state law for their roles in an investment fraud scheme perpetrated against Plaintiffs. Throughout their comprehensive Complaint spanning more than 60 pages and supported by hundreds of pages of exhibits, Plaintiffs detail how they were victimized by Defendants, including Krasovec and Ziv, since the very beginning of their initial investments.

Despite numerous marketing materials, offering documents, and other communications referring to Krasovec and Ziv as General Partners and key members of the Swiftarc cohort, Defendants, for the first time in their omnibus Motion to Dismiss (the "Motion"), assert that they too were victims of Defendant Siddharth Jawahar ("Jawahar") and merely "non-managing, minor member consultants" to the Swiftarc Entities. But that's not how Krasovec and Ziv represented themselves when they bilked Plaintiffs out of millions of dollars.

Defendants' Motion raises three reasons why they believe this Court's involvement is improper. ***First***, Ziv argues this Court cannot hold him accountable for his role because the Court lacks personal jurisdiction over him. He is wrong. Because Plaintiffs allege claims under federal securities laws against Ziv, he is subject to nationwide service of process and personal jurisdiction in any United States District Court, including this one.

***Second***, Krasovec and Ziv think Delaware is the proper venue to litigate this dispute because Plaintiffs signed a convoluted forum selection clause with the limited partnership defendants, entities Krasovec and Ziv now attempt to distance themselves from. Notwithstanding the irony, neither Krasovec nor Ziv were parties to the limited partnership agreements and therefore cannot enforce its provisions. Even if they could, the forum selection clause does not apply to Plaintiffs' claims. What's more, Krasovec and Ziv want the Court to dismiss the

Complaint and make Plaintiffs refile in Delaware. They are misguided. Transfer is not only possible here, but it is the correct remedy should the Court find that the forum selection clause is enforceable (which it is not).

***Finally***, Krasovec and Ziv believe each of the nine counts against them fail and should be dismissed under Civil Rule 12(b)(6). In making those arguments, Krasovec and Ziv conveniently ignore allegations and misstate the clear timeline set forth in Plaintiffs' detailed, fact-based allegations against them. When viewing the Complaint as a whole as this Court must, Plaintiffs adequately set forth the necessary allegations to survive dismissal, even under the heightened pleading standard set forth in federal securities law. Because Krasovec and Ziv know the claims against them, the Court, especially at this pleading stage, should deny their Motion under Rule 12(b)(6).

For these reasons, and the reasons discussed more fully below, Defendants' Motion must fail. Krasovec and Ziv cannot avoid their obligations and fiduciary duties to Plaintiffs by whitewashing their past partnership and protection of Jawahar. Krasovec and Ziv already tried to do just that through complicated and secret corporate transactions once Jawahar's fraud became publicly known. This Court should not allow them to do it again.

## INTRODUCTION AND BACKGROUND

This case involves a massive investment fraud scheme that Defendants perpetrated against Plaintiffs and others. (*See* Dkt. 1, ¶ 1). For his role, Jawahar has been federally charged for misappropriating millions of dollars. (*Id*. at ¶ 5) (citing ECF No. 1, *United States v. Jawahar*, No. 4:23-CR-00718-MTS-SPM (E.D. Mo.) (the "Indictment")) (*see also* Dkt. 35-4). Plaintiffs invested over $5 million, most of which they presume is lost. (Dkt. 1, ¶ 237). And, while Jawahar's conduct is particularly reprehensible, he could not—and did not—act alone.

Jawahar's fraud began in 2010 when he, "and others," founded Swiftarc Capital, LLC. ("Swiftarc Capital"). (Dkt. 1, ¶ 52). Both Krasovec and Ziv were general partners of Swiftarc Capital, with Krasovec's partnership dating back to at least 2016. (*Id.* at ¶¶ 51, 53). Swiftarc Capital operated much like the Swiftarc Entities in this litigation. It solicited funds from investors in exchange for limited partnership interests to invest with third-party companies. (*Id.* at ¶ 54).

Beginning one year prior to Krasovec's involvement, and continuing through 2019, Swiftarc Capital invested its investor capital in primarily one security, increasing its position from 54% to 99% throughout 2019. (*Id.* at ¶ 56). This overleveraged position caused significant risks for investors that they neither agreed to nor expected. (*Id.* at ¶ 57). This, along with other acts of Jawahar and omissions from Krasovec and Ziv, led to litigation from Swiftarc Capital's investors. (*Id.* at ¶¶ 66-73). On May 29, 2020, investors sued Jawahar and Swiftarc Capital to hold Jawahar and Swiftarc Capital "accountable for their . . . false and fraudulent statements." (*Id.* at ¶ 66) (the "Arizona Litigation"). On September 10, 2021, a different group of investors sued Jawahar and Swiftarc Capital for breaches of contract, fiduciary duty, and civil conspiracy. (*Id.* at ¶ 70) (the "Texas Civil Litigation").

Around the same timeframe as the Texas Civil Litigation, in or about September 2021, the Texas State Securities Board opened an investigation into Jawahar and Swiftarc Capital. (*Id.* at ¶ 94) (the "TSSB Investigation"). The TSSB, after its investigation and interviewing at least one investor solicited by Krasovec, ordered Swiftarc Capital and Jawahar to cease and desist from engaging in fraud. (*Id.* at ¶¶ 93-102; Dkt. 1-6) (the "TSSB Order").

After this cataclysmic meltdown, Krasovec, Ziv, and Jawahar abandoned the Swiftarc Capital carcass and founded a new host: Swiftarc Ventures and the Swiftarc Entities. (*Id.* at ¶ 60-61). This "Swiftarc Shuffle" allowed Jawahar and Swiftarc Capital to avoid its legal obligations to

investors, while providing additional sources of capital from investors unaware of Defendants' misdeeds at Swiftarc Capital. (*Id.* at ¶ 63).

Krasovec and Ziv, members of the GP LLCs, were part of the "Executive Management" team at Swiftarc Ventures. (Dkt. 1, ¶¶ 44, 76-77). Along with Jawahar, they controlled the Swiftarc Entities. (*Id.* at ¶ 2). They both sat on the investment committee, (i*d.* at ¶ 86), and Ziv chaired the "Governance Committee" (i*d.* at ¶ 91). The Private Placement Memorandum ("PPM") identified both Krasovec and Ziv as "central decisionmakers in the investment process for the Fund," where they participated in "regular meetings" and performed "intensive and thorough due diligence, investigation, and analysis of prospective investments" (Dkt. 1-2, PageID: 79). In his role, Krasovec "aligned" with Jawahar on the Swiftarc Funds' "reporting," "fundraising and investment strategy." (Dkt. 1-8, PageID: 231). They directly solicited investors, (Dkt. 1, ¶¶ 80, 81, 87), and allowed their "name, image, and likeness" to be represented and portrayed to those potential investors. (*Id*. at ¶ 50). Krasovec also took and considered redemption requests. (*Id*. at ¶ 88).

Prior to their investing, Plaintiffs received investment materials (the "Offering Documents") and information about the Swiftarc Funds' investments and management team (the "Marketing Materials"). (*Id*. at ¶ 83) Those documents contained the material misrepresentations and omissions that are the main issues in the Complaint. Notably, they omitted references to Jawahar's past fraud and fraud that was occurring at Swiftarc Ventures, (*id*. at ¶ 242(a)), stated that investments would be invested in portfolio companies, with only a small, fixed fee being transferred for management fees, (*id*. at ¶ 242(d); Dkt. 1-4, PageID: 158), and that Plaintiffs would receive necessary investment documents such as audited financial statements, annual reports, and tax documents (Dkt. 1, ¶ 242(f)). Krasovec's and Ziv's responsibilities also included contributing to, reviewing, approving, and orchestrating the dissemination of the Marketing Materials. (Dkt. 1,

¶¶ 91, 258). And Swiftarc Ventures, on behalf of its "General Partners" (Krasovec and Ziv), published the "Swiftarc Statement" which minimized and misrepresented the fraud that was uncovered at Swiftarc Ventures' predecessor entity, Swiftarc Capital. (*Id.* at ¶¶ 104-05, 111).

Plaintiffs later discovered that these statements were lies used to induce their investments. Rather than investing capital, Defendants transferred investor money from one Swiftarc Fund to the next under the guise of "intercompany loans." (*Id.* at ¶ 114). Some of Plaintiffs' investments were used by Jawahar to "fund extravagant expenses." (Indictment, ¶ 8). Other investments were also used to "satisfy capital calls of portfolio companies or other expenses," including funding "outstanding Swiftarc Ventures obligations." (Dkt. 1, ¶¶ 114, 151). At this point, neither Krasovec nor Ziv stopped the misappropriation of funds despite their significant control and oversight roles.

Instead, Krasovec and Ziv distanced themselves from Jawahar and his fraud. They used their control over Jawahar and the Swiftarc Entities to orchestrate an exit for themselves. (*Id.* at ¶¶ 135-36). In that exit (the "Beauty Fund Swap"), Krasovec and Ziv concealed material information about the Beauty Fund Swap and left Plaintiffs to deal with the fraud. (*Id.*). Funds were reallocated from the Telehealth Fund and Labs Fund to the Beauty Fund prior to the Beauty Fund Swap. (*See id.* at ¶ 145). The new entity, which likely retains value improperly allocated to it from other Swiftarc Funds, is owned and controlled by Krasovec and Ziv. (*Id.* at ¶ 311).

On June 7, Plaintiffs sued Krasovec, Ziv, and others to recover the money they lost and seek additional damages. (*See generally id.*). There, Plaintiffs brought claims under the Securities and Exchange Act, 15 U.S.C. § 78a *et seq*. (the "Exchange Act") as well as various state law claims. In their typical fashion, Jawahar and his still-controlled Swiftarc Entities have failed to respond. (*See* Dkt. 1, ¶¶ 67-68, 72). On August 29, 2024, Krasovec and Ziv filed a Motion to

Dismiss and/or Transfer, (*see* Dkt. 35), and an accompanying consolidated memorandum in support.[1] (*See* Dkt. 35-1).

For the reasons set forth below, this Court may exercise personal jurisdiction over Ziv. Additionally, the forum selection clause Krasovec and Ziv attempt to invoke is inapplicable. Finally, Plaintiffs' Complaint adequately alleges the nine causes of action against Krasovec and Ziv. Accordingly, this Court should deny Krasovec's and Ziv's Motion in its entirety.

