# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

KATHRYN A. RICHARDSON, TRUSTEE for the KATHRYN A. BILSKI REVOCABLE TRUST; KATHRYN A. RICHARDSON, TRUSTEE for the CAROL A. RICHARDSON TRUST; JOANNE HOLIDAY, individually and as TRUSTEE for the JOANNE MARIE HOLIDAY REVOCABLE TRUST DATED APRIL 11, 2016; ELIE MERHEB; ELIE MERHEB, TRUSTEE for the ELIE N. MERHEB REVOCABLE TRUST; YTH 003, LLC; AMBER TULLY; JOHN OWEN TULLY; BRETT MCCOY; SUNDAR MANICKAM; SOUNDHARIA MANICKAM; MARC MAZUR CONSULTANTS, INC; CARA ZALE, LLC; TERRI CROCKER, TRUSTEE for the JOSEPH K. CROCKER 2018 IRREVOCABLE TRUST; SAMIR HAIKAL; JUNTO GREEN, LLC; TEAM HARRIS 14, LLC; GARY HARRIS, TRUSTEE for the NINE FOURTEEN LIVING TRUST; ROSS TRAVIS; DINO PALMIERI; JEFF STANLEY; and DENISE STANLEY,

*Plaintiffs*,

v.

SIDDHARTH JAWAHAR; FABIAN URQUIJO; FRANK KRASOVEC; ZOHAR ZIV; SWIFTARC VENTURES, LLC; SWIFTARC TELEHEALTH LABS FUND LP; SWIFTARC TELEHEALTH LABS FUND GP, LLC; SWIFTARC VENTURES LAB FUND LP; SWIFTARC VENTURES LAB GP, LLC; BEAUTY GENERATIONS FUND I, LP f/k/a SWIFTARC BEAUTY FUND LP; SWIFTARC BEAUTY FUND GP, LLC; SJ INVESTMENT, LLC; SV SPV, LP; and SV LABS SPV II, LP,

*Defendants*.

NO. 1:25-CV-01135-CFC

## CONSOLIDATED OPENING BRIEF IN SUPPORT OF DEFENDANT FRANK KRASOVEC'S AND DEFENDANT ZOHAR ZIV'S MOTIONS TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

# TABLE OF CONTENTS


Table of Authorities ........................................................................ iii

I. Introduction ........................................................................ 1

II. Background ........................................................................ 3

A. The Relevant Swiftarc Entities and Their Members ........................ 3

B. Plaintiffs' Investment Agreements ................................................ 6

III. Legal Standard ........................................................................ 7

IV. Argument and Authorities ................................................................ 8

A. Plaintiffs' Claims Against Krasovec and Ziv for Fraud, Securities Fraud and Control Person Liability (Counts I, II, III & IV) Fail to Satisfy the Heightened Pleading Standard Necessary for Such Claims. ........................................................................ 8

1. Plaintiffs do not allege actionable, material misrepresentations or omissions by *Ziv* or *Krasovec*. ................ 9

2. Plaintiffs do not satisfy the heightened standard for alleging scienter with respect to Ziv and Krasovec. ................ 16

3. Plaintiffs cannot allege reasonable reliance with respect to any alleged misrepresentations or omissions by Ziv and Krasovec. ........................................................................ 21

B. Plaintiffs' Claims for Securities Fraud, Fraud, Control Person Liability and Breach of Fiduciary Duty (Counts I, II, III, IV & VI) Fail Because Ziv and Krasovec Do Not "Control" the "Swiftarc Entities" or Owe Fiduciary Duties to Plaintiffs. ................ 24

C. Plaintiffs' Claims for Aiding and Abetting Breach of Fiduciary Duty, Civil Conspiracy, And Unjust Enrichment (Counts V, VII & IX) Fail Because Plaintiffs Do Not Meet the High Bar Necessary for Alleging "Knowledge" and "Coordination of Action." ........................................................................ 27

D. Plaintiffs' Claims for "Liability of a Purported Partner" (Count VIII) Fail Because *Krasovec* and *Ziv* Did Not Hold Themselves Out to Be General Partners of the Limited Partnerships....................29

V. Conclusion ....................................................................................30

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abry Partners V, L.P. v. F & W Acquisition LLC*,
891 A.2d 1032 (Del. Ch. 2006) .......... 9, 18, 22

*Allied Capital Corp. v. GC-Sun Holdings, L.P.*,
910 A.2d 1020 (Del. Ch. 2006) .......... 27

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .......... 8

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) .......... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 7

*Belmont v. MB Inv. Partners, Inc.*,
708 F.3d 470 (3d Cir. 2013) .......... 19

*Bocock v. Innovate Corp.*,
No. 2021-0224-PAF, 2022 WL 15800273 (Del. Ch. Oct. 28, 2022), *reargument denied sub nom.*, 2022 WL 17101448 (Del. Ch. Nov. 22, 2022) .......... 27

*Bragg v. Johnson*,
229 A.2d 497 (Del. Super. Ct. 1966) .......... 30

*City of Edinburgh Council v. Pfizer, Inc.*,
754 F.3d 159 (3d Cir. 2014) .......... 10

*City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*,
713 F. Supp. 2d 378 (D. Del. 2010), *aff'd*, 442 Fed. Appx. 672 (3d Cir. 2011) .......... 18

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
70 F.4th 66 (3d Cir. 2023) .......... 9

*Copland v. Grumet,*
Civ. A. No. 96-3351 (MLC), 1998 WL 256654 (D.N.J. Jan. 9, 1998) .......... 26

*Dedrick v. Valuable Techs., Inc.*,
No. 22CV4341 (EP) (JBC), 2023 WL 8802820 (D.N.J. Dec. 20, 2023)......23

*DRR, L.L.C. v. Sears, Roebuck & Co*.,
949 F. Supp. 1132 (D. Del. 1996) ................................................................17

*GSC Partners CDO Fund v. Washington,*
368 F.3d 228 (3d Cir. 2004) ........................................................................18

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3d Cir. 1999, *abrogated on other grounds*, 551 U.S. 308 (2007)..........................................................................................................18

*In re Aetna, Inc. Sec. Litig.*,
617 F.3d 272 (3d Cir. 2010) ........................................................................12

*In re Azurix Corp. Sec. Litig.*,
198 F. Supp. 2d 862 (S.D. Tex. 2002), *aff'd sub nom.*, 332 F.3d 854 (5th Cir. 2003)....................................................................................................18

*In re Celgene Corp., Inc. Sec. Litig.,*
741 F. Supp. 3d 217 (D.N.J. 2024)..............................................................15

*In re Digital Island Sec. Litig.*,
223 F. Supp. 2d 546 (D. Del. 2002), *aff'd*, 357 F.3d 322 (3d Cir. 2004) and *aff'd*, 357 F.3d 322 (3d Cir. 2004) ........................................ 19, 26

*In re Enron Corp. Sec., Derivative & ERISA Litig*.,
761 F. Supp. 2d 504 (S.D. Tex. 2011)..........................................................23

*In re Hertz Glob. Holdings Inc*.
905 F.3d 106 (3d Cir. 2018) ........................................................................17