## ARGUMENT

### I. DEFENDANT ZIV IS SUBJECT TO PERSONAL JURISDICTION BECAUSE PLAINTIFFS BRING CLAIMS UNDER THE EXCHANGE ACT.

Contrary to Defendant Ziv's argument, this Court can exercise personal jurisdiction over Ziv. Because Plaintiffs bring claims under the Securities and Exchange Act of 1934, 15 U.S.C. § 78a *et seq*., any defendant with sufficient minimum contacts ***with the United States*** are subject to this Court's personal jurisdiction. Additionally, because Plaintiffs' claims all arise from a common nucleus of operative fact as those that give rise to the Exchange Act claims, the doctrine of pendent personal jurisdiction allows jurisdiction over the remaining claims.[2]

#### A. The Exchange Act authorizes nationwide service and personal jurisdiction.

Ziv contests this Court's ability to exercise personal jurisdiction over him. But he fails to recognize that Plaintiffs have brought claims under the Exchange Act which grants this Court power to exercise personal jurisdiction over any defendant residing in the United States. Because

---

[1] On August 29, 2024, Defendant Fabian Urquijo ("Urquijo") filed a Motion to Dismiss. (Dkt. 36). Defendant Beauty Generations Fund I, LP has been granted until October 23, 2024, to answer or otherwise respond to Plaintiffs' Complaint. (Notation Order dated September 24, 2024). Defendant Jawahar filed a Motion to Dismiss and/or Transfer on October 15, 2024. (Dkt. 45). No other Defendants have answered or otherwise responded as of October 14, 2024.

[2] While not necessary due to their claims under the Exchange Act, Plaintiffs have still set forth a *prima facie* showing that Ziv had sufficient minimum contacts with Ohio which subject him to this Court's personal jurisdiction. While Ziv argues that an ownership interest in a corporation is not enough to subject him to personal jurisdiction in Ohio, (*see* Dkt. 35-1, PageID: 408), Plaintiffs have alleged more than his ownership interest and have demonstrated Ziv's *personal involvement* with the Swiftarc Entities. *See* Introduction and Background, *supra* at p. 4. Thus, because Ziv participated in Jawahar's and the Swiftarc Entities' fraudulent conduct, he can be held subject to this Court's personal jurisdiction. *See Niederst v. Minuteman Cap., LLC*, 2024 WL 3522413, at *8 (N.D. Ohio July 24, 2024).

Ziv is a U.S. resident, the Court should deny his motion to dismiss on those grounds.

The Exchange Act authorizes nationwide service of process for private securities claims. 15 U.S.C. § 78aa(a) ("[P]rocess in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found."). The Sixth Circuit consistently interprets this provision as granting personal jurisdiction over any defendant with general or specific jurisdictional contacts ***with the United States***. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Therefore, where a defendant in an Exchange Act case is domiciled within the United States, personal jurisdiction is proper in any federal forum. *See, e.g., Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 398-99 (6th Cir. 2021) (finding that § 78aa provides for personal jurisdiction over defendants in any federal district court in the country).[3]

Here, Plaintiffs brought claims against all Defendants pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) ("Section 10(b)") and 17 C.F.R. § 240.10b-5 promulgated thereunder ("Rule 10b-5"). (Dkt. 1, ¶¶ 239-251). Additionally, Plaintiffs alleged violations of Section 20(a) of the Exchange Act, 15, U.S.C. § 78t(a) ("Section 20(a)") against Ziv. (*Id.* at ¶¶ 252-260). There is no dispute that all Defendants either reside in, are incorporated in, or maintain their principal place of business in the United States. (*See id.* at ¶¶ 25-36). This includes Ziv. (*Id.* at ¶ 27; *see also* Dkt. 35-3, PageID: 476, ¶ 3). Because it is undeniable that Ziv is subject to general personal jurisdiction within the United States, this Court has personal jurisdiction over him, and his Motion on these grounds should be denied.

[3] *See also City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 665 n. 15 (6th Cir. 2005) ("Therefore, the 'forum' for the purposes of personal jurisdiction analysis . . . is the United States, rather than any particular federal judicial district within the United States"); *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993) (holding that § 78aa "confers personal jurisdiction in any federal district court over any defendant with minimum contacts to the United States").

### B. Plaintiffs' remaining claims are subject to pendent personal jurisdiction.

Similarly, Plaintiffs' state law claims need not be dismissed; the doctrine of pendent personal jurisdiction applies. That doctrine "provides that where a federal statute authorizes nationwide service of process, and the federal and state-law claims derive from a common nucleus of operative fact, the district court may assert personal jurisdiction over the parties to the related state-law claims even if personal jurisdiction is not otherwise available." *Jonna v. GIBF GP, Inc*., 617 F.Supp.3d 789, 799 (E.D. Mich. 2022) (quoting *Charles Schwab Corp. v. Bank of America Corp*., 883 F.3d 68, 88 (2d Cir. 2018)). This doctrine applies to the Exchange Act. *See id*. (collecting cases). Here, pendent personal jurisdiction is appropriate. Every claim in the Complaint derives from a common nucleus of operative fact: Plaintiffs' investments with the Swiftarc Entities based on the statements made by Defendants in the Marketing Materials and Offering Documents.

Ziv himself admits that he is a resident of the United States, which alone is sufficient to establish personal jurisdiction over him under the Exchange Act. Further, all claims Plaintiffs bring against the Defendants arise out of the same statements inducing the investments that give rise to violations under the Exchange Act. Therefore, jurisdiction for Plaintiffs' state law claims based on pendent personal jurisdiction is proper as to Ziv and his Motion to Dismiss should be denied.

## II. DEFENDANTS' MOTION TO DISMISS BASED ON A FORUM SELECTION CLAUSE IS MERITLESS BECAUSE DEFENDANTS LACK STANDING AND THE CLAUSE DOES NOT APPLY TO PLAINTIFFS' CLAIMS.

Krasovec and Ziv seek dismissal of the entire Complaint based on their misreading of a forum selection clause tucked away in a governance document to which they were not even parties. The Court should decline to do so and deny the Motion for these reasons. First, Krasovec and Ziv have no standing to enforce the forum selection clause (the "Clause") because they are neither parties to, nor signatories of the LPAs. Second, Plaintiffs' claims do not arise from a "transaction of business" in the State of Delaware, which the Clause requires. Next, Plaintiffs do not "seek[] to

enforce any provision" of the LPAs. And finally, the Clause does not apply to Plaintiffs' claims for conspiracy, fraud, and other misconduct by Krasovec and Ziv because they do not "arise out of," and are not "connected with," the LPAs. Accordingly, this Court should deny Defendants' Motion to Dismiss and maintain jurisdiction over this matter.

### A. Defendants lack standing to enforce the Clause.

As a threshold matter, Krasovec and Ziv lack standing to enforce the Clause within the LPAs. Under Delaware law,[4] courts "will give priority to the parties' intentions as reflected in the four corners of the agreement" and "determine the intent of the parties from the language of the contract." *Salomone v. Gorman,* 106 A.3d 354, 368 (Del. 2014). A party seeking enforcement of contractual provisions "bears the burden of proving a valid contract exists and its terms." *Green v. Wisneski*, 2021 WL 4999348, at *2 (Del. Ch. Oct. 25, 2021).

Here, Krasovec and Ziv are neither parties nor signatories to the LPAs. That is indisputable. The plain language in the LPAs expressly limits the ability of non-parties, such as Krasovec and Ziv, to enforce its provisions. First, the Clause itself states explicitly that it is agreed to ***by the parties***. (Dkt. 1-4, PageID: 198, § 17.03 "The parties hereby agree…"). Krasovec and Ziv are not parties. Second, the LPAs ***specifically prohibit*** third-party beneficiaries, like Krasovec and Ziv, from invoking rights within it. Specifically, Section 17.12 reads:

> **No Third-party Beneficiaries.** Except as expressly provided to the contrary in this Agreement (including those provisions which are for the benefit of the Covered Persons), this Agreement is for the sole benefit of the parties hereto (and their respective heirs, executors, administrators, successors, and assigns) and nothing herein, express or implied, is intended to or shall confer upon any other Person any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement.

(*Id.* at PageID: 200, § 17.12). The LPAs confer no "legal or equitable right, benefit, or remedy of

[4] Plaintiffs bring their state law claims under Delaware law, which Defendants acknowledge is appropriate.

any nature whatsoever" to Krasovec and Ziv, which includes an attempt to enforce the Clause. And a "Covered Person" for the purposes of the LPA does not include "minority, non-managing members," which both Krasovec and Ziv now argue they were. (*See id.* at PageID: 147). Regardless of whether a "Covered Person" included a General Partner or Defendants' newly-animated golem—"minority, non-managing members"—the result is the same: the Clause offers no refuge to the "Covered Person" and is not a "provision[] . . . for the[ir] benefit." The omission of "Covered Person" from the Clause is important, especially because Covered Persons are included in other, unrelated provisions. (*See*, *e.g.*, *id.* at PageID: 163, § 4.03, primarily discussing indemnification obligations of Covered Persons). Again, this omission "speaks volumes" as to ***the parties'***—and not Krasovec's and Ziv's—intent. *See Active Asset Recovery, Inc. v. Real Estate Active Recovery Services, Inc.,* 1999 WL 743479, at *12 (Del. Ch. Sep. 10, 1999).

Their reliance on *Wilson v. 5 Choices, LLC*, 776 Fed. App'x 320 (6th Cir. 2019) to show that they, as non-signatories to the LPAs, can still enforce the Clause is misplaced. The *Wilson* court held that "plaintiffs should not be allowed to escape the enforceable forum selection clauses they had with privity defendants merely by suing those Defendants' non-privity affiliates to *recover on the very contracts* containing the forum-selection clauses." *Id.* at 329 (emphasis added). As discussed at length below, in Section II.C., Plaintiffs *are not* seeking to enforce the LPAs. Instead, Plaintiffs seek damages for non-contract claims based on fraudulent misrepresentations and omissions that Defendants made repeatedly through varied media and communications, one of which happens to be the LPAs. As such, Krasovec's and Ziv's reliance on *Wilson* is misplaced.