*In re Par Pharm. Sec. Litig.*,
No. CIV.A.06-CV-3226 (PGS), 2008 WL 2559362 (D.N.J. June 24, 2008)..........................................................................................................15

*Jacobs v. Meghji*,
No. CV 2019-1022-MTZ, 2020 WL 5951410 (Del. Ch. Oct. 8, 2020)........29

*Janus Capital Group, Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)......................................................................................13

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024)........................................................................ 10, 11

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
854 A.2d 121 (Del. Ch. 2004) ........................................................................18

*Nemec v. Shrader*,
991 A.2d 1120 (Del. 2010)............................................................................29

*OptimisCorp v. Waite*,
No. CV 8773-VCP, 2015 WL 5147038 (Del. Ch. Aug. 26, 2015), *aff'd*,
137 A.3d 970 (Del. 2016)..............................................................................27

*Oran v. Stafford,*
226 F.3d 275 (3d Cir. 2000) ..........................................................................10

*Papasan v. Allain*,
478 U.S. 265 (1986)..........................................................................................8

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc*.,
998 F.2d 1192 (3d Cir. 1993) ..........................................................................7

*Plymouth Cnty. Ret. Ass'n v. ViewRay, Inc.,*
556 F. Supp. 3d 772 (N.D. Ohio 2021), *aff'd*, No. 21-3863, 2022 WL
3972478 (6th Cir. Sept. 1, 2022) ....................................................................17

*RAA Mgmt., LLC v. Savage Sports Holdings, Inc.*,
45 A.3d 107 (Del. 2012)..................................................................................22

*Rescue Mission of El Paso, Inc. v. K-Sea Transp. Partners L.P.*,
No. 12-CV-00509-WHW, 2013 WL 3087078 (D.N.J. June 14, 2013) ........14

*Starr ex rel. Est. of Sampsonv. Georgeson S'holder Inc.,*
412 F.3d 103 (2d Cir. 2005) ..........................................................................23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007)................................................................................ 9, 17, 20

*Wiggs v. Summit Midstream Partners, LLC*,
No. CIV.A. 7801-VCN, 2013 WL 1286180 (Del. Ch. Mar. 28, 2013) ........11

*Winer Family Tr. v. Queen*,
503 F.3d 319 (3d Cir. 2007) ..........................................................................14

**Statutes**

15 U.S.C. § 78a ....................................................................................................9

15 U.S.C. § 78u–4(b)(2) .......................................................................................17

**Rules**

FED. R. CIV. P. 9(b)..................................................................................................9

**Regulations**

17 C.F.R. § 230.405 ...............................................................................................26

Defendant Frank Krasovec ("Krasovec") and Defendant Zohar Ziv ("Ziv," and collectively with Krasovec, for the purposes of these Motions, "Defendants") file this Consolidated Opening Brief in Support of Defendants' Motions to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6), and in doing so, respectfully show as follows:

## I. <u>INTRODUCTION</u>

This case involves widespread fraud committed by Defendant Sid Jawahar ("Jawahar"), who is now detained and awaiting trial on various federal criminal charges. According to the federal Indictment, Jawahar—through his various schemes—collectively defrauded Plaintiffs *and* Defendants Krasovec and Ziv (along with many others) out of more than ten million dollars.

Plaintiffs filed their First Amended Complaint ("Complaint") in this Court on November 14, 2025.[1] *See* D.I. 84. Plaintiffs' claims against Defendants Ziv and Krasovec should be dismissed under Rule 12(b)(6). Indeed, Plaintiffs' allegations regarding Ziv and Krasovec depend on conclusory allegations that utilize prohibited "group pleading" and vaguely defined (or undefined) terms to conflate the actions of some defendants (e.g., Jawahar, Urquijo and Swiftarc) with those of others (Ziv and Krasovec).

---

[1] The cause was originally improperly filed in the Northern District of Ohio. On September 9, 2025, Defendants' motion to transfer was granted, and the matter was transferred to this District.

Importantly, **Plaintiffs do not allege or identify a single specific Swiftarc-related misrepresentation *by either Krasovec or Ziv*** that purportedly induced *any* of the investments that are the subject of their claims. Similarly, the mere fact that Plaintiffs were "comforted" by Krasovec and/or Ziv's association with "Swiftarc" entities is not a cognizable basis for liability. Here, Krasovec and Ziv are not liable for any of the *actionable* misrepresentations or omissions of *other defendants* that serve as the basis for Plaintiffs' claims, nor did they—as minority, non-managing members of a once-removed entity—owe fiduciary duties (or disclosure obligations) to every limited partner that Jawahar (or others) recruited.

Finally, Plaintiffs' claims would fail regardless because Plaintiffs—who certified themselves as ***"accredited," sophisticated investors***—cannot satisfy the element of "justifiable reliance" with respect to the representations and/or omissions that they purport to attribute to Krasovec or Ziv. Indeed, Plaintiffs' own allegations demonstrate that the vast majority of the purported misrepresentations or omissions that Plaintiffs improperly attempt to attribute to Krasovec and Ziv came *after* most of the investments that are the subject of the Complaint.

To be clear, Krasovec and Ziv sympathize with Plaintiffs—who like Krasovec and Ziv—were swindled out of substantial amounts by Jawahar. But neither federal law nor Delaware law permit Plaintiffs to hold Krasovec and Ziv liable for Jawahar's (or others') misconduct. Accordingly, because Plaintiffs' allegations do not satisfy

the federal pleading standards with respect to the claims alleged against Krasovec and Ziv, those claims must be dismissed.

## II. BACKGROUND

This case arises from the multi-million-dollar fraud scheme orchestrated by Defendant Sid Jawahar, who is now detained and awaiting trial. *See* D.I. 84 ¶ 6; Exhibit 1 (Indictment). Specifically, Jawahar induced investments from Plaintiffs ***and many other, non-party investors*** and then allegedly misappropriated those funds. Krasovec and Ziv were also victims of Jawahar's fraud. Nonetheless, Plaintiffs allege that—in relation to Jawahar's inducement of and misappropriation of Plaintiffs' investments—Krasovec and Ziv committed securities fraud and various violations of Delaware law.

### A. The Relevant Swiftarc Entities and Their Members

Although the Complaint references a variety of Jawahar-related "Swiftarc" entities and funds, only certain of those entities relate to Plaintiffs' claims or investments.[2] Specifically, as alleged by Plaintiffs, Plaintiffs' investments were made as limited partners through various limited partnerships, each of which has been named as a Defendant (the "Limited Partnerships"). With respect to each of those Limited Partnerships, the general partner was a separate LLC, each of which

[2] For example, Plaintiffs' Complaint contains references to Swiftarc Capital. Swiftarc Capital was a former entity managed by Jawahar, and it had no role in the investments central to the Complaint.

has also been named as a Defendant (the "GP LLCs"). *See, e.g.*, D.I. 84-3 at pp. 1, 14; D.I. 84-4 at pp. 5, 11, 65.