Krasovec and Ziv also rely on *Holtzman v. Vill. Green Mgmt. Co. LLC,* 2020 WL 264331, at *6 (E.D. Mich. Jan. 17, 2020), for the proposition that it was "reasonably foreseeable" that they would seek to enforce the Clause. Again, they are wrong. For starters, the *Holtzman* agreement did

not contain a prohibition on third-party beneficiaries like the LPAs here. *See generally, id.* Moreover, the party seeking to block the clause in *Holtzman* sought enforcement of the clause in a related matter when it was advantageous for that party to do so. *Id.* at *9. The court noted that the party seeking to block enforcement of the clause "should not be permitted to enforce the forum-selection clause when it is advantageous but prevent others from doing when it is less convenient in another case arising under the same agreement." *Id.* Here, Plaintiffs are not seeking to enforce the Clause in any other matter, so the fairness concerns driving the court's reasoning in *Holtzman* holds no water.

The Court should effectuate the intent of the parties to the LPAs. It is undisputed that both Krasovec and Ziv are not parties to the LPA, and the LPA limits any rights for third-party beneficiaries. Therefore, Krasovec and Ziv lack standing to enforce the Clause.

### B. <u>The Clause does not apply because Plaintiffs' claims do not arise from a "Transaction of Business" in Delaware as required.</u>

The Clause's plain language, given short shrift by Krasovec and Ziv, requires a "transaction of business" in Delaware to apply. That requirement has not been met. For this reason alone, the Clause does not apply.

The Sixth Circuit has recently held that the "applicability of a forum selection clause is distinct from and antecedent to its enforceability." *Firexo, Inc. v. Firexo Group Ltd.,* 99 F.4th 304, 326 (6th Cir. 2024). Moreover, "contract interpretation is fundamentally a matter of state law." *Id.* at 327 n. 12. Therefore, whether a forum selection clause is applicable to the claims asserted by Plaintiffs, it "must be decided on the basis of state law, not federal common law, using traditional choice of law principles." *Kassab v. Hop,* 2024WL 3890176, at *1 (E.D. Mich. Aug. 21, 2024) (citing *Firexo*, 99 F.4th at 326-29). And, to reiterate, the party seeking to enforce a contract bears the burden of proving "its terms." *Green*, at *2.

The Clause within the LPAs reads as follows:

> The parties hereby agree that any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether in contract, tort, or otherwise, shall be brought in the United States District Court for the District of Delaware or in the Court of Chancery of the State of Delaware (or, if such court lacks subject matter jurisdiction, in the Superior Court of the State of Delaware), ***so long as*** *one of such courts shall have subject-matter jurisdiction over such suit, action or proceeding,* ***and that any [cause] of action arising out of this Agreement shall be deemed to have arisen from a transaction of business in the State of Delaware.***

(Dkt. 1-4, PageID 198, § 17.03) (emphasis added). The only reasonable interpretation of the language emphasized above that gives full effect to the words contained therein is that the Clause applies only where (1) a Delaware court has subject matter jurisdiction over the case; ***and*** (2) the action arose "from a transaction of business in the State of Delaware." Krasovec and Ziv failed to meet the second requirement.

The phrase "transaction of business" is not defined. (*See id.* at § 1.02). Normally, when there is no definition of a word, term, or phrase within a contract, courts are required to interpret them in accordance with "their plain and ordinary meaning." *AT&T Corp. v. Lillis,* 953 A.2d 241, 253 n.35 (Del. 2008). However, "when established legal terminology is used in a legal instrument, a court will presume that the parties intended to use the established legal meaning of the terms." *Penton Business Media Holdings, LLC v. Informa PLC,* 252 A.3d 445, 461 (Del. Ch. 2018).

To that end, "transaction of business" is an established legal phrase under Delaware law. Under 8 Del. C. § 382(b), "transaction of business" is "the practice of carrying on any business activities in this State, including, without limiting the generality of the foregoing, ***the solicitation of business or orders in [Delaware]***." (emphasis added). "Out-of-state service as an officer of a Delaware corporation, or [an] LLC" alone is not a "transaction of business." *LVI Group Investments, LLC v. NCM Group Holdings, LLC,* 2017 WL 3912632, at *4 (Del. Ch. Sep. 7, 2017).

An officer executing a corporate instrument outside of Delaware is also insufficient. *Id.* at *5. Likewise, a choice of Delaware law provision within a contract does not constitute a "transaction of business." *Mobile Diagnostic Group Holdings, LLC v. Suer,* 972 A.2d 799, 805 (Del. Ch. 2009).

Here, Krasovec and Ziv have failed to present any evidence—because there is none—that any business activities occurred in Delaware. None of the Swiftarc Entities have their principal place of business in Delaware nor are any corporate offices located in Delaware. (Dkt. 1, PageID: 5-6). Not one single solicitation of Plaintiffs' investments occurred in Delaware. (*See, e.g., id.* at PageID: 15, ¶ 87 (meeting investors at Marble Room steakhouse and Taza Restaurant in Cleveland, Ohio)). Defendants met with relevant third parties in Cleveland, Ohio, not Delaware. (*Id.* at PageID: 15-16, ¶ 89). Neither Krasovec, Ziv, Jawahar, or Urquijo lived or resided in Delaware, so their service on behalf of Delaware incorporated business is insufficient to constitute a "transaction of business." (*Id.* at PageID: 5-6); *accord LVI Group Investments, LLC,* 2017 WL 3912632, at *4. The bank accounts used by the Swiftarc Entities were not based out of Delaware. (*See, e.g.,* Dkt. 1-3, PageID: 122 (PNC bank account associated with bank address of 2711 NE 187th Street, Aventura, Florida)). And just because there is a Delaware choice of law provision within the LPAs, it is not enough to show that a "transaction of business" occurred in Delaware to make the Clause apply. *Accord Mobile Diagnostic Group Holdings,* LLC, 972 A.2d at 805.

Krasovec and Ziv's argument defies logic, interpreting the "so long as" requirement to require all of nothing. The phrase "so long as," means "provided that." *So long as*, Merriam-Webster, https://merriam-webster.com/dictionary/so%20long%20as, *last retrieved Oct. 15, 2024*. Within the Clause, then, a "transaction of business" *must have occurred* for the Clause to apply. *See In re P3 Health Holdings, LLC*, 282 A.3d 1054, `066 (Del. Ch. 2022) ("Dictionary definitions serve as an important starting point when determining plain meaning. In many cases, reliance of

dictionary definitions will be sufficient.”).

Instead, Krasovec and Ziv argue that every single claim arising out of the LPAs is automatically “deemed to have arisen from a transaction of business in Delaware.” (Dkt. 35-1, PageID 401). This construction guts the phrase “so long as” and leads to absurd results. *See Samaan v. General Dynamics Land System, Inc.,* 835 F.3d 593, 601 (6th Cir. 2016) (“Contracts must be construed consistent with common sense and in a manner that avoids absurd results.”) (internal citations omitted). If a cause of action “arising out of” the LPAs somehow automatically rendered the action borne from a transaction of business in Delaware, then the second requirement of the Clause operates as a legal fiction; a legal fiction that negates the requirement and renders the phrase “so long as” meaningless. Their interpretation belies numerous principles of contract interpretation, including construing contract terms in accordance with their plain meaning and in a manner that avoids absurd results. Such a dubious interpretation should be given no quarter. Rather, a “transaction of business” must occur for the Clause to come into play. A “transaction of business” does not automatically follow from the mere fact of claims being filed.

Even if Krasovec and Ziv’s interpretation of the Clause was not patently unreasonable, which it is, this Court must construe the interpretation of the Clause against the drafter, the GP LLCs, of which Krasovec and Ziv admit they were members. *See Filtrexx Intern, LLC v. Truelson,* 2013 WL 587582, at *5 (N.D. Ohio Feb. 13, 2013) (holding that contractual ambiguities should be resolved against the drafter); (Dkt. 35-1, PageID: 392) (according to Krasovec and Ziv, they were “minority, non-managing members of the GP LLCs”).

In short, Krasovec and Ziv failed to show that the Clause covers Plaintiffs’ claims. And any other interpretation posited by Krasovec and Ziv, non-parties to the LPAs, should be afforded no weight. Plaintiffs’ claims do not arise from a “transaction of business” in Delaware. The Clause

does not apply.

### C. <u>Plaintiffs' claims do not seek to enforce the provisions of the LPAs.</u>

Business activity in the State of Delaware is not the only requirement that Defendants have failed to establish for the Clause to apply. The plain language of the Clause also requires Defendants to show that Plaintiffs, through this action, are "seeking to enforce" the LPAs themselves. Again, Defendants have fallen short. Plaintiffs bring no claim for breach of contract under the LPAs. Nor have Plaintiffs sought an injunction to require Defendants to perform under the Agreement or conversely prohibit some violative action. The LPAs themselves provide no remedy to Plaintiffs who were victimized by Defendants' multi-year fraudulent scheme, so Plaintiffs are not "seeking to enforce" the LPAs. Rather, the LPAs were the first fruits of Defendants' fraudulent conduct. Indeed, many of the misrepresentations and omissions were made when Plaintiffs received the Marketing Materials and Offering Documents. Plaintiffs are not suing Defendants for breach of the LPAs. Rather, they rely on claims for damages, including federal statutory, state statutory, and state common law claims.

In *General Environmental Science Corp. v. Horsfall,* 753 F. Supp. 664, 667-68 (N.D. Ohio 1990) (Battisti, J.), Judge Battisti was asked to decide a similar issue and found that the clause did not apply. In *Horsfall*, the complaint did not allege a breach of the underlying agreement—a distribution contract—which contained a forum selection clause. *Id.* at 667. Rather, the plaintiff there was seeking recovery under the federal RICO statute and Ohio tort law. *Id.* The contract contained a forum selection clause which read, "this Agreement shall be governed by the laws of Switzerland and the place of court is Rolle Switzerland [a municipality in Switzerland] in case of claims from [plaintiff]." *Id.*

In finding the clause did not apply to plaintiffs' federal RICO and state tort claims, the court noted that "the plaintiff [was] entitled to try this case under its chosen theory." *Id.* at 668.