With respect to each of those GP LLCs (as reflected by the information contained in the materials attached to the Complaint), Jawahar was the sole majority, managing member, and Krasovec and Ziv were minority, non-managing members:




*See* D.I. 84-3 at § 1(c), § 10.3; D.I. 84-4 at § 17.10, pp. 16, 65, p. 5 of Exhibit B. Separately, Swiftarc Ventures, LLC was contracted to be the "Investment Manager" for each Limited Partnership. As with the other entities, Ziv and Krasovec were non-managing, minority members serving in consulting roles, and Swiftarc Ventures, LLC was managed by Defendant Jawahar, Defendant Urquijo and their "Core Team":




*See* D.I. 84-5 at p. 5.[3] As noted above, each of the respective investment documents made clear that the corresponding GP LLC was the general partner of the limited partnership, and that Jawahar was (i) the sole managing member of each particular GP LLC and/or (ii) responsible for the contents of each document.[4] To that end, for example, the PPM document stated:

> Any questions regarding this offering, and any requests for copies of the Memorandum, the Partnership Agreement and the Subscription Agreement should be directed to:
>
> **SID JAWAHAR**
> SWIFTARC BEAUTY FUND, LP
> c/o Swiftarc Beauty Fund GP, LLC
> 801 Brickell Avenue, Office 709, Miami, FL, 33131
> Sid@SwiftarcVentures.com

[3] Presumably because the management team of Swiftarc Ventures, LLC did not include Ziv or Krasovec, Plaintiffs redacted the various members of the Core Team in the attachment to their Complaint. *See* D.I. 84-5. The full slide from the cited presentation is shown above.

[4] *See, e.g.*, D.I. 84-2 at p. 23 ("Reliance on the General Partner" and defining Jawahar as the "Managing General Partner"); D.I. 84-3 (Subscription Agreement) at § 1(c), § 10.3, p. 14 (identifying Jawahar as manager); D.I. 84-4 at § 17.10 (directing communications to Jawahar), pp. 16, 65 (defining Jawahar as principal and manager respectively), p. 5 of Exhibit B (identifying Jawahar as manager the Limited Partnership, and the GP LLC); D.I. 84-5 at pp. 5–6 (identifying Jawahar as Managing Partner of Swiftarc Ventures, LLC).

*See* D.I. 84-2 at p. 47; *see also* D.I. 84-3 at p. 2 (directing communications to Jawahar). Consistent with those documents—following their investigation into Jawahar's fraud—federal investigators also concluded that Jawahar "controlled and managed" the entities in question. *See* Exhibit 1 (Indictment) at ¶ 6 (stating that Jawahar "controlled and managed [the relevant Swiftarc entities]").

### B. Plaintiffs' Investment Agreements

As Plaintiffs' allegations and the attached documents make clear, Plaintiffs' investments were made through subscription and limited partnership agreements, through which Plaintiffs invested in the "Telehealth Fund," "Labs Fund," and/or "Beauty Fund." *See, e.g.*, D.I. 84-3; D.I. 84 at ¶¶ 88, 175–176, 181, 191, 203, 206. Although Plaintiffs do not attach any "SPV" investment agreement (nor do they specifically define the term "SPV Fund" itself), Plaintiffs similarly allege that certain Plaintiffs made investments into an "SPV Fund." *See, e.g.,* D.I. 84 at ¶¶ 219, 221, 240, 243, 247. For the purposes of this Memorandum, Defendants will refer to all the aforementioned funds collectively as the "Swiftarc Funds."

In relation to each investment that is the basis for Plaintiffs' claims, Plaintiffs each executed a Subscription Agreement and Limited Partnership Agreement, the latter of which (as shown by the exemplar copy attached to the Complaint) each contained representations of "Non-Reliance," "Investment Experience and Ability to Bear Risk," ***and every Plaintiffs' status as an "Accredited Investor" under the***

***Federal Securities Act***. *See* Dkt. 84-3 at § 8.1(d)–(f). Specifically, each Plaintiff expressly represented, among other things, that "***in making a decision to proceed with this investment, [Plaintiff has] not relied upon any representations, warranties or agreements, other than those set forth in this Agreement and the Organizational Documents***" and that Plaintiffs were "***not relying on (and will not at any time rely on) any communication (written or oral) of the Partnership or any of its affiliates, as investment advice or as a recommendation to purchase the Interest***." *Id*. (emphasis added).

## III. LEGAL STANDARD

When determining whether the plaintiff has stated a claim upon which relief can be granted for the purposes of a motion under Fed. R. Civ. P. 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[5] The plaintiff's obligation to provide the grounds for relief

[5] On a motion to dismiss, in addition to considering the Complaint (and its exhibits) and the public record, the court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993). Here, Exhibit 1 to the Motion is the Indictment referenced repeatedly in Plaintiffs' Complaint and central to Plaintiffs' claims and "information and belief" allegations. *See, e.g.,* D.I. 84 at ¶¶ 6, 164-165, 284. Similarly, Exhibit 2 is an exemplar Subscription Agreement (here, Plaintiff Palmieri's), which serves as the basis for Palmieri's claims. *See id*. at ¶¶ 257-264.

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (holding that, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). A plaintiff's allegations must demonstrate "facial plausibility" for plaintiff's entitlement to relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a probability requirement," it does require the plaintiff to show "more than a sheer possibility that a defendant acted unlawfully." *Id.*

## IV. ARGUMENT AND AUTHORITIES

Plaintiffs' claims against Ziv and Krasovec must be dismissed under Fed. R. Civ. P. 12(b)(6) on the basis that Plaintiffs have failed to state a claim upon which relief can be granted with respect to Ziv and Krasovec, specifically.

### A. Plaintiffs' Claims Against Krasovec and Ziv for Fraud, Securities Fraud and Control Person Liability (Counts I, II, III & IV) Fail to Satisfy the Heightened Pleading Standard Necessary for Such Claims.

Plaintiffs' claims against Ziv and Krasovec for (i) violations of Section 10(b), (ii) the Delaware Securities Act, and (iii) common law fraud under Delaware law, all require that Plaintiffs satisfy the heightened pleading standard set forth by the

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78a *et seq*. ("PSLRA") and/or FED. R. CIV. P. 9(b). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 314 (2007) (quoting and citing PSLRA); *Abry Partners V, L.P. v. F & W Acquisition LLC,* 891 A.2d 1032, 1050 (Del. Ch. 2006) (stating Rule 9(b)'s applicability to Delaware securities fraud and common law fraud claims).

As such, *each* Plaintiff must allege—***with specificity*** and with respect to ***each Defendant***— (i) the specific material misrepresentations that serve as the basis for Plaintiffs' claims, (ii) specific facts that give rise to an inference that ***each Defendant*** acted with the requisite scienter necessary to satisfy the pleading standard, and (iii) reasonable reliance by ***each Plaintiff*** with respect to any purported misrepresentation. Regarding Defendants Ziv and Krasovec, Plaintiffs have wholly failed to satisfy the pleading standard with respect to all three elements.

**1. Plaintiffs do not allege actionable, material misrepresentations or omissions by Ziv or Krasovec.**

Both the PSLRA (which governs Plaintiffs' 10b-5 claim) and Rule 9(b) require that any alleged misrepresentations be alleged with specificity, including by providing "the time, place, and contents of the false representations and omissions, as well as the identity of the person making the statement and the basis for the statement's falsity." *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 680 (3d Cir. 2023).