The court held that the suit "[arose] out of the plaintiff's ongoing business relationships with the defendants," that the contract containing the forum selection clause at issue was just one "manifestation[] of those relationships," and "the terms of the contract [with the forum selection clause could not] limit" a "comprehensive challenge to the defendants' entire course of conduct in [that] forum." *Id.* The court concluded that the actions of the defendants therein with respect to the contract were predicate acts to the other claims, and that the suit was therefore broader than the forum selection clause. *Id.*

Here, Plaintiffs' claims, and the Clause Defendants seek to assert, are no different than their *Horsfall* counterparts. And like the court in *Horsfall*, this Court should reject Krasovec and Ziv's attempt to shoehorn all their misdeeds into an LPA that provides no grounds for relief from their fraudulent behavior. As mentioned above, Plaintiffs in the instant matter do not seek remedies under a theory of breach of contract. Plaintiffs' claims sounding in fraud and breach of fiduciary duties cover Krasovec's and Ziv's course of conduct beyond mere contractual breaches of the LPAs. (*See, e.g.,* Dkt. 1, ¶ 15) (describing Krasovec's role in soliciting investors before the execution of the LPAs); (*id.* at ¶ 89) (describing Krasovec's role forming partnerships with third parties); (*id.* at ¶ 90) (describing Ziv's role in soliciting investors before the execution of the LPAs); (*id.* at ¶ 91) (describing Ziv's contribution to the Marketing Materials before the execution of the LPAs); (*id.* at ¶ 103) (describing Krasovec and Ziv's failure to disclose TSSB Order after the execution of the LPAs); (*id.* at ¶¶ 127-149 (describing Krasovec and Ziv's misconduct with respect to the Beauty Fund Swap after the execution of the LPAs).

As such, Plaintiffs' claims stem from an ongoing relationship with Krasovec and Ziv, to which the execution of the LPAs were only one manifestation. Therefore, the Clause does not govern Plaintiffs' claims for outside relief.

### D. **Krasovec's and Ziv's intentional misconduct does not arise out of, nor is it otherwise connected with, the LPAs.**

Krasovec and Ziv argue that the "arising out of" and "in connection with" language within the Clause "must be interpreted broadly such that the clause encompasses all claims in *any way* related to the [LPA] or the contemplated transactions." (Dkt. 35-1, PageID: 401). Notably, in making this argument, Krasovec and Ziv ignore direct, on point caselaw out of the Northern District of Ohio that says otherwise. This error is fatal to Krasovec's and Ziv's arguments, and this Court should adhere to the reasoning already used within this District.

Plaintiffs are from the same mold as the plaintiffs in *Smith v. Swaffer*, 566 F.Supp.3d 791 (N.D. Ohio 2021) (Calabrese, J.), where Judge Calabrese found the forum selection clause did not apply. The *Swaffer* plaintiffs brought claims for securities fraud against a corporate officer. Plaintiffs executed a stockholder agreement with a forum selection clause that covered "any dispute, controversy or claim arising out of, relating to, or in connection with" the stockholder agreement. *Id.* at 800. They did not sue for breach of the stockholder agreement, but rather brought claims under federal securities laws, state securities laws, and state common law against a corporate officer. *Id.* Judge Calabrese held that the forum selection clause did not encompass those claims because the fraudulent conduct occurred before execution of the stockholder agreement containing the forum selection clause. *Id.* at 801. Similarly, much of Krasovec and Ziv's fraudulent behavior alleged in the Complaint occurred before execution of the LPAs. *See* Section III.B.1, *infra*. Therefore, like the similarly-worded clause at issue in *Swaffer*, the Clause here does not govern claims where fraudulent misconduct occurred before the LPAs were even executed.

Because Plaintiffs' claims are based on fraudulent conduct that occurred prior to the execution of the LPAs, they do not "arise out of" or are in "connection" with the LPAs. Therefore, the Clause does not apply to Plaintiffs' claims.

### E. <u>In the alternative, Plaintiffs agree that a transfer to Delaware is proper.</u>

Even if the Court found the Clause enforceable, which it is not, the proper remedy would be to transfer this matter to the United States District Court for the District of Delaware rather than dismissal. The law favors this remedy as the normal procedure. *E.C. v. Choice Hotels Int'l, Inc.*, 2024 WL 1142162, at *4 (S.D. Ohio Mar. 15, 2024).

#### *1. The Interest of Justice Supports a Transfer Rather than Dismissal.*

There are three[5] primary transfer vehicles at the Court's disposal under federal law: i) 28 U.S.C. § 1404(a); ii) 28 U.S.C. § 1406(a); and iii) 28 U.S.C. § 1631. Each transfer statute contains the same directive to the courts: that transfer is allowed "in the interest of justice." *See* § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer a civil action"); § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought"); § 1631 (whenever a district court "finds there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action…to any other such court").

Whether the "interest of justice" supports a transfer largely turns on whether the plaintiff's decision to initiate the action in the original district was reasonable, *see Sherman v. Biglari*, 2020 WL 6273935, at *4 (N.D. Ohio Oct. 26, 2020), and whether plaintiff intentionally abused judicial process by filing the action in the improper venue, *see Choice Hotels*, 2024 WL 1142162, at *4.[6]

Here, Plaintiffs did not abuse the judicial process by filing in this Court. Rather, their

---

[5] Defendants' Consolidated Memorandum in Support discusses just two of these.

[6] Decisions where the interest of justice *did not* warrant a transfer, like *Stanifer v. Brannan*, 564 F.3d 455 (6th Cir. 2009) are instructive. In *Stanifer*, a Kentucky-plaintiff sued two Alabama-defendants in the Western District of Kentucky. *Id.* at 455. The lawsuit stemmed from a car accident in Alabama. *Id.* In affirming dismissal, the Sixth Circuit held that the Kentucky-plaintiff did not have the slightest reason to believe that he could obtain personal jurisdiction over the defendants and that the plaintiff misused the processes of the court. *Id.* at 457. As detailed throughout this Opposition, the facts here are nothing like those in *Stanifer*.

decision to do so was reasonable: multiple Defendants are Ohio citizens for diversity purposes; multiple Plaintiffs reside in the Northern District of Ohio; and a variety of predicate acts of fraud occurred within the Northern District of Ohio. Conversely, Plaintiffs could not identify one factual contention (beyond the incorporation of the Swiftarc Entities) connecting this matter to Delaware. And, based on the arguments presented above, the Clause does not apply.

But if the Court finds the Clause enforceable, transfer is the appropriate remedy because both i) the transferee venue is identified (Delaware); and ii) the governing law[7] is clear (Delaware). Thus, dismissal is not the appropriate way to enforce the parties' Clause.

Although Defendants acknowledge these basic principles (*i.e.*, that forum selection clauses "are often enforced through transfer," (Dkt. 35-1, PageID: 404), they nonetheless argue for dismissal without prejudice under Rule 12(b)(6). Their underlying understanding of the transfer statutes is inaccurate, and the caselaw Defendants rely upon is inapplicable. In two of the cases, plaintiffs did not even oppose the defendant's argument that enforcement of a forum selection clause under Rule 12(b)(6) was appropriate, or that transfer was the preferred mechanism. *See Smith v. Aegon Companies Pension Plan*, 769 F.3d 922, 933 (6th Cir. 2014) ("[Plaintiff] never sought transfer before the district court"); *JEM Design, Inc. v. ABB Inc.*, 2012 WL 13012352, at *1 (E.D. Mich. Feb. 22, 2012) ("[Plaintiff] has not filed a response to [Defendant's] motion" to dismiss under Rule 12(b)(6) to enforce a forum selection clause). And the third case, which itself acknowledges only the Sixth Circuit's "implicit endorsement" of Rule 12(b)(6) as a proper means of enforcement, is in direct conflict with prior decisions from the same district. *Compare C. Thorrez Indus., Inc. v. LuK Transmissions Sys., LLC*, 2010 WL 1434326, at *3 (N.D. Ohio Apr. 8, 2010) (Liou, J.), *with American Greetings, Corp. v. Cookie Jaw Entertainment, Inc.*, 2009 WL

[7] As the parties agree which law applies, there is similarly no concern which transfer statute the Court selects discussed below.

3713686, at *2 (N.D. Ohio Nov. 3, 2009).[8]

Finally, Defendants rely on footnote 8 in *Atlantic Marine* to support their argument that, "in these circumstances," dismissal is appropriate. (*See* Dkt. 35-1, PageID: 405). But "these circumstances" are quite different from the circumstances discussed in footnote 8 of *Atlantic Marine*. There, the Supreme Court discussed what standards apply "to motions to dismiss for *forum non conveniens* in cases involving valid forum-selection clauses pointing to state or foreign forums." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*, 571 U.S. 49, 66 n. 8 (2013). As the Court is aware, a successful motion under *forum non conveniens* requires dismissal because a federal court has no authority to transfer a matter to a state or foreign tribunal. *Id.* But here, the Clause at issue points to another federal district, namely the District of Delaware. As such, this Court can exercise its authority under the transfer statutes to effectuate the transfer, rather than dismissal, of this matter.

***2. The Transfer Statutes Authorize a Transfer of the Matter to Delaware.***

Because the interests of justice support a transfer, the transfer statutes provide the Court with the power to transfer to the District of Delaware. Section 1404(a) allows for transfer for the "convenience of parties and witnesses[.]" 28 U.S.C. § 1404(a). Before ordering a transfer under § 1404(a), courts within the Sixth Circuit require that they first have personal jurisdiction over the defendant. *See Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993). Here, the Court can exercise personal jurisdiction over all Defendants under 15 U.S.C. § 78aa(a). *See* Section I.A.-B, *supra*. As such, the Court may enforce the Clause by transferring this matter under § 1404(a).

However, even if the Court agreed with Defendant Ziv and found that it did not have

[8] In *American Greetings*, Judge Gwin noted that the Sixth Circuit has not decided the issue of whether a forum selection clause may be enforced through Rule 12(b)(6). *Id.* at *2. Rather, *American Greetings* affirmed the purpose of Rule 12(b)(6), which is to test, as a matter of law, whether plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Id.* Enforcing a forum selection clause, which deals with the proper venue to litigate a dispute, is not the same as testing the merits of an underlying complaint.

personal jurisdiction over him, the Court may still effectuate a transfer under either § 1406(a) or § 1631. The Sixth Circuit has reinforced the notion that § 1406(a) "provides the basis for any transfer made for the purpose of avoiding an obstacle to adjudication on the merits," whether that "defect may be improper venue or lack of personal jurisdiction." *See Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980). Similarly, § 1631 allows a court to transfer if it finds a "want of jurisdiction." 28 U.S.C. § 1631. The Sixth Circuit applies § 1631 when a court identifies *any* jurisdictional defect, including a want of personal jurisdiction. *Roman v. Ashcroft*, 340 F. 3d 314, 328 (6th Cir. 2003). And unlike § 1406(a), § 1631 makes no mention of venue. Thus, the Court has two more options to effectuate a transfer of Ziv should it find it lacks personal jurisdiction, either § 1406(a) or § 1631.