***Purported Omissions***. Rather than focusing on affirmative representations *by Ziv and Krasovec* that purportedly induced any investments, Plaintiffs' claims against Ziv and Krasovec appear to primarily turn on various vague, unspecified assertions that suggest that Ziv and Krasovec committed fraud by failing to disclose certain information regarding Jawahar and/or his conduct.[6] *See, e.g.*, D.I. 84 at ¶¶ 288.a–.e; 314.a–.e; 323.a–.e. But these allegations do not support actionable claims for securities fraud against Ziv and Krasovec for a very important reason: "Silence, ***absent a duty to disclose***, is not misleading under Rule 10b-5." *Basic Inc. v. Levinson,* 485 U.S. 224, 239 n. 17 (1988) (emphasis added). Moreover, "[e]ven a duty to disclose, however, does not automatically render silence misleading under Rule 10b–5(b)" unless the omission renders "affirmative statements made misleading." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 265 (2024). Thus, in the context of omissions (absent insider trading or a statute requiring disclosure), a duty to disclose does not arise unless a defendant learns of information that makes ***the party's prior statement*** "inaccurate, incomplete[,] or misleading." *Oran v. Stafford,* 226 F.3d 275, 285–86 (3d Cir. 2000). Additionally, the "duty to update" applies only in "narrow circumstances," *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 176 (3d Cir. 2014), and the Supreme Court has

[6] For the purposes of this Memorandum, Defendants will refer to the "TSSB Order" and "Arizona Litigation" as they are defined in the Complaint.

recently made clear that Plaintiffs must specifically identify the "affirmative statement" that has been rendered misleading by the alleged omission. *See Macquarie*, 601 U.S. at 264–65 ("Logically and by its plain text, [Rule 10b-5] requires identifying affirmative assertions (*i.e.*, 'statements made') before determining if other facts are needed to make those statements 'not misleading.'"). Similarly, silence also may not be the basis for a fraud claim under Delaware law absent "a duty to speak." *Wiggs v. Summit Midstream Partners, LLC*, No. CIV.A. 7801-VCN, 2013 WL 1286180, at *11 (Del. Ch. Mar. 28, 2013).

Here, Plaintiffs fail to allege *any* facts demonstrating that ***Krasovec or Ziv*** had an "affirmative duty to disclose" any of the purportedly omitted information that serves as the basis of Plaintiffs' securities fraud and fraud claims. Importantly, there is not a *single* allegation suggesting that ***Krasovec or Ziv previously made any prior substantive statements*** to the investors that required correction at the time of the TSSB Order or Arizona Litigation (or any of the other purported omissions),[7] and Plaintiffs' allegations **do not identify any such statement** that was rendered misleading by any purported omission.[8] *See Macquarie*, 601 U.S. at 264–65. Finally,

[7] As described in more detail in Section IV.A.3, infra, most of the misrepresentations or omissions that Plaintiffs attribute to Krasovec or Ziv came *after* Plaintiffs' investments.

[8] Plaintiffs' own allegations indicate that only a handful of Plaintiffs ever had *any interaction* with Krasovec or Ziv *prior to Plaintiffs' investments*, and it is unclear how Krasovec or Ziv were supposed to correct purported misrepresentations with respect to investors *with whom they had largely never interacted*.

with respect to any suggestion that Plaintiffs were owed an independent legal duty by Ziv or Krasovec, that too has no basis in law. *See* Section IV.C.2, *infra*.

***Purported Affirmative Misrepresentations***. Tellingly, **Plaintiffs do not allege *any* specific Swiftarc-related misrepresentation made by Krasovec or Ziv that purportedly induced any investment.**[9] Indeed, although Plaintiffs allege that Krasovec and Ziv met one or more Plaintiffs and/or attended one or more Swiftarc events or calls (*see, e.g.*, D.I. 84 at ¶¶ 95–96, 98–99), there is **not a single allegation** that either made *any* specific Swiftarc-related misrepresentation to any Plaintiff (at any event, on any call, or otherwise) that induced any Swiftarc-related investment.

Because Plaintiffs are unable to articulate any affirmative Swiftarc-related representations made by Krasovec or Ziv, nor have Plaintiff's identified an affirmative duty to disclose with respect to Ziv or Krasovec, Plaintiffs appear to try

[9] The Complaint contains a *single* allegation related to a *single* Plaintiff regarding an alleged representation by Krasovec involving an apparent unrelated investment opportunity in the Domino's Brand in China, and it is telling that a Domino's-related communication is the *only identified affirmative misrepresentation* that purportedly induced any Plaintiff's Swiftarc investment. *See* D.I. 84 at ¶ 96. But Plaintiff Palmieri does not allege the details of that representation nor what was allegedly false about it, nor would that allegation support the claims of any other Plaintiff (or any claim against Defendant Ziv). More importantly, such a representation would not involve "material information" for the purposes of Section 10(b), as a "reasonable investor" considering a Swiftarc investment would not find a representation about a Domino's opportunity to alter the "total mix" of information available *regarding the Swiftarc investments*. *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 283 (3d Cir. 2010). Finally, even assuming such a representation were actionable (it is not), Palmieri—a sophisticated, accredited investor—expressly disavowed any such inducement or reliance. *See* Exhibit 2 at § 8.1(d)–(f).

to circumvent the applicable pleading requirements through use of impermissible "group pleading"—and in doing so conflate representations *made by Jawahar or certain Swiftarc entities* with those of Krasovec and Ziv.[10] That leap is not permitted, as the Supreme Court has made crystal clear in the context of federal securities claims: "the maker of a statement is the entity with authority over the content of the statement and whether and how to communicate it." *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 144 (2011).

Here, *even assuming* that any offering document or marketing material contained a material misrepresentation,[11] black-letter law makes clear that any such misrepresentation cannot summarily be imputed to Ziv or Krasovec through the generic use of the term "General Partners" or through vague allegations regarding their "day-to-day" involvement in operations or "executive-level roles." *See* D.I. 84 at ¶¶ 94–95, 99. Indeed, to the extent that there were material misrepresentations in any Swiftarc document or the "Swiftarc Statement" referenced in the Complaint, those representations do not subject Ziv and Krasovec to liability because those were

[10] *Even assuming either* Ziv *or* Krasovec made an *actionable* misrepresentation (neither did), Plaintiffs' "group" pleading attempts to impose "joint and several" liability to them *both* through the ambiguous use of the term "General Partners." *See* note 19, *infra*.

[11] Defendants note that it is unclear which statement in the "Offering Documents" or "Marketing Materials" would have been rendered materially misleading or inaccurate by the TSSB Order or Arizona Litigation (and Plaintiffs do not specify any such statement in their Complaint).

***not statements attributable to Ziv or Krasovec***, and group pleading with respect to corporate statements did not survive the PSLRA. *See Winer Family Tr. v. Queen*, 503 F.3d 319, 335–36 (3d Cir. 2007) (rejecting "group pleading" and holding that the PSLRA "requires plaintiffs to specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions."); *see also Rescue Mission of El Paso, Inc. v. K-Sea Transp. Partners L.P.*, No. 12-CV-00509 WHW, 2013 WL 3087078, at *28 (D.N.J. June 14, 2013) (dismissing plaintiff's claim alleging that company's directors "were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company" because of their "positions of control and authority").