Defendants attempt to muddy this rather straightforward analysis by arguing that both §§ 1404(a) and 1406(a)[9] do not apply. In doing so, Defendants argue for a zero-sum game: that, i) because the Court lacks personal jurisdiction over one defendant (Ziv), § 1404(a) is wholly inappropriate to the other defendants; and ii) because venue is facially appropriate in this District as to most defendants, § 1406(a) is inappropriate as to Ziv. Importantly, Defendants cite no caselaw for this expansive reading of either §§ 1404(a) and 1406(a). And, even if the Court determines that it lacks personal jurisdiction over Ziv, which it should not, Plaintiffs are unaware of precedent that forecloses a "mixed" approach to effectuate a transfer of i) Ziv under § 1631 (or § 1406(a)); and ii) the remaining defendants under § 1404(a).

For these reasons, if it finds the Clause enforceable, the Court should transfer this matter to the District of Delaware rather than dismiss the case. The interest of justice supports a transfer

[9] As stated, Defendants do not address transfer under § 1631. But § 1631 should assuage Defendants' concerns that transfer is applicable under § 1406(a) because venue is appropriate where, as stated above, § 1631 makes no mention of venue being proper or not.

as there has been zero bad faith by Plaintiffs in filing in this District. As for the authority to transfer, §§ 1404(a), 1406(a), and 1631 can all apply. Accordingly, the Court should transfer the matter to the District of Delaware should it find the Clause applicable and enforceable.

## III. PLAINTIFFS PROPERLY STATED CAUSES OF ACTION AGAINST DEFENDANTS KRASOVEC, ZIV, AND URQUIJO.

### A. Plaintiffs' Complaint satisfies the required pleading standards.

At the pleading stage, Plaintiffs must allege facts that "state a claim to relief that is plausible on its face" and raise their "right to relief above a speculative level." *Cook v. Ohio Nat. Life Ins. Co.*, 961 F.3d 850, 855 (6th Cir. 2020). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556, U.S. 662, 678 (2009). When deciding a Rule 12(b)(6) motion, courts must "construe the complaint in the light most favorable to the plaintiffs and draw all reasonable inferences in their favor." *Golf Village North, LLC v. City of Powell, Ohio*, 14 F.4th 611, 617 (6th Cir. 2021).

Claims sounding in fraud require a higher level than just plausibility—they must be pleaded with particularity. Fed. R. Civ. P. 9(b). The Sixth Circuit "require[s] plaintiffs pleading under Rule 9(b) to allege the time, place, and content of the alleged misrepresentation, the fraudulent scheme, the defendant's fraudulent intent, and the resulting injury. *Kolominsky v. Root, Inc.*, 100 F.4th 675, 684 (6th Cir. 2024). But "[w]hen read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct." *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 504 (6th Cir. 2007). "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim. *JAC Holding*

*Enterprises, Inc. v. Atrium Capital Partners, LLC*, 997 F.Supp.2d 710, 727 (E.D. Mich. 2014). Finally, Rule 9(b) should "be applied less stringently" where, as here, "there has been no discovery" conducted, "the alleged fraud occurred over an extended period of time," the fraud is "within the knowledge and control of" the defendants, and it "consists of numerous acts." *Id*. Only the fraudulent statements must be pled with particularity; "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Claims under Section 10(b) fall under the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and "shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). The PSLRA also requires that Plaintiffs "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" for each misrepresentation or omission. *Id.* § 78u-4(b)(2)(A).

**B. <u>Plaintiffs' fraud-based claims are alleged with sufficient particularity.</u>**

In their Motion to Dismiss, Defendants gloss over the sufficiently pleaded allegations and lump Plaintiffs' fraud-based claims (Counts I, III, and IV) together.[10] To state a claim on Count I, Plaintiffs must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and purchase or sale of the security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011). Defendants' Motion focuses on elements (1), (2), and (4).

[10] Plaintiffs' state law fraud claims are not subject to the heightened PLSRA pleading standard. Because Plaintiffs' Complaint satisfies this higher pleading standard, Plaintiffs have likewise stated a claim for Counts I, III and IV.

### *1. Plaintiffs Allege Actionable Omissions and Misrepresentations.*

#### *a. Defendants Krasovec and Ziv had a duty to disclose and correct omissions.*

As Defendants acknowledge, Plaintiffs' case is predicated primarily on omissions. But what Defendants misunderstand, is that Defendants' material omissions (or failures to correct half-truths) started at the beginning of their relationship with Plaintiffs and continued through when Krasovec and Ziv cut and ran from the Swiftarc Entities.

Defendants argue that "silence, absent a duty to disclose, is not misleading under Rule 10b-5." Plaintiffs agree. Defendants' Motion fails, however, because Krasovec and Ziv did have said duty to disclose, yet they failed—time and again—to do so. Defendants' duty to disclose stems from at least two sources: 1) their fiduciary duty to do so under Delaware law, as discussed more below in Section III.C. *See Chiarella v. United States*, 445 U.S. 222, 230 (1980); and 2) their individual duty to correct statements that were "inaccurate, incomplete, or misleading." *Plagens v. Deckard*, 2023 WL 2711263, at *16 (N.D. Ohio Mar. 30, 2023). Whether the duty to speak arises depends on if the omitted information contains "hard" or "soft" information. "Hard information" is "historical" and is "objectively verifiable" information. *In re TransDigm Group, Inc. Sec. Lit.*, 440 F. Supp. 3d 740, 762 (N.D. Ohio 2020). "Soft information" is future oriented, like predictions or opinions. *Id.*

Here, Plaintiffs alleged omissions concerning "hard information."[11] As just one example,

[11] In their Motion, Krasovec and Ziv now profess—or at least want the Court to believe— they were only "minor, non-managing member consultants" to the Swiftarc Entities instead of General Partners. That position borders the absurd given the multiple references to "General Partners" throughout the Marketing Materials, Offering Documents, and prior and subsequent interactions with Plaintiffs as detailed in the Complaint.
However, if the Court were to credit these new admissions, then a necessary finding that all Krasovec and Ziv's statements and solicitations to the Plaintiffs were materially misleading and false. Again, Krasovec and Ziv represented, verbally and in writing, time and again that they were General Partners. These two Defendants are both individually successful financial professionals, and their support of Jawahar and involvement with the Swiftarc Entities was the lynchpin for most, if not all, investor-Plaintiffs. For them to now say they were not as involved as they initially and repeatedly represented would significantly alter Plaintiffs' decision to invest.

Plaintiffs alleged both Krasovec and Ziv omitted information related to "Jawahar's and Swiftarc Capital's past fraud as it relates to the Arizona Litigation, the Texas Civil Litigation, and the TSSB Investigation," which makes the Offering Documents, Marketing Materials, and other oral and written communications misleading. (Dkt. 1, ¶ 242(a)).

The Arizona Litigation, Texas Civil Litigation, and TSSB Investigation are objectively verifiable facts that should have been disclosed to Plaintiffs. Instead, Marketing Materials, and the PPM specifically, portray Swiftarc Capital inaccurately. According to the PPM, "Swiftarc Capital's ***portfolio*** consists of fast-growing consumer ***businesses*** that are listed in local markets in the following consumer staple categories: food retail, fast food, household products, fast moving goods, and food and beverage products." (Dkt. 1-2, PageID: 76) (emphasis added). Yet, at the time this statement was made,[12] Swiftarc Capital's "portfolio" consisted of just one foreign tobacco company, where Swiftarc Capital exclusively invested 99% of its capital. (Dkt. 1, ¶ 56). Also by this time, the Arizona plaintiffs commenced litigation against Jawahar and Swiftarc Capital. Additional Swiftarc Capital investors subsequently demanded redemptions which ultimately led to the Texas Civil Litigation filed in September 2021. Moreover, the TSSB Investigation was almost certainly underway. As such, this statement concerning Swiftarc Capital was false.

Moreover, omitting accurate information about Swiftarc Capital was material. If the truthful information about Swiftarc Capital was disclosed, it would have "significantly altered the total mix of information made available" to Plaintiffs. *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). Such information would have exposed Jawahar's true nature and the threat he presented to Plaintiffs' capital.

---

As such, per the Court's grant of leave for Plaintiffs to amend their Complaint, Plaintiffs will include the necessary allegations to hold both Krasovec and Ziv responsible for their alleged now-professed position of non-involvement with the Swiftarc Entities, which renders all prior statements of their involvement as General Partners materially false.

[12] The PPM attached to the Complaint is dated September 1, 2021.

Simply put, when Swiftarc Capital was discussed in the PPMs, the law required that discussion to be accurate. As shown above, however, that representation of Swiftarc Capital was false at the time the representations were made. And as discussed below, both Krasovec and Ziv knew of this inaccurate statement and had the duty to correct it, but never did.

A similar analysis applies to omissions, or failures to correct the misrepresentations, that followed the TSSB Order and Swiftarc Statement. Despite being aware of the TSSB Order and Jawahar's fraudulent behavior, Krasovec and Ziv orchestrated a plan to benefit themselves. Simultaneously, Krasovec and Ziv shirked their duties to Plaintiffs to correct the misrepresentations contained in the Swiftarc Statement. Again, the misrepresentations in the Swiftarc Statement were material, because if Plaintiffs knew that Jawahar was ordered to "cease committing fraud,"[13] Plaintiffs would not have responded to additional capital calls and invested *an additional $1.4 million* with Jawahar. (Dkt. 1, ¶¶ 148-49). Accordingly, Plaintiffs have pled material omissions that Krasovec and Ziv failed to correct, despite having a duty to do so.

***b. Defendants are liable for affirmative misrepresentations.***

As for the affirmative misrepresentations for which Krasovec and Ziv are responsible, Defendants argue Plaintiffs' alleged use of "group pleading" is improper.[14] Defendants, however, overstate their position.