As a result, Plaintiffs are not permitted to attribute the contents (or non-contents) of documents to individuals (here, Krasovec and Ziv) associated with a company unless the Plaintiffs plead facts demonstrating that the *specific* individual was also a "maker" who (i) **prepared the statement's contents** and **controlled the statement's dissemination**. Importantly, Plaintiffs cannot satisfy the pleading standard by disjunctively alleging that multiple defendants wrote ***or*** authorized the statement (i.e., *exactly what Plaintiffs have tried to do here with respect to the "Swiftarc Statement"*), *see* D.I. 84 at ¶ 120, nor can a plaintiff merely allege that the individuals were provided with the statement for comment or approval before or after its dissemination. *See In re Celgene Corp., Inc. Sec. Litig.,* 741 F. Supp. 3d

217, 225 (D.N.J. 2024) (collecting "clear and uniform" caselaw and rejecting contention that COO's role in reviewing and commenting on company's statement made COO "maker" for the purposes of securities liability); *In re Par Pharm. Sec. Litig.*, No. CIV.A.06-CV-3226 (PGS, 2008 WL 2559362, at *10 (D.N.J. June 24, 2008) (dismissing claim that alleged, collectively, that various individual defendants "were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements" because plaintiffs' "reliance on group pleading is insufficient as a matter of law").

Here, Plaintiffs ***allege zero facts demonstrating that Ziv and Krasovec actually drafted and "controlled" any of the documents or statements*** that purportedly induced Plaintiffs' investments,[12] and instead, the statements, offering documents themselves (on their face) and/or Plaintiffs' other allegations make clear that ***Jawahar*** was responsible for their contents. *See, e.g.,* D.I. 84-2 at p. 47; note 4, *supra* (and accompanying text); D.I. 84 at ¶¶ 93, 150–152 (acknowledging Jawahar created the Swiftarc documents and made the alleged misrepresentations relating to

---

[12] As noted above, Plaintiffs attempt to utilize prohibited "group pleading" for this purpose, specifically with respect to the July 2022 "Swiftarc Statement." *See* D.I. 84 at ¶ 120 ("[T]o Plaintiffs, the Swiftarc Statement was written or authorized by Krasovec, Ziv, Jawahar and Urquijo."). Ignoring the timing of the "Swiftarc Statement" (*see* Section IV.A.3, *infra*), this type of collective allegation—which also caveats the allegation by referencing Plaintiffs' apparent subjective perspective rather than the objective truth—is the exact type of group pleading that does not satisfy the federal pleading standard.

the "Beauty Fund Swap"). The pleading standard requires specificity, and Plaintiffs cannot rely on "group pleading" and/or conclusory allegations to impute Jawahar's misconduct to Ziv or Krasovec.

Finally, although Plaintiffs repeatedly allege that they relied on Ziv's and Krasovec's general involvement with the Swiftarc Entities and/or relationship with Jawahar that purportedly "comforted Plaintiffs in investing millions of dollars," *see* D.I. 84 at ¶¶ 168, 220, Plaintiffs must allege actual *actionable misrepresentations by Ziv and Krasovec* on which they relied and cannot plead fraud on the basis of "guilt by association." For obvious reasons, a non-managing member cannot be liable for securities fraud (or any other type of fraud) on the basis that his or her mere association purportedly induced investments because it provided "comfort" for investors. And similarly, and again for obvious reasons, Krasovec and Ziv are not liable for alleged ***misrepresentations made by Jawahar*** regarding Krasovec's or Ziv's (or any other "partner's") purported involvement.[13]

**2. Plaintiffs do not satisfy the heightened standard for alleging scienter with respect to Ziv and Krasovec.**

As a separate basis for dismissal of Plaintiffs' securities fraud, control person liability, and common law fraud claims, Plaintiffs have also failed to satisfy the pleading standard with respect to Defendants' scienter. Importantly, under the

[13] *See, e.g.*, D.I. 84-8 (text message cited for the purported suggestion that Krasovec controlled redemption requests); D.I. 84 at ¶ 232 ("Jawahar relied on Krasovec's and Ziv's past successes as a selling point for Haikal to invest.").

PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). In this context, a "strong inference" of scienter is one that is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs,* 551 U.S. at 314. As part of the analysis, the Court must "take into account plausible opposing inferences," *id*. at 323, including "plausible, nonculpable explanations for the defendant's conduct." *Id*. at 324; *see also In re Hertz Glob. Holdings Inc*., 905 F.3d 106, 114–15 (3d Cir. 2018).[14]

Here, Plaintiffs' allegations regarding scienter rely on a hodge-podge of conclusory allegations regarding what Krasovec or Ziv "knew or should have known" merely based on their "executive-level roles" at various "Swiftarc Entities," including Swiftarc Capital (an entity that had nothing to do with Plaintiffs' investments). *See, e.g.*, D.I. 84 at ¶¶ 75, 79, 94, 111. But Krasovec and Ziv did not have the managerial-level access that Plaintiffs assert (and apparently assume) existed "upon information and belief," *see* Section IV.B, *infra*, and courts have *routinely* rejected attempts to plead scienter using "knew or should have known"

[14] Fraud claims under Delaware law "require a certain level of scienter on the part of the defendant," and a misrepresentation must be made "knowingly, intentionally, or with reckless indifference to the truth." *DRR, L.L.C. v. Sears, Roebuck & Co*., 949 F. Supp. 1132, 1137 (D. Del. 1996).

allegations premised on defendants' board membership and/or their executive managerial positions.[15] *City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 399 (D. Del. 2010), *aff'd*, 442 Fed. Appx. 672 (3d Cir. 2011) ("Mere allegations that a defendant 'should have known' of fraud because of his supervisory role within a company or because his subordinates were aware of it, are insufficient."); *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999), *abrogated on other grounds by Tellabs*, 551 U.S. 308 (internal alterations and quotations omitted) ("[A]llegations that a securities-fraud defendant, because of his position within the company, must have known a statement was false or misleading are precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny.").[16] For the same

[15] To the extent that Plaintiffs' allegations of scienter turn on Ziv's or Krasovec's purported financial interest, that too is insufficient to satisfy the "strong inference" required for scienter under Rule 10b-5. *See GSC Partners CDO Fund v. Washington,* 368 F.3d 228, 237 (3d Cir. 2004) ("'Blanket assertions of motive and opportunity' will not suffice, and 'catch-all allegations that defendants stood to benefit from wrongdoing and had the opportunity to implement a fraudulent scheme are no longer sufficient, because they do not state facts with particularity or give rise to a strong inference of scienter.'").

[16] The same is true with respect to the pleading standard for Plaintiffs' Delaware fraud claims. *See Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 144 (Del. Ch. 2004) (internal quotation marks omitted) ("To say Defendant knew or should have known is not adequate."); *Abry Partners,* 891 A.2d at 1050 ("[W]hen a plaintiff pleads a claim of fraud that charges that the defendants knew something, it must allege sufficient facts from which it can reasonably be inferred that this 'something' was knowable and that the defendants were in a position to know it.").

reason, Plaintiffs' conclusory (and incorrect) allegations regarding Ziv's and Krasovec's purported access to Swiftarc's bank accounts also cannot serve as the basis for satisfying the requisite "scienter" requirements. *See* note 20 and accompanying text (addressing Plaintiffs' allegations regarding account access).