When stating claims against multiple defendants under Rule 9(b), Plaintiffs cannot "simply lump multiple defendants together without explaining each defendant's culpable role." *Heritage Global Network Los Angeles v. Welch*, 2024 WL 695772, at *11 (M.D. Tenn Feb. 20, 2024). But this "group pleading doctrine" does not bar plaintiffs from alleging that multiple defendants acted

---

[13] The Swiftarc Statement attributed the TSSB Order to "the unethical actions of a former employee[.]" (Dkt. 1-7, PageID: 228).

[14] "Group pleading" is the attempt to attribute false or misleading information conveyed in corporate statements to the collective actions of corporate officers. *City of Monroe Employees Retirement Sys. v. Bridgestone Corp.*, 399 F.3d 651, 689 (6th Cir. 2005). The Sixth Circuit has not addressed group pleading in the PLSRA context. *Id.* at 690.

in concert—indeed, they can "use ordinary language to do so." *Id*. And "if one fact establishes culpability for more than one defendant," Plaintiffs are entitled to say so. *Id*.

Claims under the Exchange Act follow a distinct, yet similar, set of guidelines. In *Janus Capital Group, Inc. v. First Derivative Traders*, the Supreme Court found that the "maker" of a statement for purposes of Section 10(b) is the one "with ultimate control over the statement, including its contents and how to communicate it." 564 U.S. 135, 142 (2011). In *Welch*, the court found that plaintiffs adequately alleged two executives of an investment fund made material misrepresentations included in private placement memoranda. *Welch*, 2024 WL 695772, at *12. There, entity defendants made misrepresentations. *Id*. Nonetheless, the court found it proper to impute liability for these statements on the two executives under *Janus* where: (1) the investment firm was founded and operated by the two executives; (2) the private placement memorandum at issue reiterated the two executives' centrality to the firm's operations; (3) investment solicitations made it clear that the two executives were involved in the process; and (4) the complaint specifically alleged (in a conclusory fashion) that the two executives had authority over verbal and written statements concerning the fund offering. *Id*. Taken together, the *Welch* court found these allegations warranted the denial of a motion to dismiss because the allegations did not rely on group pleading. *Id*.

Here, Plaintiffs' allegations as to Krasovec and Ziv largely mirror those found sufficient in *Welch*: (1) Krasovec and Ziv co-founded Swiftarc Ventures and the subsequent entities (Dkt. 1, ¶¶ 58-61); (2) the PPM stated both Krasovec's and Ziv's centrality to the operation (Dkt. 1-2, PageID: 79); (3)(a) Jawahar routinely relied on Krasovec's and Ziv's involvement in the Swiftarc Entities when soliciting new investors (Dkt. 1, ¶ 50); (3)(b) both Krasovec and Ziv solicited investors themselves directly (*id.* at ¶¶ 80, 87, 90-91); and (4) Krasovec and Ziv approved Marketing

Materials and Offering Documents (*id.* at ¶¶ 91, 257-58).

Contrary to Defendants' assertions then, the Complaint reflects more than just passive involvement from Krasovec and Ziv. Given these allegations, the law permits attribution to both Krasovec and Ziv the misrepresentations contained in the Marketing Materials, Offering Documents, and the Swiftarc Statement. Accordingly, Plaintiffs have alleged actionable omissions and misrepresentations, and Defendants' Motion must be denied.

***2. Plaintiffs Pled Defendants Acted with the Requisite State of Mind.***

Plaintiffs properly alleged that Defendants possessed the requisite scienter. Count I requires Plaintiffs to state with particularity facts that give rise to a strong inference that Defendants acted with the requisite state of mind as to each statement or omission alleged. *City of Taylor General Employees Retirement Sys. v. Astec Indus., Inc.*, 29 F.4th 802, 812 (6th Cir. 2022) (quoting 15 U.S.C. § 78u-4(b)(2)(A)). Scienter need not be definitely proven by a plaintiff's pleading; instead, it must be "cogent and at least as compelling as any opposing inference[.]" *Tellabs, Inc. v. Makor Issues & Rights, LTD.,* 551 U.S. 308, 324 (2007). To that end, scienter must be viewed wholistically, not upon individual allegations. *Frank v. Data Corp.*, 646 F.3d 954, 961 (6th Cir. 2011). Moreover, scienter can be shown by recklessness. *Id.* at 959. A defendant is reckless if he ignores "multiple, obvious red flags . . . demonstrating an egregious refusal to see the obvious, or to investigate the doubtful." *Doshi v. Gen Cable Corp.*, 823 F.3d 1032, 1039 (6th Cir. 2016) (citations omitted).

Krasovec and Ziv argue Plaintiffs failed to plead the requisite scienter because: 1) Plaintiffs' allegations only relate to their membership interest, executive-level roles, and conclusory allegations regarding access to bank accounts, which is not enough; and 2) Plaintiffs' attachments undercut Krasovec's knowledge until long after Plaintiffs invested with the Swiftarc Entities. However, these attacks miss their mark. ***First***, Defendants position reflects an attempt to

single out allegations and attack them in piecemeal fashion. But the law requires just the opposite approach – to view them wholistically. *Tellabs*, 551 U.S. at 322-23; *Frank*, 646 F.3d at 961.

***Second***, when the allegations are read as a whole, as the law requires, Plaintiffs allege sufficient facts that provide the necessary scienter in that both Krasovec and Ziv deliberately knew what was occurring or were at least reckless in not knowing or investigating further. For example, Defendants conveniently overlook their long involvement with Jawahar and the fraud-allegations that surfaced well-before Plaintiffs invested with the Swiftarc Entities. Krasovec had partnered with Jawahar since at least 2016, (*id.* at ¶ 53), and Ziv since at least 2019 (*id.* at ¶ 61). Formal allegations of fraud, deceit, conversion, and misuse by Jawahar and Swiftarc Capital, which both Krasovec and Ziv were involved in, soon followed. (*Id.* at ¶¶ 64-73). Thus, Defendants' knowledge comes not solely from their positions and day-to-day involvement in the companies, but also from their history with Jawahar, his schemes, his liabilities, and his victims throughout the years.

***Third***, Krasovec's attempt to rely on Exhibit 8 (Dkt. 1-8) to argue that he was unaware of Jawahar's misconduct is misplaced. As background, Exhibit 8 followed Employee 2's attempt to obtain a full accounting on behalf of Plaintiff YTH 003, LLC from Jawahar and Urquijo following the TSSB Order. After seeking help from both Krasovec and Ziv,[15] Krasovec admitted he was "aware of the TSSB" because "they [law enforcement] interviewed an investor I [Krasovec] introduced to Swiftarc [Capital]." (Dkt. 1-8, PageID: 232). Later, Krasovec reported he had "been with [Jawahar] the last four days and [Jawahar and Krasovec were] aligned with reporting and our fundraising and investment strategy for the balance of this year and into most of next year." (*Id.* at PageID: 231). Exhibit 8, then, reflects both i) Krasovec's *preexisting knowledge* of the TSSB

[15] At least Krasovec responded to Employee 2. As the Complaint alleges, Ziv, "ignoring his own fiduciary responsibilities, told Employee 2 to 'talk to Frank [Krasovec].'' (Dkt. 1, ¶ 118).

Investigation and material involvement with Swiftarc Capital;[16] and ii) Krasovec's future "alignment" (*i.e.*, agreement) to continue to work with Jawahar in orchestrating what ultimately became the fraudulent Beauty Fund Swap. Thus, Exhibit 8 further evidences Krasovec's scienter in knowing about, concealing, and then allowing Jawahar's fraud to continue unabated.

All told, the Complaint alleges strong inferences of scienter against Krasovec and Ziv. The Sixth Circuit uses a list of nine non-exhaustive factors to determine if scienter has been adequately alleged. *Doshi*, 823 F.3d at 1039-40. Both Krasovec and Ziv had partnered with Jawahar since at least 2019 (much earlier for Krasovec). Both cofounded Swiftarc Ventures with Jawahar in January 2019. Both were aware—or reckless in not being aware—of litigation involving Swiftarc Capital and Jawahar that accused him, and found him liable, of fraudulent behavior.[17] Both lent and attached their personas, experience, success, acumen, and credibility to the Swiftarc Entities to legitimize the investments and boost Jawahar, even after litigation and investigation commenced and continued against Jawahar. At least Krasovec admitted he was aware of the TSSB, almost certainly before TSSB made its Order in June 2022. Yet when the Swiftarc Statement was published, neither Krasovec nor Ziv corrected the material misrepresentations within it.[18] Instead, Krasovec expressed his alignment with Jawahar to third parties, while simultaneously he, Ziv, and others orchestrated the fraudulent Beauty Fund Swap.[19] Beyond that, Krasovec and Ziv also sought protection from liability for their involvement with Jawahar in the form of indemnification and

---

[16] This fact also undercuts the idea that it was not until Employee 2's "whistleblowing" that Krasovec and Ziv first became aware of Jawahar's fraud.

[17] *Doshi* factors four and five: (4) "evidence of [fraud] by a top company official;" and (5) "existence of an ancillary lawsuit charging fraud by a company[.]" *Id.* at 1039.

[18] *Doshi* factor six: "disregard of the most current factual information before making statements." *Id.* at 1039.

[19] *Doshi* factors one, two, eight and nine: "(1) insider trading at a suspicious time;" "(2) divergence between internal [conduct] and external statements;" and (8) and (9) "personal interest" and "self-interested motivation" of defendants. *Id.* at 1039-40.

insurance agreements.[20] Accordingly, the Complaint contains sufficient allegations to establish a strong inference of scienter as to Krasovec and Ziv, and the Court should deny their Motion.

#### ***3. Plaintiffs Reasonably Relied Upon Defendants' Omissions and Misrepresentations.***

As Defendants acknowledge, Plaintiffs must allege facts that demonstrate their reliance on the omissions and misrepresentations alleged in the Complaint was "*reasonable*." This word signifies the impropriety of dismissal at the pleading stage, as whether a plaintiff's reliance is reasonable is typically a question for the trier of fact. *See Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 921 (6th Cir. 2007). Thus, as a threshold matter, Defendants' argument is premature.