Similarly, with respect to Plaintiffs' control person liability claims under § 20(a), the Third Circuit has made clear that such claims require that Plaintiffs allege that Defendants Ziv and Krasovec both had (i) knowledge of the underlying fraud, and (ii) took intentional inaction both to further the fraud and to prevent its discovery. *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 485 (3d Cir. 2013). *At best*—Plaintiffs allege reckless inaction by Ziv and Krasovec regarding misstatements by Jawahar[17]—and that simply is not sufficient to allege control person liability under § 20(a). *Id.* at 486; *see In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 563 (D. Del. 2002), *aff'd*, 357 F.3d 322 (3d Cir. 2004) *and aff'd*, 357 F.3d 322 (3d Cir. 2004) (dismissing § 20(a) claim and noting that "[a]t best, the complaint alleges a factual predicate for the individual defendants' knowledge of the purported misstatements," which "alone are insufficient").

For the avoidance of doubt, Plaintiffs' own allegations and attachments completely undermine any inference that anyone other than Jawahar (and perhaps Urquijo) had the requisite knowledge (and/or access to accounts or information

[17] *See, e.g.*, D.I. 84 at ¶¶ 150, 152, 170, 224.

regarding any fraudulent activity) ***until after Plaintiffs' investments***. Indeed, as "Employee 2's" email to Krasovec on July 8, 2022 makes clear:

(i) It was Employee 2 *who was letting Krasovec know* "what is going on behind the scenes [at the Swiftarc Funds]";

(ii) Krasovec was not aware of all of the various investors (little less did he interact with or recruit all of them such that he could have been responsible for any misrepresentations); and

(iii) It was Jawahar and Urquijo—and not Employee 2, Krasovec, Ziv or anyone else—who had access to the Swiftarc's bank accounts and/or financial information.

*See* D.I. 84-12 at pp. 3–4. Simply put, Plaintiffs' very attachments that *potentially* give credence to Plaintiffs' claims against *other Defendants* demonstrably show that Plaintiffs cannot satisfy the pleading requirements for scienter with respect to their claims against Ziv and Krasovec.

Finally, perhaps the best indications of Ziv's and Krasovec's lack of the requisite scienter are Plaintiffs' own allegations regarding what Krasovec did when he learned of Jawahar's fraud: Krasovec told Plaintiffs not to invest. The relevant scienter analysis requires that the Court consider any inference regarding nonfraudulent intent, and there is simply no reason why Defendants—if they had in fact known of Jawahar's misconduct earlier—would have told Plaintiffs Jeffrey Stanely and Denise Stanly to make *certain* investment payments but not *others*. *See, e.g.*, D.I. 84 at ¶¶ 274–277. Indeed, with respect to Krasovec and Ziv, the Complaint's own allegations plainly demonstrate the "opposing inference of nonfraudulent intent" that the Court must consider. *Tellabs*, 551. U.S. at 323.

### 3. Plaintiffs cannot allege reasonable reliance with respect to any alleged misrepresentations or omissions by Ziv and Krasovec.

As an initial matter, and as reflected by Plaintiffs' own allegations, it is Defendants' understanding that the ***majority*** of Plaintiffs' investments came before June 2022,[18] *see* D.I. 84 ¶ 102, well in advance of ***almost all*** of the misrepresentations or omissions that Plaintiffs now assert are the basis for their claims. Needless to say, as but one example, any "omission" regarding *a June 7, 2022 TSSB Order* did not induce investments that were made *in September or October 2021* (*see, e.g.*, D.I. 84-3; Exhibit 2), and there is a reason that the Complaint omitted each Plaintiff's investment date(s) when presenting the allegations.[19] The same is also true with respect to *every allegation* regarding the April 2023 "Beauty Fund Swap" that purportedly induced the investments that are the subject of Plaintiffs' securities, fraud and conspiracy claims. *See, e.g.*, D.I. 84 at ¶¶ 288.e, 314.e., 323.e.

---

[18] Because Ziv and Krasovec had no management powers, were not primarily responsible for securing new investments, and did not have access to any bank accounts (notwithstanding Plaintiffs' apparent belief otherwise), Ziv and Krasovec will rely on Plaintiffs' assertions with respect to the general dates and amounts of Plaintiffs' investments. *See, e.g.*, D.I. 84 ¶ 102.

[19] While *all Plaintiffs* seek to hold Ziv and Krasovec responsible through "group pleading," it is telling that *not a single Plaintiff* alleged *all* of the following: (i) the date(s) of the Plaintiff's investment, (ii) the specific misrepresentation *by Krasovec or Ziv* on which *that Plaintiff* relied in making each such investment, (iii) the time, date, and means of such misrepresentation and (iv) the basis of each Plaintiff's reliance on that misrepresentation.

Moreover, for the purposes of Plaintiffs' Delaware law claims, Plaintiffs' purported reliance is undermined by the multiple "non-reliance" representations that Plaintiffs made as part of their investments, in which Plaintiffs *expressly* disavowed relying on *any* of the apparent extraneous "misrepresentations" or "omissions" that now appear to serve as the basis for their claims against Ziv and Krasovec. *See, e.g.,* D.I. 84-3 at § 8.1(d)–(f); Section II.B, *supra*. Importantly, **Delaware law holds parties to their word when they make "non-reliance" representations** and makes clear that a sophisticated party to a negotiated contract cannot have it both ways:

> The teaching of this court . . . [collecting cases] . . . is that **a party cannot promise, in a clear integration clause of a negotiated agreement, that it will not rely on promises and representations outside of the agreement and then shirk its own bargain in favor of a 'but we did rely on those other representations' fraudulent inducement claim** . . . . If there is a public policy interest in truthfulness, then that interest applies with more force, not less, to contractual representations of fact. Contractually binding, written representations of fact ought to be the most reliable of representations, and **a law intolerant of fraud should abhor parties that make such representations knowing they are false**.

*Abry Partners*, 891 A.2d at 1057 (emphasis added); *see also RAA Mgmt., LLC v. Savage Sports Holdings, Inc.*, 45 A.3d 107, 117 (Del. 2012) (enforcing non-reliance provision and affirming dismissal of fraud claim based on purported reliance on extra-contractual omissions).

In addition, Plaintiffs each made their investments as "accredited investors" under the federal securities laws. *See* D.I. 84-3 at § 8(f). Importantly, for the purposes

of evaluating Plaintiffs' purported reliance on extraneous information and/or after-the-fact confusion regarding the entities' management, accredited investors are those whose "financial sophistication and ability to sustain the risk of loss of investment or ability to fend for themselves render the protections of the Security Act's registration process unnecessary." *In re Enron Corp. Sec., Derivative & ERISA Litig*., 761 F. Supp. 2d 504, 533 n. 21 (S.D. Tex. 2011) (citation and quotation omitted). **"Plaintiff[s] cannot now disavow that representation to pursue [their] claims."** *Dedrick v. Valuable Techs., Inc*., No. 22CV4341 (EP) (JBC), 2023 WL 8802820, at *6 (D.N.J. Dec. 20, 2023) (emphasis added).