Moreover, as discussed above, Plaintiffs claims against Krasovec and Ziv are primarily omissions and failures to disclose. For such claims, the law presumes reliance. *See Affiliate Ute Citizens v. United States*, 406 U.S. 128, 153 (1972); *Zaluski v. United American Healthcare Corp.*, 527 F.3d 564, 571-72 (6th Cir. 2008) ("Once materiality [of the omission] is proved, reliance need not be shown"). Courts within the Sixth Circuit apply this presumption even in cases where there may be a mix of omissions and misstatements. *In re FirstEnergy Corp. Sec. Lit.*, 2023 WL 2709373, *20 (S.D. Ohio Mar. 30, 2023). Thus, this Court should find the same here and apply a presumption of reliance due to the material omissions alleged against Defendants.

Substantively, Krasovec and Ziv argue Plaintiffs could not have relied on their involvement, and Defendants direct the Court's attention to June 2022, the time of the TSSB Order. By doing so, and as discussed above, Defendants conveniently ignore their *years* of involvement with Jawahar. Indeed, both Krasovec and Ziv were with Jawahar from the founding of Swiftarc Ventures (and much earlier) and are displayed prominently in Marketing Materials and Offering

---

[20] *Doshi* factor eight: "personal interest of certain [general partners] in not informing [limited partners] of [the Beauty Fund Swap]." *Id.* at 1040.

Documents. Neither Krasovec nor Ziv can seriously contest that Plaintiffs knew about, and relied upon, these representations at the time of their initial investment. Thus, Defendants shift of the timeline is improper.

Finally, Defendants rely on boilerplate provisions (contained in agreements they are not parties to)[21] that exclaim reliance by "sophisticated" and "accredited" investors who did their "due diligence." However, the cited provisions do not insulate Defendants from fraud. For one, when used in this context, non-reliance provisions may run afoul of 15 U.S.C. § 78cc(a), which voids contractual provisions that waive a party's compliance obligations with securities laws, including Rule 10b-5. 15 U.S.C. § 78cc(a).[22] Moreover, generic boilerplate clauses like those raised by Defendants rarely succeed at the motion-to-dismiss stage, as reliance is a fact-based inquiry. *See Comi Investments, LLC v. Kiss Industries, LLC*, 2021 WL 12298485, *3 (D. Colo. July 26, 2021). Thus, even if the Court were to afford any weight to these boilerplate provisions, it should not be dispositive of Plaintiffs' Complaint. For these reasons, Plaintiffs have alleged reasonable reliance on the omissions and misrepresentations at issue and Defendant's Motion should be dismissed.

### C. Plaintiffs stated a claim for Control Person Liability (Count II) and Breach of Fiduciary Duty (Count VI).

Krasovec and Ziv next argue that Counts I, II, III, IV, and VI fail to state a claim because neither Krasovec nor Ziv possessed control of the Swiftarc Entities. Moreover, both Defendants argue they owe no fiduciary duty to Plaintiffs. Defendants' position is incorrect in both regards.

Krasovec and Ziv offer just one paragraph on how they, admitted members of the GP LLCs, owed no fiduciary duties to Plaintiffs. But this position is inapposite with Delaware law. In

[21] The Sixth Circuit noted a similar fact when analyzing the impact of a non-reliance clause on a plaintiff's Rule 10b-5 claim. *See Brown*, 481 F.3d at 921. The Circuit Court in *Brown* later upheld the trial court's denial of summary judgment despite the existence of a non-reliance clause in the subscription agreement. *Id.*

[22] *See also AES Corp. v. Dow Chemical Co.*, 325 F.3d 174, 180 (3d Cir. 2003) (noting tension between § 78cc(a) and non-reliance provisions in private agreements).

Delaware, state courts consistently hold that individuals "who control the general partner owe to the limited partners at a minimum the duty of loyalty[.]" *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 670-71 (Del. Ch. Nov. 28, 2012) (relying on *In re USACafes, L.P. Lit.*, 600 A.2d 43 (Del. Ch. 1991)). And the duty owed by these individuals is "the duty not to use control over the partnership's property to advantage the corporate director at the expense of the partnership." *Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, 2009 WL 1124451, at *10 (Del. Ch. Apr. 20, 2009). For this simple reason, Krasovec and Ziv, as members of the GP LLCs, can (and did) owe Plaintiffs a duty of loyalty, so long as they controlled the entities (which they did).

In the context of Section 20(a) control liability, Plaintiffs must allege two requirements: i) that the controlled person "committed an underlying violation of the securities law or the rules and regulations promulgated thereunder;" and ii) that "the control person defendant 'must have directly or indirectly controlled the person liable for the securities law violation.'" *In re Nat'l Century Fin.*, 553 F. Supp. 2d 902, 911 (S.D. Ohio 2008). At issue here is the second element.

Indeed, Defendants do not contest—and specifically distance themselves from—the securities laws violations by Jawahar, Urquijo, and the Swiftarc Entities. As to the second "control" prong, the SEC defines control as the "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405. In pleading control, all Plaintiffs must allege is that Krasovec and Ziv "had the capacity to control the primary violator" and that "the actual exercise need not be alleged." *In re Nat'l Century Fin.*, 553 F. Supp. 2d at 913. Plaintiffs here have satisfied this more lenient pleading standard. *Id.* at 912.

Defendants argue they did not control the GP LLCs because i) Jawahar *solely* controlled the entities as the government alleged in its Indictment against Jawahar; and ii) Defendants'

minority membership interest is not enough. Both arguments lack merit. ***First***, Krasovec and Ziv cite no caselaw to support their implied position that there cannot be *multiple* control persons of a corporate entity. In fact, caselaw supports the opposite conclusion, denying motions to dismiss where multiple defendants are alleged to have controlled a primary violator. *See*, *e.g. In re Nat'l Century Fin.*, 504 F. Supp. 2d 287, 304 (S.D. Ohio 2007) (finding sufficient allegations that three directors controlled the entities under Section 20(a)). And ***second***, while Plaintiffs agree that a person's directorship or minority shareholder status alone is insufficient to support a claim for control person liability, *id.* at 300-301, Plaintiffs bolstered their Complaint with allegations supporting an inference that both Krasovec and Ziv possessed the requisite control.

Specifically, the Complaint alleges both Krasovec's and Ziv's control over the Swiftarc Entities through their day-to-day involvement. *See* Introduction and Background, *supra* at p. 4. Beyond these examples of involvement and control of limited partnership assets, the prime example of Defendants' "power to direct…the management and policies of" the Swiftarc Entities was the Beauty Fund Swap itself. (*See generally*, Dkt. 1, ¶¶ 127-149). In just that example alone, Krasovec and Ziv, with others, concealed material information and orchestrated the transfer of management and control over limited partnership assets and the Swiftarc Entities. Each entity involved in this case was impacted by the Beauty Fund Swap. (*See id.* at ¶¶ 135-36). And through the Swap, various corporate assets were moved and manipulated by Krasovec and Ziv without Plaintiffs' informed consent in a way that benefitted Krasovec and Ziv.

As members of the GP LLCs, Delaware law recognizes that both Krasovec and Ziv owe, at a minimum, certain fiduciary duties under the law. Moreover, Krasovec and Ziv not only had the ability to control the Swiftarc Entities but exercised that control through their day-to-day involvement and the Beauty Fund Swap. Plaintiffs allege that Defendants used that control to

benefit themselves at Plaintiffs expense. Accordingly, Plaintiffs have satisfied their lenient burden in demonstrating both the presence of certain fiduciary duties and control over the corporate entities and the Court should deny Defendants' Motion as to Counts I, II, III, IV, and VI.

### D. <u>The Complaint alleges more than sufficient facts to plead Civil Conspiracy (Count V) and Aiding and Abetting Breach of Fiduciary Duty (Count VII) because Krasovec and Ziv knew about the fraud and facilitated its commission.</u>

Defendant Krasovec and Ziv's sole objection to Plaintiffs' claims for aiding and abetting breach of fiduciary duty and civil conspiracy are based on a misreading of the Complaint. They believe Plaintiffs' lone theory is that "Ziv and Krasovec failed to act when they purportedly learned of Jawahar's wrongdoing[.]" (Dkt. 35-1, PageIDs: 420-21). While that theory is true, Krasovec and Ziv conveniently neglect the allegations in the Complaint that reflect their "knowing participation" and "coordination of action" with Jawahar, Urquijo, and the Swiftarc Entities.

A claim for civil conspiracy involves: "(1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) actual damage." *In re American Intern. Group, Inc.*, 965 A.2d 764, 805 (Del. Ch. 2009).[23] Even for civil conspiracy claims based in fraud, both knowledge of the fraud and the existence of an agreement "may be pled by inference" and are "not subject to the specificity requirement of Rule 9(b)." *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *20 (Del. Ch. Nov. 26, 2014). Indeed, for knowledge, Plaintiffs need only "allege well-pleaded facts from which" this Court could "infer that the alleged fraud was knowable" and that Krasovec and Ziv "were in a position to know it." *Id.* at *21.

Similarly, a plaintiff properly alleges that a defendant aided and abetted another in

---

[23] Here, Krasovec and Ziv do not contest that an unlawful act—*i.e.,* fraud—occurred and that Plaintiffs suffered damages. (Dkt. 35-1, PageID: 420-21).

breaching a fiduciary duty when he shows: "(i) the existence of a fiduciary relationship, (ii) a breach of the fiduciary's duty, (iii) knowing participation in the breach by a non-fiduciary defendant, and (iv) damages proximately caused by the breach." *Firefighters' Pension Sys. of City of Kansas City v. Found. Bldg. Materials, Inc.*, 318 A.3d 1105, 1169-70 (Del. Ch. 2024). Importantly, claims "for aiding and abetting are fact intensive and ill-suited for disposition on the pleadings." *Clark v. Davenport*, 2019 WL 3230928, at *15 (Del. Ch. July 18, 2019) (analyzing a claim for aiding and abetting a fraud). This is because "the question of whether a defendant acted with *scienter* is a factual determination." *RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816, 862 (Del. 2015) (internal quotations omitted). Knowing participation can be pleaded generally, and it need not be pleaded with particularity. *Firefighters' Pension Sys. of City of Kansas City v. Presidio, Inc.*, 251 A.3d 212, 275 (Del. Ch. 2021) ("a complaint need only plead facts supporting a reasonable inference of knowledge"). To have knowledge, a defendant "must act knowingly, intentionally, or with reckless indifference." *RBC Capital Markets*, 129 A.3d at 862. To show participation, "a third party can participate in a fiduciary breach by ***facilitating*** or inducing a breach of the duty of care. *Presidio, Inc.*, 251 A.3d at 275.