Finally, *even assuming* Plaintiffs had not (i) invested *prior* to most of the alleged omissions on which they purportedly relied and (ii) signed "non-reliance" provisions *expressly* disavowing reliance on the alleged "misrepresentations" or "omissions" that now serve as the basis for their claims, to the extent Plaintiffs contend there was any question or ambiguity with respect to Krasovec's and/or Ziv's role, day-to-day involvement, management or access (there was not), Plaintiffs—as accredited investors—certified that they had conducted their due diligence and had the opportunity to ask questions and receive answers with respect to such issues. *See* D.I. 84-3 at § 8.1(b); *cf. Starr ex rel. Est. of Sampson v. Georgeson S'holder Inc.,* 412 F.3d 103, 109 (2d Cir. 2005) ("An investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered

the truth.") (citation omitted). Either that representation was false, or Plaintiffs are trying to disavow their represented diligence now that doing so is necessary to pursue their claims of fraud.

### B. Plaintiffs' Claims for Securities Fraud, Fraud, Control Person Liability and Breach of Fiduciary Duty (Counts I, II, III, IV & VI) Fail Because Ziv and Krasovec Do Not "Control" the "Swiftarc Entities" or Owe Fiduciary Duties to Plaintiffs.

Although Plaintiffs take liberty in alleging that Ziv and Krasovec "controlled" the Limited Partnerships and/or owed fiduciary duties to Plaintiffs, Plaintiffs' claims for fraud, control person liability and breach of fiduciary duty all fail for a fundamental reason: **Defendants Ziv and Krasovec did not control the entities through which Plaintiffs made their investments, nor did Ziv and Krasovec owe Plaintiffs any fiduciary duty.**

With respect to Plaintiffs' claims for fraud and securities fraud, and as demonstrated in Plaintiffs' own documents and as noted in more detail in the prior Section, Ziv and Krasovec did not have the knowledge, responsibility or control that Plaintiffs allege using conclusory "group pleading." Indeed, as but an initial example, a comparison of Plaintiffs' allegations regarding access to Swiftarc's bank accounts demonstrates the difference between *particular* factual allegations that satisfy the specificity requirement and conclusory "control" allegations that do not.[20]

---

[20] Plaintiffs' allegations regarding Ziv and Krasovec's "access to all these bank accounts" are made "upon information and belief" or without any factual basis. *See*

*See also* Section IV.A.1, *supra*. Plaintiffs know the difference, and notably, Plaintiffs assert those allegations with specificity *for some other defendants*, but on a completely conclusory basis for Ziv and Krasovec. *See id*.

Even more telling, the federal Indictment of Jawahar—which apparently serves as the basis for Plaintiffs' "information and belief" allegations against Krasovec and Ziv (D.I. 84 at ¶ 284)—makes clear that **Jawahar controlled and managed the very entities at issue**:[21]

> 6. After creating Swiftarc Capital, Defendant controlled and managed several additional entities that he utilized during his scheme to defraud, including Swiftarc Fund LP, Swiftarc LLC, Swiftarc Holdings, SJ Investment Holdings LLC, Order of Magnitude Ventures LLC, Extra Sensory Perception Inc., Swiftarc Growth Fund LP, Swiftarc Opportunities Fund LP, SJ Investment Holdings LLC, SV Labs SPV I LP, Swiftarc Venture Labs Fund GP LLC, SJDB Ventures LLC, Swiftarc Ventures LLC, Swiftarc Venture Labs Fund LP, Swiftarc Telehealth Labs Fund LP, NI Stubbs LLC, and Swiftarc Beauty Fund LP (Defendant's entities are collectively referred to as "Swiftarc" herein).

*See* Exhibit 1 (Indictment) at ¶ 6 (emphasis added). Federal securities laws define "control" as the actual power to direct the management and policies of the

---

D.I. 84 at ¶ 97, 100, 123. On the other hand, and tellingly, Plaintiffs' allegations regarding Jawahar's and Urquijo's access to the accounts is alleged *with specificity* (presumably because—unlike Ziv or Krasovec—they *actually* had access to Swiftarc's accounts). *See id*. at ¶ 93, 123–124 (describing actual transfer of funds by Jawahar and Urquijo); *id*. at ¶ 129 (alleging that "Jawahar and Urquijo had failed to provide" accounting); D.I. 84-12 at pp. 3–4 (demonstrating it was Jawahar and Urquijo alone who had access).

[21] Plaintiffs elected not to include the Indictment among the fifteen exhibits attached to the Complaint. The reason seems clear: Plaintiffs are trying to hold *others* responsible for *Jawahar's fraud*.

wrongdoer, *see* 17 C.F.R. § 230.405, and Plaintiffs cannot merely "charg[e] that the individual defendants must have known about the alleged misstatements and omissions because they had access to the statements by virtue of their positions." *In re Digital Island Sec. Litig*., 223 F. Supp. 2d at 561. Similarly, Plaintiffs' apparent attempt to rely on minority membership for the purposes of alleging "control" has been rejected routinely in similar circumstances. *See, e.g., Copland v. Grumet,* Civ. A. No. 96-3351 (MLC), 1998 WL 256654, at *15 (D.N.J. Jan. 9, 1998) (dismissing § 20(a) claim against former director and 12% shareholder explaining that mere stock ownership, without particularized facts showing actual control, does not make a "controlling person"); *Laven v. Flanagan,* 695 F. Supp. 800, 807–08 (D.N.J. 1988) (rejecting control person liability for shareholder holding 17.5% ownership where the shareholder lacked actual power to control corporate decisions).

Finally, with respect to Plaintiffs' fiduciary duty claims against Ziv and Krasovec, Plaintiffs allege that the "General Partners owe fiduciary duties to Plaintiffs by nature of status as general partners of the Swiftarc Funds." D.I. 84 at ¶ 338. But that is misdirection because Ziv and Krasovec **were <u>not</u> general partners of the Limited Partnerships or the Swiftarc Funds**. Instead, various GP LLCs (***managed by Jawahar***) were the general partners of those entities, and Plaintiffs' own allegations acknowledge as much just two subparagraphs earlier. *See* D.I. 84 at ¶ 337.a. ("The GP LLCs owed Plaintiffs and others a fiduciary duty by nature of

their status as general partners of the Swiftarc Funds, in which Plaintiffs and others were limited partners.”). Of course, Plaintiffs provide no basis for the assertion that minority, non-managing members of an LLC owe fiduciary duties *to every limited partner* in *any partnership* in which that LLC serves as general partner, and for obvious reasons, such an expanded doctrine of fiduciary liability would make absolutely no sense and would rewrite the legal meaning of “fiduciary.”

### C. Plaintiffs’ Claims for Aiding and Abetting Breach of Fiduciary Duty, Civil Conspiracy, And Unjust Enrichment (Counts V, VII & IX) Fail Because Plaintiffs Do Not Meet the High Bar Necessary for Alleging “Knowledge” and “Coordination of Action.”