The Complaint details that something was knowable, *i.e.,* that massive fraud was perpetrated through the Swiftarc Entities. And, as argued above, both Krasovec and Ziv were positioned to know about the fraud, or reckless in not knowing about it. *See* Section III.B.2., *supra*.

In their Motion, Krasovec and Ziv chose not to address the facts in the Complaint alleging their complicity with Jawahar. For example, they claim that Plaintiffs' allegation that Krasovec and Ziv "turned a blind eye" to Jawahar's rampant fraud demonstrates that they weren't complicit. (Dkt. 35-1, PageID: 421). To clarify, Plaintiffs actually alleged that Krasovec and Ziv "***facilitated***, turned a blind eye, and let [the fraud] happen." (Dkt. 1, ¶ 6). Other facts give rise to an inference

that they coordinated their actions with Jawahar. Indeed, Krasovec and Ziv controlled the Swiftarc Entities alongside Jawahar. *See* Introduction and Background, *supra* at p. 4; Section III.C., *supra*.

The direct and lengthy involvement of Krasovec and Ziv in the operations of Swiftarc Ventures allows the reasonable inference that they knew about and participated in the fraud—or at a minimum, knew about the Swiftarc Entities' breaches of fiduciary duties. Therefore, the Court should deny Krasovec and Ziv's Motion to Dismiss as to Counts V and VII.

### E. **In the alternative, Defendants Krasovec and Ziv are liable to Plaintiffs for Unjust Enrichment (Count IX) due to their "alignment" with Jawahar and the increase of ownership in the Swiftarc Entities.**

Next, Krasovec and Ziv argue that Plaintiffs' claim for unjust enrichment must fail because Plaintiffs failed to allege Defendants' sufficient involvement in Counts V (Civil Conspiracy) and VII (Aiding and Abetting Breach of Fiduciary Duty). (Dkt. 35-1, PageID: 241). Specifically, they claim a lack of allegations indicating absence of justification. (*Id*.). Plaintiffs have already shown that their knowledge and participation in the scheme can be inferred from their significant and long-term cooperation with Jawahar. *See* Section III.D., *supra*.

Even still, Krasovec's and Ziv's interpretation of unjust enrichment is misleading.[24] Typically, the absence of justification element "entails some type of wrongdoing or mistake at the time of the transfer." *Territory of U.S. Virgin Islands v. Goldman, Sachs & Co.*, 937 A.2d 760, 796 n. 161 (Del. Ch. 2007) (internal quotations omitted). But wrongdoing is not required to show unjust enrichment.[25] The Delaware Supreme Court has held that a remedy under unjust enrichment

---

[24] Under Delaware law, the "elements of unjust enrichment are: (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) the absence of justification; and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

[25] Notably, Defendants make passing reference to the element of enrichment in a footnote. (Dkt. 35-1, PageID: 421, n.37). Plaintiffs' Complaint adequately alleges both Krasovec and Ziv were enriched. *See Blank v. TriPoint Global Equities, LLC*, 338 F. Supp. 3d 194, 219 (S.D.N.Y. 2018) (finding plaintiffs alleged a plausible claim of unjust enrichment against a corporate executive who "plausibly benefitted from his organizations' inducement of plaintiffs" into a Ponzi scheme). Moreover, the allegations concerning the Beauty Fund Swap reflect Defendants' improper enrichment at Plaintiffs' expense.

"serves to deprive the defendant of benefits that in equity and good conscience he ought not to keep, ***even though he may have received those benefits honestly in the first instance***[.]" *Schock v. Nash*, 732 A.2d 217, 232-33 (Del. 1999) (emphasis added; quotations and citations omitted). Where a defendant is "sufficiently aligned with the wrongdoer," "he ought to disgorge an unearned benefit conferred upon him by the wrongdoer at the victim's expense." *Jacobs v. Meghji*, 2020 WL 5951410, at *14 (Del. Ch. Oct. 8, 2020).

Krasovec and Ziv maintained an extensive and perennial relationship with Jawahar. *See* Sections III.B., D.-E., *supra*; (*see also* Dkt. 1, ¶¶ 51, 123) (alleging that Jawahar viewed his relationship with Krasovec as that of a "father and son"). While that relationship clearly gives rise to an inference that Krasovec and Ziv knew of and were engaged in the various breaches of fiduciary duty and the conspiracy, it shows—***at a minimum***—that they were not "passive part[ies] retaining a benefit" from a transaction conducted "at arm's-length and in good faith." *Jacobs*, 2020 WL 5951410, at *15. Indeed, they were often, as Krasovec told others, "aligned" with Jawahar on all things "Swiftarc." (*See* Dkt. 1-8, PageID: 231). There is no justification for these enrichments and their motion to dismiss Plaintiffs' claim for unjust enrichment should be denied.

### F. Defendants Krasovec and Ziv are liable to Plaintiffs as Purported Partners (Count VIII) because they held themselves out as general partners of the Swiftarc Funds.

In Count VIII, Plaintiffs bring an alternative claim that Jawahar, Krasovec, and Ziv are liable to Plaintiffs under Delaware's "Liability of a Purported Partner" statute. That statute prevents individuals like Krasovec and Ziv from doing exactly what they are trying to do here—limit their involvement in a partnership and leave Plaintiffs to seek redress elsewhere. In Delaware, "one subjects himself to partnership liability by words or conduct representing himself, or consenting to another's representing him, to anyone as partner." *Bragg v. Johnson*, 229 A.2d 497, 498 (Del. Super. 1966); *see also* 6 Del. C. § 15-308.

In their Complaint, Plaintiffs allege precisely that. Krasovec and Ziv held themselves out as general partners, consented to being held out as general partners, and now that such a title is unwanted, argue that they never were. Despite this, Krasovec and Ziv now take the absurd position that the words "general partner" next to their names cannot reasonably mean they are general partners. Their argument does not hold water.

To begin, both Krasovec and Ziv held themselves out as general partners. The PPM for each Swiftarc Fund, which induced Plaintiffs to invest, expressly denoted that both Krasovec and Ziv are "General Partners" of the Swiftarc Funds. (Dkt. 1-2, PageID: 77). Krasovec and Ziv relegate this critical fact to a footnote. (*See* Dkt. 35-1, PageID: 422 n. 38). Additionally, and contrary to Krasovec and Ziv's representation, the PPM ***from Swiftarc Ventures' Beauty Fund***, clearly indicates that Krasovec and Ziv served as General Partners for the new Swiftarc Funds.

In addition to the PPM, various Marketing Materials list Krasovec and Ziv as General Partners. (*See, e.g.,* Dkt. 1-1, PageID: 68; Dkt. 1-5, PageID: 215). Plaintiffs allege that Krasovec and Ziv controlled Swiftarc Ventures and had the ability to "review, approve, and order the dissemination of the Offering Documents and Marketing Materials." (Dkt. 1, ¶¶ 257-58). Time and again, Krasovec and Ziv personally led Plaintiffs and others to believe that they were general partners. If authorship could not be attributed to them, Krasovec and Ziv certainly knew that they were represented as general partners and ***failed to object*** to that representation. Their Motion ignored this second avenue of liability under Delaware law. *See* 6 Del. C § 15-308.

Defendants contend that it was the GP LLCs, and not themselves, who acted as general partners of the Swiftarc Funds. That's true. But that does not negate the fact Krasovec and Ziv repeatedly referred to themselves – and allowed them to be represented as – General Partners.[26]

[26] Delaware law specifically allows for there to be more than one general partner in a limited partnership. *See* 6 Del. C. § 17-401.

Krasovec and Ziv also claim that "General Partners" is a vague term that requires a precise definition. (Dkt. 35-1, PageID: 421). But what term should Plaintiffs have used instead? Again, Krasovec and Ziv referred to themselves as General Partners and allowed others to refer to them as the same, both verbally and in writing. Thus, Plaintiffs, when deciding to invest, used their common-sense and took Defendants at their own word: that Krasovec and Ziv were "General Partners" of the ***limited partnerships*** in which they invested—*i.e.*, the Swiftarc Funds. Any other meaning would be illogical.

Finally, Krasovec and Ziv argue—in two sentences—that it was unreasonable for Plaintiffs to rely on Krasovec's and Ziv's representations that they were general partners. (*Id.* at PageID: 422). Despite the absurdity that the phrase "General Partner" means something unrelated to partnership, Plaintiffs have already addressed those lack-of-reasonable reliance arguments above. *See* Section III.B.3., *supra*. Plaintiffs relied on Krasovec and Ziv's representations that they were general partners. In fact, many invested specifically because of their extensive investment experience. (*See, e.g.,* Dkt 1, ¶¶ 172, 195, 200, 208, 212, 222). Therefore, to the extent that Krasovec and Ziv are not general partners of the Swiftarc Funds, equity demands that they be accountable as general partners to the investors who relied on their involvement when investing.

**CONCLUSION**

Together with Jawahar and Urquijo, Krasovec and Ziv operated the Swiftarc Entities that perpetrated massive fraud against Plaintiffs and caused losses to them totaling over $5 million. For their part, they must be held accountable. Therefore, Plaintiffs respectfully request the Court deny Krasovec and Ziv's Motion to Dismiss and/or Transfer. In the alternative, Plaintiffs request that this Court transfer the instant litigation to Delaware to proceed on its merits.

Respectfully submitted,

*/s/ Christos Georgalis*

Christos N. Georgalis (OH: 0079433)
Patrick M. Rahill (OH: 0093556)
Scott M. Stevenson (OH: 0103211)
**Flannery | Georgalis, LLC**
1375 E. 9th St., Floor 30
Cleveland, OH 44114
(216) 367-2100
chris@flannerygeorgalis.com
prahill@flannerygeorgalis.com
sstevenson@flannerygeorgalis.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

I hereby certify that the foregoing memorandum in opposition to a dispositive motion complies with LR 7.1(f). This litigation has not been assigned to a case management track. Additionally, this memorandum, exclusive of the table of contents, table of authorities, and signature block, is 40 pages in length pursuant to this Court's October 15, 2024, Notation Order.

*/s/ Christos Georgalis*
Christos N. Georgalis (OH: 0079433)

*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

*/s/ Christos Georgalis*
Christos N. Georgalis (OH: 0079433)

*Attorney for Plaintiffs*