Delaware courts have acknowledged that the pleading requirements for claims for aiding and abetting a breach of fiduciary duty and a claim for civil conspiracy are essentially “coterminous.” *OptimisCorp v. Waite*, No. CV 8773-VCP, 2015 WL 5147038, at *57 n.500 (Del. Ch. Aug. 26, 2015), *aff'd*, 137 A.3d 970 (Del. 2016) (“In the fiduciary duty context, conspiracy is treated essentially as coterminous with aiding and abetting.”). As such, the applicable pleading standard requires that plaintiffs meet the “stringent” bar for alleging *each defendant’s* “scienter,” or more specifically, “knowing participation in [the fiduciary’s] breach by the non-fiduciary.” *Id.* at n.500 (quoting *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1038–39 (Del. Ch. 2006)); *Bocock v. Innovate Corp.*, No. 2021-0224-PAF, 2022 WL 15800273, at *25 (Del. Ch. Oct. 28, 2022), *reargument denied sub nom.*, 2022 WL 17101448 (Del. Ch. Nov. 22, 2022) (“At the pleadings stage, ‘the

Plaintiff must allege that the parties *knowingly* participated in the conspiracy and that there was coordination of action among the parties.'") (emphasis in original and citation omitted). Thus, Plaintiffs must plead, with specificity, the facts necessary for the Court to infer (i) that Krasovec and Ziv "knowingly participated" in a fraudulent scheme with Jawahar and (ii) "coordination of action" between Jawahar, on the one hand, and Krasovec and Ziv, on the other.

Here, Plaintiffs' own allegations completely foreclose those necessary inferences on which their "aiding and abetting" and "conspiracy" claims turn. Indeed, the entire crux of Plaintiffs' argument appears to be that Ziv and Krasovec ***failed to act*** when they purportedly learned of Jawahar's wrongdoing, ***not that they acted in concert with Jawahar such that there was a "coordination of action" between the three parties***. *See, e.g.*, D.I. 84 at ¶ 7 (alleging Jawahar's business partners "turned a blind eye"); *id*. at ¶ 170 ("Krasovec and Ziv completely abdicated their duties to Plaintiffs and failed to supervise Jawahar with the funds, despite Jawahar's lengthy history of misappropriating funds.").

Finally, Plaintiffs' claims for unjust enrichment against Ziv and Krasovec must be dismissed for the same reason. Because a plaintiff must prove "absence of justification" for a claim for unjust enrichment under Delaware law,[22] "[t]he great

---

[22] "The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the

weight of authority provides that where a plaintiff has failed to plead that a defendant aided and abetted a breach of fiduciary duty, that failure translates into a failure to plead requisite wrongdoing for an unjust enrichment claim."[23] *Jacobs v. Meghji*, No. CV 2019-1022-MTZ, 2020 WL 5951410, at *15 (Del. Ch. Oct. 8, 2020). Accordingly, Plaintiffs' unjust enrichment claims are also subject to dismissal.

### D. Plaintiffs' Claims for "Liability of a Purported Partner" (Count VIII) Fail Because Krasovec and Ziv Did Not Hold Themselves Out to Be General Partners of the Limited Partnerships.

As with Plaintiffs' other claims, Plaintiffs' claims for "liability of a purported partner" fail because Plaintiffs have—through the scattershot use of the vaguely defined term "General Partners"—attempted to create the impression of something that is **not** true (as reflected in Plaintiffs' own attachments): that either Ziv and/or Krasovec held himself out to be a general partner ***of the respective Limited Partnerships*** through which Plaintiffs made their investments. As recognized (elsewhere) in Plaintiffs' allegations, *see* Section IV.B, *supra*, the general partner

---

absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

[23] Defendants note that Plaintiffs also have not alleged any concrete "enrichment" by Ziv and Krasovec, who like Plaintiffs, *were also defrauded by Jawahar*. Although Plaintiffs state that "the GP LLCs were similarly enriched" by Jawahar's fraud (D.I. 84 at ¶ 361), it does not follow that those amounts passed to Krasovec and Ziv through their minority, non-managing roles in the GP LLC's. Instead, consistent with every inference that would flow from the allegations regarding Jawahar's fraud for which he is facing criminal charges, Ziv and Krasovec **never received a penny of the amounts allegedly misappropriated by Jawahar**.

for each of the Swiftarc Funds ***was the respective GP LLC***, and that was disclosed unambiguously. Jawahar was the controlling and managing member of each of those GP LLCs, and Ziv and Krasovec were not "general partners" of the partnerships in which Plaintiffs invested (nor did Ziv or Krasovec ever hold themselves out as such).[24]

Finally, *reasonableness* of "reliance" is an essential element of any claim for "liability of purported partner" or "partnership by estoppel" under Delaware law. *See Bragg v. Johnson*, 229 A.2d 497, 498 (Del. Super. Ct. 1966). For the reasons set forth in prior sections, Plaintiffs—"accredited," sophisticated investors who represented that they were relying only on the offering documents—cannot credibly assert that they "reasonably" believed that Krasovec and/or Ziv were in fact the "general partner" of each Limited Partnership in which they invested.

## V. CONCLUSION

For the reasons and to the extent set forth above and in the accompanying Motions, Defendants Frank Krasovec and Zohar Ziv respectfully request that the Court grant the Motions and dismiss Plaintiffs' claims with prejudice.

---

[24] Although the PPM document ***that was prepared by Jawahar*** described Krasovec and Ziv as "General Partners" of ***Swiftarc Capital***, that is an entity that had ***nothing to do with*** the control or operations ***of the Limited Partnerships in which Plaintiffs invested***. On the other hand, the PPM document did correctly identify the GP LLC entity as the *actual* General Partner of each Limited Partnership, and it disclosed Jawahar as the managing partner.

Dated: December 15, 2025

Respectfully submitted,

By: */s/ Jeremy D. Anderson*
Jeremy D. Anderson (#4515)
Michael E. Neminski (#6723)
BAKER & HOSTETLER LLP
1201 North Market Street, Suite 1407
Wilmington, DE 19801-1147
(312) 407-4224
jdanderson@bakerlaw.com
mneminski@bakerlaw.com

OF COUNSEL:

A. Lee Rigby (*pro hac vice*)
William A. Duncan (*pro hac vice*)
Braden Anderson (*pro hac vice*)
RIGBY SLACK LAWRENCE PEPPER & COMERFORD, PLLC
3500 Jefferson St., Ste 330
Austin, TX 78731-6323
lrigby@rigbyslack.com
wduncan@rigbyslack.com
banderson@rigbyslack.com

*Attorneys for Defendants Frank Krasovec And Zohar Ziv*

**CERTIFICATION OF COMPLIANCE**

I hereby certify that the foregoing brief—exclusive of the title page, table of contents, table of authorities, signature block, and certification—is fewer than thirty (30) pages in length and 7,500 words including footnote text (as indicated by the word count feature of Microsoft Word), which is the applicable limit per the Court's December 3, 2025 Order (D.I. 86). I further certify that the foregoing brief also complies with the font and type limitations set forth in the Court's Standing Order Regarding Briefing.

By: *_/s/ Jeremy D. Anderson_*
Jeremy D. Anderson (#4515)