## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KATHRYN A. RICHARDSON,            )
TRUSTEE for the KATHRYN A.        )
BILSKI REVOCABLE TRUST, *et al.*, )
                                  )
          Plaintiffs,             )
                                  )
     v.                           )        Civil Action No. 25-1135-CFC-SRF
                                  )
SIDDHARTH JAWAHAR, *et al.*,      )
                                  )
          Defendants.             )

## REPORT AND RECOMMENDATION

Presently before the court in this securities action for violations of Sections 10(b) and

20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") are the motions to dismiss

for failure to state a claim under Rule 12(b)(6), filed by defendants Frank Krasovec, Zohar Ziv,

Beauty Generations Fund I, LP f/k/a Swiftarc Beauty Fund LP (the "Beauty Fund"), and Fabian

Urquijo (collectively, the "Movants").[1]  (D.I. 88; D.I. 90; D.I. 92)[2]  For the following reasons, I

recommend that the court GRANT-IN-PART the motion to dismiss filed by Krasovec and Ziv

(D.I. 88), GRANT the Beauty Fund's motion to dismiss (D.I. 90), and GRANT-IN-PART

Urquijo's motion to dismiss (D.I. 92).  I further recommend that the court DISMISS without

---

[1] Siddharth Jawahar, Swiftarc Ventures, LLC, Swiftarc Telehealth Labs Fund LP, Swiftarc
Telehealth Labs Fund GP, LLC, Swiftarc Ventures Lab Fund LP, Swiftarc Ventures Lab GP,
LLC, Swiftarc Beauty Fund GP, LLC, SJ Investment, LLC, SV SPV, LP, and SV Labs SPV II,
LP (collectively, the "Non-Moving Parties") are also defendants in this action.  (D.I. 84)  This
Report and Recommendation refers to the moving parties, together with the non-moving parties,
as "Defendants."
[2] Briefing associated with Krasovec and Ziv's pending motion is found at D.I. 89, D.I. 108, and
D.I. 112.  Briefing associated with Beauty Fund's pending motion is found at D.I. 91, D.I. 109,
and D.I. 114.  Briefing associated with Urquijo's pending motion is found at D.I. 94, D.I. 107,
and D.I. 113.

prejudice the claims against the Non-Moving Entity Defendants[3] under Federal Rules of Civil Procedure 4 and 12(b)(5).

## I.    BACKGROUND[4]

Plaintiffs are twenty-two purchasers of limited partnership interests in the Swiftarc Funds.[5] (D.I. 84 at ¶¶ 8-28) Defendants are limited liability companies, limited partnerships, and the individuals who allegedly controlled or managed those entities. (*Id.* at ¶¶ 29-42) The chart below identifies, categorizes, and defines the various Defendants as they are described in the first amended complaint ("FAC"), with the Movants indicated in bold text:

---

[3] The Non-Moving Entity Defendants are SJ Investment; SV SPV; Swiftarc Ventures; Telehealth Fund; Labs Fund; Labs SPV; Telehealth GP LLC; Labs GP LLC; and Beauty GP LLC, as defined in the chart at § I.

[4] The facts here are incorporated from the first amended complaint ("FAC") (D.I. 84), which the court views in the light most favorable to the plaintiff on a motion to dismiss. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-91 (3d Cir. 2016).

[5] The Swiftarc Funds are defined in the chart at § I. Plaintiffs are Kathryn A. Richardson, Trustee for the Kathryn A. Bilski Revocable Trust; Kathryn A. Richardson, Trustee for the Carol A. Richardson Trust; Joanne Holiday, individually and as Trustee for the Joanne Marie Holiday Revocable Trust Dated April 11, 2016; Elie Merheb; Elie Merheb, Trustee for the Elie N. Merheb Revocable Trust; YTH 003, LLC; Amber Tully; John Owen Tully; Brett McCoy; Sundar Manickam; Soundharia Manickam; Marc Mazur Consultants, Inc.; Cara Zale, LLC; Terri Crocker, Trustee for the Joseph K. Crocker 2018 Irrevocable Trust; Samir Haikal; Junto Green, LLC; Team Harris 14, LLC; Gary Harris, Trustee for the Nine Fourteen Living Trust; Ross Travis; Dino Palimeri; Jeff Stanley; and Denise Stanley. (D.I. 84 at ¶¶ 8-27)

| INDIVIDUAL DEFENDANTS | SWIFTARC ENTITIES | | | OTHER DEFENDANTS |
|---|---|---|---|---|
| | *Swiftarc Ventures, LLC* (D.I. 84 at ¶ 33) | *Swiftarc Funds* (D.I. 84 at ¶ 40) | *GP LLCs* (D.I. 84 at ¶ 39) | |
| Siddarth Jawahar | | Swiftarc Telehealth Labs Fund LP ("Telehealth Fund") (D.I. 84 at ¶ 34) | Swiftarc Telehealth Labs Fund GP, LLC ("Telehealth GP LLC") (D.I. 84 at ¶ 35) | SJ Investment Holdings, LLC ("SJ Investment") (D.I. 84 at ¶ 41) |
| **Frank Krasovec** | | Swiftarc Venture Labs Fund LP ("Labs Fund") (D.I. 84 at ¶ 36) | Swiftarc Venture Labs Fund GP, LLC ("Labs GP LLC") (D.I. 84 at ¶ 37) | SV SPV, LP ("SV SPV") (D.I. 84 at ¶ 42) |
| **Zohar Ziv** | | **Beauty Generations Fund I, LP ("Beauty Fund")** (D.I. 84 at ¶ 38) | Swiftarc Beauty Fund GP, LLC ("Beauty GP LLC") (D.I. 84 at ¶ 39) | |
| **Fabian Urquijo** | | SV Labs SVP I, LP, a/k/a SV Labs SPV II, LP ("Labs SPV") (D.I. 84 at ¶ 40) | | |

Prior to the formation of the Swiftarc Entities, Jawahar formed Swiftarc Capital, LLC and Swiftarc Fund, LP (together, "Swiftarc Capital") in 2010. (*Id.* at ¶¶ 56-58) Jawahar, Krasovec, and Ziv served as general partners of Swiftarc Capital. (*Id.*) Like the Swiftarc Entities, Swiftarc Capital solicited funds from investors by offering them limited partnership interests and invested the capital in third-party companies. (*Id.* at ¶¶ 59-61)

Jawahar, Krasovec, and Ziv formed Swiftarc Ventures in January of 2019, as investor discontent with Swiftarc Capital was rising and investors began demanding redemptions of their

capital contributions. (*Id.* at ¶¶ 63-66, 71) Urquijo joined the Swiftarc Ventures team as President in August of 2019. (*Id.* at ¶ 67) The FAC alleges that Jawahar, Krasovec, and Ziv formed Swiftarc Ventures to avoid their obligations arising from Swiftarc Capital. (*Id.* at ¶ 68)

After Jawahar failed to repay Swiftarc Capital investors and stopped communicating with them, the investors brought suit against Swiftarc Capital and Jawahar in the U.S. District Court for the District of Arizona on May 29, 2020 (the "Arizona Action"). (*Id.* at ¶¶ 71-72) Jawahar and Swiftarc Capital stopped participating in the Arizona Action, and a default judgment was entered against them on July 1, 2021. (*Id.* at ¶¶ 73-74)

Months later, in September of 2021, a separate group of Swiftarc Capital investors sued Jawahar and Swiftarc Capital in Texas state court (the "Texas Action") seeking redemption of their investments. (*Id.* at ¶¶ 76-77) Jawahar and Swiftarc Capital again stopped participating in the litigation, and a default judgment was entered against them in the Texas Action on June 14, 2022. (*Id.* at ¶ 78)

The Texas State Securities Board ("TSSB") also began investigating Jawahar and Swiftarc Capital for allegations similar to those raised in the Arizona and Texas Actions. (*Id.* at ¶ 103) On June 7, 2022, the TSSB entered a consented disciplinary order against Jawahar and Swiftarc Capital stating that they had breached their fiduciary duties to their clients and engaged in fraud. (*Id.* at ¶¶ 105-08) As a result, the TSSB revoked Swiftarc Capital's investment adviser registration and ordered it to cease and desist from engaging in fraud. (*Id.* at ¶¶ 109-10)

While litigation in the Arizona and Texas Actions was ongoing and the TSSB investigation was underway, the Individual Defendants solicited investments in the Swiftarc Funds through Swiftarc Ventures, which acted as the investment manager for each of the Swiftarc Funds. (*Id.* at ¶¶ 80-88, 102) Limited partner interests were promoted to investors

4

through marketing materials describing purported portfolio companies (the "Marketing Materials"), confidential Private Placement Memoranda ("PPMs"), Subscription Agreements, and Limited Partnership Agreements ("LPAs;" together with the PPMs and Subscription Agreements, the "Offering Documents"). (*Id.* at ¶¶ 88-89) Plaintiffs contend that the Offering Documents and Marketing Materials contained material misrepresentations about the Swiftarc Funds and the relationship between the Swiftarc Entities and limited partners. (*Id.* at ¶ 92) For example, Plaintiffs believed their capital would be deployed into investments with targeted portfolio companies, when instead it was allegedly used to repay prior investors and fund Jawahar's lifestyle. (*Id.*) Plaintiffs were also promised annual audited financial statements and reports, quarterly portfolio valuations, quarterly summaries of new investments and dispositions made during the previous quarter, and K-1 tax forms which never materialized. (*Id.*)

In addition to these alleged misrepresentations, Plaintiffs contend that the Individual Defendants failed to disclose the existence of the Arizona and Texas Actions or the TSSB investigation and order prior to their investments. (*Id.* at ¶ 112) When certain Plaintiffs contacted Jawahar about Swiftarc Capital's legal problems, Swiftarc Ventures issued a statement (the "Swiftarc Statement") assuring Plaintiffs that no individual associated with Swiftarc Ventures engaged in any wrongdoing at Swiftarc Capital. (*Id.* at ¶¶ 113-18)

Following the issuance of the TSSB order, a Swiftarc Ventures employee learned that Swiftarc Ventures was comingling the assets of each of the Swiftarc Funds to satisfy capital calls of portfolio companies or other expenses, and it was transferring new investments from investors and limited partners to a different account. (*Id.* at ¶¶ 121-24) Krasovec and Ziv then tried to distance themselves from the Swiftarc Entities by preparing to transfer all funds from the Swiftarc Entities to a newly created entity in a transaction called the "Beauty Fund Swap." (*Id.*

5

at ¶¶ 138-40) Krasovec and Ziv coerced Jawahar into consenting to the Beauty Fund Swap by threatening to file a Racketeer Influenced and Corrupt Organizations Act ("RICO") complaint against him. (*Id.* at ¶¶ 141-42) Plaintiffs who invested in the Beauty Fund also consented to the Beauty Fund Swap without knowledge of Jawahar's fraud or the true reasons for the restructuring. (*Id.* at ¶¶ 147-52) The Beauty Fund Swap became effective on April 16, 2023. (*Id.* at ¶ 153) Plaintiffs learned of Jawahar's fraud about a month after the Beauty Fund Swap closed. (*Id.* at ¶ 156)

On December 20, 2023, Jawahar was criminally indicted by a federal grand jury in the Eastern District of Missouri on three counts of wire fraud and one count of investment adviser fraud. (*Id.* at ¶ 163) The criminal charges pertained to Jawahar's activities with both Swiftarc Capital and the Swiftarc Entities. (*Id.* at ¶¶ 164-66)

On June 7, 2024, Plaintiffs brought this action for securities fraud in the Northern District of Ohio seeking to recover more than $5.5 million invested in the Swiftarc Funds. (D.I. 1; D.I. 84 at ¶ 283) The case was transferred to the District of Delaware in September of 2025 pursuant to forum selection clauses in the relevant LPAs. (D.I. 61) Plaintiffs filed the FAC following the transfer of venue, and Defendants Krasovec, Ziv, Urquijo, and the Beauty Fund now move to dismiss the FAC for failure to state a claim. (D.I. 84)

The FAC asserts the following causes of action: (1) Count I, for violation of Section 10(b) of the Securities and Exchange Act (the "Exchange Act"), 15 U.S.C. § 78j, and SEC Rule 10b-5; (2) Count II, for control person liability under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t; (3) Count III, for violation of 6 *Del. C.* § 73-104 ("Delaware Securities Act"); (4) Count IV, for common law fraud; (5) Count V, for civil conspiracy; (6) Count VI, for breach of fiduciary duty; (7) Count VII, for aiding and abetting breach of fiduciary duty; (8) Count VIII,

for liability of a purported partner; and (9) Count IX, for unjust enrichment. (D.I. 84 ¶¶ 285-367) Krasovec and Ziv move to dismiss Counts I to IX; the Beauty Fund moves to dismiss Counts I, III, IV, V, and IX; and Urquijo moves to dismiss Counts I to VII and Count IX.[6] (D.I. 88 at 2; D.I. 90 at 2; D.I. 92 at 1)

## II.   LEGAL STANDARD

Rule 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiffs. *Umland v. Planco Fin.*, 542 F.3d 59, 64 (3d Cir. 2008). The court may consider only the allegations in the complaint, documents incorporated by reference into the complaint, and

---

[6] To date, Siddharth Jawahar has not moved for dismissal under Rule 12(b). On July 21, 2026, Jawahar moved for an extension of time to respond to the FAC. (D.I. 120) Plaintiffs responded to Jawahar's motion on August 4, 2026. (D.I. 121) The motion is not yet fully briefed and remains pending before the court.

matters of which the court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

Fraud-based claims must be pleaded with particularity under Rule 9(b), meaning that "the complaint must describe the time, place, and contents of the false representations or omissions, as well as the identity of the person making the statement and the basis for the statement's falsity." *City of Warren Police & Fire Ret. Sys. v. Prudential Fin. Inc.*, 70 F.4th 668, 680 (3d Cir. 2023) (citations omitted). In a case for federal securities fraud, Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA") "impose independent, threshold pleading requirements that, if not met, support dismissal apart from Rule 12(b)(6)." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 224 (3d Cir. 2002). The PSLRA requires that claims brought under the Exchange Act must identify "each statement alleged to have been misleading" and "specify the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). The complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs*, 551 U.S. at 321 (quoting 15 U.S.C. § 78u-4(b)(1)-(2)).

## III.    DISCUSSION

### A. Procedural Deficiencies

I recommend that the court dismiss without prejudice the claims against the Non-Moving Entity Defendants because they have not appeared in this action and were not properly served. Rule 4(m) requires the court to *sua sponte* dismiss a defendant without prejudice if service is not made on that defendant within 90 days after the complaint is filed, unless the plaintiff shows good cause justifying an extension of time to complete service. Fed. R. Civ. P. 4(m); *see Diaz v. Lezanski*, 2011 WL 2115671, at *10 (D.N.J. May 25, 2011); *Hills v. Romero-Sanchez*, C.A. No.

8

05-172-JJF, 2006 WL 1431258, at *1 (D. Del. May 24, 2006). When Plaintiffs filed the FAC on November 14, 2025, they added SJ Investment and SV SPV as defendants. (D.I. 84) The deadline to timely serve SJ Investment and SV SPV expired on February 12, 2026. Plaintiffs did not issue summonses for these defendants until April 10, 2026. (D.I. 116; D.I. 116-2) To date, the summonses have not been returned executed.

The record before the court does not support a finding of good cause for Plaintiffs' failure to timely serve SJ Investment and SV SPV. To determine whether good cause exists for the failure to timely complete service, courts consider three factors: (1) whether plaintiff made a reasonable effort to effectuate service, (2) whether and to what degree the defendant has been prejudiced, and (3) whether plaintiff sought an extension of time to effectuate service. *Hills*, 2006 WL 1431258, at *1 (citing *Farrace v. United States Department of Justice*, 220 F.R.D. 419, 420–421 (D. Del. 2004)). A lack of prejudice to the defendant "is insufficient, standing alone, to establish the 'good cause' required to justify an extension of time to effectuate service." *Id.* Here, Plaintiffs did not attempt to serve the newly-added defendants until two months after the deadline for completion of service expired, and they did not request an extension of time.

Dismissal of Swiftarc Ventures, Telehealth Fund, Labs Fund, Labs SPV, Telehealth GP LLC, Labs GP LLC, and Beauty GP LLC for insufficient service of process is also warranted under Rule 12(b)(5). Although Plaintiffs timely served the original complaint and summonses on these defendants and docketed proofs of service before the case was transferred from the Northern District of Ohio, the method of service was improper. The returns of service indicate that service was made on the entities' registered agents via certified mail by a paralegal at the firm representing Plaintiffs. (D.I. 21; D.I. 22; D.I. 23; D.I. 24; D.I. 25; D.I. 26; D.I. 27; D.I. 28)

9

This method of service does not comply with Rule 4(e)(1), which authorizes service of the summons and complaint pursuant to the law of the state where the district court is located.

Ohio state law "permit[s] service of the summons and complaint *by the clerk* by certified mail[.]" *Noble Env't, Inc. v. Nat'l Freight Logistics, Inc.*, 2020 WL 1451965, at *1 n.1 (N.D. Ohio Mar. 25, 2020) (citing Ohio R. Civ. P. 4.1(A)(1) & 4.3) (emphasis in original). In the Northern District of Ohio, Local Rule 4.2 provides that a plaintiff's attorney may serve a defendant by certified mail only if the return address is directed to the Office of the Clerk, and "[t]he Clerk shall enter the fact of mailing on the appearance docket and make a similar entry when the return receipt is received." N.D. Ohio Local Rule 4.2(a)-(b). Here, that procedure was not followed and Plaintiffs' counsel docketed the proofs of service.

When Plaintiffs filed the FAC on November 14, 2025,[7] they were required to serve the FAC on these defendants in accordance with Rule 4 because Swiftarc Ventures, Telehealth Fund, Labs Fund, Labs SPV, Telehealth GP LLC, Labs GP LLC, and Beauty GP LLC had not yet appeared in the case. *See* 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1146 (4th ed. 2021) (explaining that the service provisions of Fed. R. Civ. P. 5 apply only to parties who have appeared, and amended or supplemental pleadings must be served on parties who have not yet appeared in conformity with Fed. R. Civ. P. 4). As previously discussed, Plaintiffs did not issue summonses on these defendants until April 10, 2026, two months after the 90-day deadline to complete service expired under Rule 4(m). (D.I. 116) To date, no returns of service have been entered for Swiftarc Ventures, Telehealth Fund, Labs Fund,

---

[7] There is no indication on the Northern District of Ohio and District of Delaware dockets that Swiftarc Ventures, Telehealth Fund, Labs Fund, Labs SPV, Telehealth GP LLC, Labs GP LLC, and Beauty GP LLC received notice of the Northern District of Ohio's Memorandum Opinion and Order transferring the case to this District in September of 2025. (D.I. 61)

Labs SPV, Telehealth GP LLC, Labs GP LLC, or Beauty GP LLC. Plaintiffs' efforts to effectuate service were not reasonable, and Plaintiffs did not request an extension of time to serve these defendants. Thus, good cause has not been established to excuse Plaintiffs' failure to timely serve the FAC on Swiftarc Ventures, Telehealth Fund, Labs Fund, Labs SPV, Telehealth GP LLC, Labs GP LLC, and Beauty GP LLC.

### B. Fraud-Based Claims (Counts I, III, and IV)

The parties appear to agree that Plaintiffs' fraud-based claims rise or fall together. (D.I. 89 at 8-9; D.I. 91 at 19; D.I. 94 at 14; D.I. 109 at 7) Each of the three fraud-based claims asserted in the FAC requires a showing of a material misstatement or omission by a defendant. To state a claim for common law fraud, Plaintiffs must plead that "(1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance." *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 958 (Del. 2005). The elements of a claim brought under the Delaware Securities Act are consistent with the requirements for a federal claim for securities fraud. *Swan Energy, Inc. v. Investor Protection Unit of Del. Dep't of Justice*, --- A.3d ----, 2026 WL 2053613 (Del. July 16, 2026).

To state a claim for violation of Section 10(b) of the Exchange Act and Rule 10b-5 at Count I of the FAC, Plaintiffs must plead "(1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation." *In re Hertz Glob. Holdings Inc.*, 905 F.3d 106, 114 (3d Cir. 2018) (internal quotation

11

marks and citations omitted). Count I of the FAC rests on alleged material misrepresentations and omissions. A claim for securities fraud based on misrepresentations "should lay out, with particularity, each fraudulent statement or representation, its materiality, which specific defendant made the representation, when it was made, [and] why it was false or misleading[.]" *Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 61 F. Supp. 3d 391, 397 (D. Del. 2014). Only the "maker" of a misrepresentation may be liable under Section 10(b). *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). "For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.* Consequently, "[o]ne who prepares or publishes a statement on behalf of another is not its maker." *Id.*

"Omissions are actionable only when they render some other affirmative statement misleading." *In re Walmart Inc. Sec. Litig.*, 151 F.4th 103, 113 (3d Cir. 2025) (citing *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 263 (2024)). Under Rule 10b-5, it is unlawful "to omit to state a material fact necessary in order to make the statements made . . . not misleading." 17 C.F.R. § 240.10b-5(b). A claim for securities fraud under Section 10(b) and Rule 10b-5 cannot be based on "pure omissions," which occur "when a speaker says nothing, in circumstances that do not give any particular meaning to that silence." *Macquarie*, 601 U.S. at 263. Instead, Rule 10b-5 proscribes "half-truths," which are "representations that state the truth only so far as it goes, while omitting critical qualifying information." *Id.* (quoting *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 188 (2016)). The defendant must also have an affirmative duty to disclose the information. *Oran v. Stafford*, 226 F.3d 275, 285 (3d Cir. 2000) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 239 (1988)).

### 1. Krasovec, Ziv, and Urquijo

According to Plaintiffs, the Offering Documents and Marketing Materials misrepresented that investor contributions would be used to invest in portfolio companies, and investors would receive audited financial statements, annual reports, and tax documents. (D.I. 107 at 8-9; D.I. 108 at 6) However, the FAC does not plausibly establish that Krasovec, Ziv, or Urquijo "made" the alleged misrepresentations in the Marketing Materials and Offering Documents as required to establish a material misstatement under Section 10(b) and Rule 10b-5. Consequently, I recommend that the court GRANT Krasovec, Ziv, and Urquijo's motions to dismiss Count I of the FAC.

To link a person to a statement as its maker, the court considers: (1) "the person in whose name a statement is made," (2) "the person who signs a statement," (3) whether the person affirms a statement is true, or (4) whether the person "exercises strong control over certain aspects of a document[.]" *In re Celgene Corp., Inc. Sec. Litig.*, 741 F. Supp. 3d 217, 223-24 (D.N.J. 2024). The Marketing Materials and Offering Documents identify Urquijo as the President of Swiftarc Ventures, and the FAC alleges that Urquijo was involved in the "creation and circulation of marketing materials[.]" (D.I. 84 at ¶ 93) However, Plaintiffs do not argue that Urquijo signed or expressly endorsed the statements made in the Marketing Materials and Offering Documents. Similarly, the Marketing Materials and Offering Documents were not made in Krasovec or Ziv's name, nor did Krasovec and Ziv sign or expressly affirm the truth of the statements. Instead, the parties dispute whether Krasovec, Ziv, and/or Urquijo exercised sufficient control over the Marketing Materials and/or Offering Documents to qualify as "makers" of the alleged misrepresentations.

13

The FAC states in conclusory fashion that Krasovec, Ziv, and Urquijo reviewed, approved, and ordered the dissemination of the Offering Documents and Marketing Materials containing misrepresentations, but it does not contain any specific facts supporting Plaintiffs' position that Krasovec, Ziv, or Urquijo exercised ultimate authority over the contents of those documents. (D.I. 84 at ¶¶ 302-04)  The FAC groups Krasovec, Ziv, and Urquijo together without distinguishing each Individual Defendant's role in creating and disseminating the Marketing Materials and Offering Documents. *See Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 394-95 (D. Del. 2016).  The "presumption that corporate insiders, *as a group*, are 'makers' of a statement because the statement is deemed to be attributed to those insiders [is] inconsistent with *Janus*'s description of attribution as a limiting mechanism." *Levy v. Luo*, C.A. No. 23-653-GBW, 2025 WL 3496636, at *6 (D. Del. Dec. 5, 2025) (quoting *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 640 (S.D.N.Y. 2017)).

The same analysis applies to the Swiftarc Statement.  Plaintiffs contend that the Swiftarc Statement is attributable to Krasovec and Ziv because it was expressly made "[o]n behalf of the collective Swiftarc Ventures, [its] General Partners and Management," and the FAC identifies Krasovec and Ziv as General Partners of Swiftarc Ventures. (D.I. 108 at 28; D.I. 84 at ¶¶ 65-66; Ex. 14 at 1)  Absent further context, such as a signature, an affirmation, or an express confirmation as to the author, this statement does not adequately attribute the contents to Krasovec or Ziv. *See Levy*, 2025 WL 3496636, at *6 (finding that a statement containing the phrase "provided by [the company] and its management team" is inconsistent with the standard required by *Janus* and does not impute maker status onto the individual members of the management team); *see also In re Celgene*, 741 F. Supp. 3d at 223-24 (asserting that, among

14

other ways, a person can be a maker when the statement is in their name, contains their signature, they independently affirm the message, or they wield significant control over aspects of the document).

The FAC alleges more specifically that Ziv "contributed to, and approved, Marketing Materials[,]" citing an email chain attached as an exhibit to the pleading. (D.I. 84 at ¶ 100) The exhibit shows that Ziv offered feedback on a marketing "teaser" for the Beauty Fund, but it does not show that Ziv had the ultimate authority to approve the document. (*Id.*, Ex. 9) Likewise, the FAC states that Urquijo was involved in the "creation and circulation of marketing materials." (*Id.* at ¶ 93) But involvement in preparing a document is not enough to achieve "maker" status. *Janus*, 564 U.S. at 147-48 (analogizing involvement in preparing a document to the work of a speechwriter who "assists" a maker).

Plaintiffs also rely on pleaded allegations regarding Krasovec and Ziv's centrality to the operation of the Swiftarc Entities and their involvement in attracting and soliciting investors to bolster their position that Krasovec and Ziv bore ultimate responsibility for the alleged misrepresentations. (D.I. 108 at 10) These averments are insufficient to establish Krasovec and Ziv's ultimate authority. "Although *Janus* recognized that attribution could be implicit from surrounding circumstances, the key question is whether a person or entity has authority over a statement." *Universal Am.*, 176 F. Supp. 3d at 395 (quoting *City of Roseville Emps. Ret. Sys. v. Energy Sols., Inc.*, 814 F. Supp. 2d 395, 418 (S.D.N.Y. 2011)) (internal quotation marks omitted). The FAC does not contain particularized facts demonstrating that Krasovec, Ziv, or Urquijo controlled the content of the Marketing Materials and Offering Documents or whether and how they were disseminated. *Id.* A review of the Offering Documents attached to the FAC indicates that Jawahar was the moving force behind the misrepresentations. (*See, e.g.,* D.I. 84,

15

Ex. 2 at 5, 47) (listing Jawahar as the contact for questions and requests regarding the Offering Documents). Moreover, Krasovec, Ziv, and Urquijo's titles and roles in the Swiftarc Entities, without more, are insufficient to establish ultimate authority under Rule 9(b) or the PSLRA. *See City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 687 (3d Cir. 2023) (considering the maker's position as Vice Chairman only in the context of other factors, including that the statement made in an analyst report was attributed to him by name).

Plaintiffs contend that the facts here are analogous to those in *Heritage Global Network Los Angeles, Inc. v. Welch*, 2024 WL 695772 (M.D. Tenn. Feb. 20, 2024), where the court imputed misrepresentations made by an investment firm to two of its executives. (D.I. 108 at 9-10) The court determined that the executives had ultimate authority over the statement as founders and operators of the investment firm, noting that one of the two executives signed the private placement memorandum allegedly containing the misrepresentations, and statements made during negotiations confirmed both executives' involvement in the process. *Welch*, 2024 WL 695772, at *12. Here, there is no dispute that Krasovec, Ziv, and Urquijo did not sign off on the alleged misrepresentations, nor does the FAC allege specific facts tying Krasovec, Ziv, or Urquijo to the content of the Marketing Materials and Offering Documents and whether or how to communicate them.

The FAC also fails to plausibly allege that Krasovec, Ziv, and Urquijo omitted material information despite their fiduciary and individual duties to disclose that information. Plaintiffs contend that Krasovec, Ziv, and Urquijo had a duty to disclose information regarding the fraud allegations brought against Jawahar and/or Swiftarc Capital in the Arizona and Texas Actions and the TSSB investigation. Without that information, Plaintiffs argue that certain statements in the Marketing Materials, Offering Documents, and the Swiftarc Statement are misleading. (D.I.

16

108 at 10-11; D.I. 107 at 7-8)  For the reasons previously explained, however, the statements in the Marketing Materials, Offering Documents, and the Swiftarc Statement are not plausibly attributable to Krasovec, Ziv, or Urquijo.  The Third Circuit has held that "the plain language of [Section] 10(b) and corresponding Rule 10b-5 do not contemplate the general failure to rectify misstatements of others." *U.S. v. Schiff*, 602 F.3d 152, 167 (3d Cir. 2010) (citing cases). "Absent a duty to disclose, silence is not fraudulent or misleading under Rule 10b-5." *Id.* at 162 (quoting *Levinson*, 485 U.S. at 239 n.17) (internal quotation marks omitted).

Having recommended dismissal of the Section 10(a) claim against Krasovec, Ziv, and Urquijo for failure to state a material misrepresentation or omission attributable to them, the court does not reach the sufficiency of the pleaded allegations regarding scienter and reliance.

### 2.  The Beauty Fund

Certain Offering Documents and Marketing Materials attached to the FAC are attributable to the Beauty Fund.  For example, attached as Exhibit 2 to the FAC is the Beauty Fund PPM.  (D.I. 84, Ex. 2)  However, the FAC does not plausibly identify an actionable misstatement or omission for purposes of Plaintiffs' fraud-based claims against the Beauty Fund.

Plaintiffs allege the Beauty Fund's PPM misrepresented that investor capital would be used to invest in targeted portfolio companies, when instead the funds were transferred to repay prior investors or satisfy capital calls of portfolio companies.[8]  (D.I. 109 at 8-9; *see* D.I. 84 at ¶¶ 123, 164, 288(d))  But the FAC does not identify any representations in the Beauty Fund PPM describing the particulars of the investment strategy or identifying specific portfolio companies that would be targeted for investment in the future.  The PPM itself describes the Beauty Fund's

---

[8] The FAC acknowledges that a portion of the funds collected from investors through the Swiftarc Entities was invested in portfolio companies.  (D.I. 84 at ¶ 165)

investment strategy in forward-looking, generalized terms: "The Fund will seek to invest in early-stage financings of beauty and wellness companies" and "intends to invest opportunistically in what it believes to be high-quality, high-potential early-stage beauty and wellness companies."[9] (D.I. 84, Ex. 2 at 9-10)  These vague, forward-looking statements are not actionable misrepresentations. *See EP MedSystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 872 (3d Cir. 2000) ("Material representations must be contrasted with statements of subjective analysis or extrapolations, such as opinions, motives and intentions[.]").

Alleged misrepresentations in the Beauty Fund's LPA suggesting that limited partners would receive annual audited financial statements, annual reports, and tax documents are also insufficient to satisfy the requirements of Section 10(b).  (D.I. 84, Ex. 4 at § 10.03(a))  The FAC alleges that the representation is misleading because "during Plaintiffs' time as limited partners and up until the present, they have not received any audited financial statements, reports, or quarterly valuations. Further, they have only received a single K-1 tax document; the Beauty Fund provided a 2022 K-1 on or about June 12, 2023." (*Id.* at ¶ 288(f))  But securities violations "[c]ustomarily . . . involve a fraudulent material misrepresentation or omission that affects a security's value." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 173 (3d Cir. 2001).  The FAC does not allege that the failure to provide financial statements impacts the value of the securities.  To the extent that the LPA requires the Beauty Fund's General Partner to distribute audited financial statements, reports, valuations and tax documents to investors, but this provision of the LPA was breached, Plaintiffs' claim does not sound in fraud.  (D.I. 84, Ex. 4 at § 10.03(a))

---

[9] The Beauty Fund PPM describes specific investments in The Pause Group, Inc. and Grace Beauty Capital LLC, but the FAC does not identify any of the representations regarding these initial investments among the alleged material misrepresentations.  (D.I. 84, Ex. 2 at 10-11)

Plaintiffs also contend that the Beauty Fund omitted material information by not disclosing the Arizona and Texas Actions or the TSSB order describing Jawahar's fraudulent conduct in the Offering Documents, the Marketing Materials, or the Beauty Fund's PPM. (D.I. 109 at 7-8) Specifically, Plaintiffs cite statements in the PPM regarding Jawahar's experience at Morgan Stanley and his role at Swiftarc Capital, claiming these affirmative statements triggered an obligation for the Beauty Fund to disclose the fraud allegations against Jawahar and Swiftarc Capital. (*Id.*) But these general statements regarding Jawahar's work experience do not open the door to disclosures about Swiftarc Capital's litigation and regulatory history, particularly when the default judgment in the Arizona Action was publicly available and the Texas Action and the TSSB order had not yet occurred. *See, e.g., Alvarez v. Pacira Biosciences, Inc.*, 2026 WL 323085, at *6 (D.N.J. Feb. 6, 2026) (holding that fraud by omission theory was undermined by public availability of court filings that allegedly rendered statements misleading).

Regardless of whether the alleged misrepresentations or omissions are sufficiently pled, the FAC fails to adequately plead a connection between the Beauty Fund's alleged misrepresentations or omissions and the purchase or sale of a security by Plaintiffs. The FAC alleges generally that Plaintiffs would have refused to invest or demanded additional safeguards if not for the Beauty Fund's misrepresentations. (D.I. 84 at ¶ 295) This conclusory averment acknowledges that Plaintiffs might have gone forward with their investments even if full disclosures were made, albeit with the inclusion of additional terms. *See McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425 (3d Cir. 2007) (requiring a showing "that but for the fraudulent misrepresentation or omission, the investor would not have purchased or sold the security"). Furthermore, the FAC does not allege that a failure to provide the financial statements and other investment documents "actually caused" the economic loss suffered, as is required to allege loss

19

causation. *See id.* (asserting that plaintiffs must show "that the fraudulent misrepresentation or omission actually caused the economic loss suffered"). Consequently, I recommend that the court GRANT the Beauty Fund's motion to dismiss Counts I, III, and IV of the FAC.

### C.  Control Person Liability (Count II)

Section 20(a) of the Exchange Act allows a plaintiff to assert a derivative cause of action against individuals who exercise control over a "controlled person," including a corporation, that has violated Section 10(b). 15 U.S.C. § 78t(a). To state a claim for control person liability under Section 20(a) of the Exchange Act, a plaintiff must allege the following: (1) a primary violation of the federal securities laws by a controlled person or entity; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful way a culpable participant in the primary violation. *In re Reliance Sec. Litig.*, 91 F. Supp. 2d 706, 731 (D. Del. 2000) (citing *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998)). The FAC alleges that Jawahar, Urquijo, Krasovec, and/or Ziv "acted as a control person of the Swiftarc Entities that, in fact, made the material representations." (D.I. 84 at ¶ 300) For the reasons set forth at §§ III.A and B.2, however, the court recommends dismissal of the Section 10(b) claims against the Swiftarc Entities. Absent a primary violation of Section 10(b) by any of the Swiftarc Entities, there can be no claim against the Individual Defendants under Section 20(a). Therefore, I recommend that the court GRANT the motions to dismiss Count II of the FAC against Krasovec, Ziv, and Urquijo.

### D.  Breach of Fiduciary Duty (Count VI)

Common law breach of fiduciary duty has "two formal elements: (i) the existence of a fiduciary duty and (ii) a breach of that duty." *Arxada Holdings NA Inc. v. Harvey*, 351 A.3d 519, 568-69 (Del. Ch. 2026). In Delaware, a general partner relationship gives rise to a fiduciary

20

duty. *Metro Ambulance, Inc. v. Eastern Medical Billing, Inc.*, 1995 WL 409015, at *3 (Del. Ch. Jul. 5, 1995). Krasovec and Ziv argue that they are not general partners of the Swiftarc Entities because the GP LLCs serve in that capacity. (D.I. 89 at 26-27; D.I. 112 at 10 n.11) But the pleaded allegations in the FAC suggest otherwise. (D.I. 84 at ¶¶ 2, 338) Although the Beauty Fund's LPA and Subscription Agreement identify the Beauty GP LLC as the general partner, (*id.*, Ex. 3 at 1; Ex. 4 at 5, 11), the PPM lists Krasovec and Ziv as co-founders and general partners of the Beauty Fund, (*id.*, Ex. 2 at 8). Construing the pleaded averments in the light most favorable to Plaintiffs at this stage, the court assumes without deciding that Krasovec and Ziv are general partners of the Beauty Fund for purposes of the pending motions to dismiss. The FAC also plausibly alleges that Krasovec and Ziv breached their fiduciary duties by "orchestrat[ing] and execut[ing] a favorable exit" from the Swiftarc Entities for themselves before notifying Plaintiffs that Jawahar was engaging in fraud. (*Id.* at ¶ 339(f)); *see Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, 2009 WL 1124451, at *10 (Del. Ch. Apr. 20, 2009) (finding allegations that defendants benefited themselves at the plaintiffs' expense were sufficient to withstand a motion to dismiss a breach of fiduciary duty claim). For these reasons, I recommend that the court DENY Krasovec and Ziv's motion to dismiss Count VI of the FAC.

Urquijo's argument for dismissal of Count VI rests solely on his position that the pleaded allegations fail to satisfy the specificity requirement of Rule 9(b) where, as here, the claim is founded on allegations of fraud. (D.I. 94 at 18) Plaintiffs allege Urquijo breached his fiduciary duties by moving investments between funds "via so-called 'intercompany loans'—without any paperwork, collateral, record, or consent of the Plaintiffs" to benefit himself "by paying off other debts and redemption requests at the expense of Plaintiffs and others." (D.I. 84 at ¶ 339(a)) Because Urquijo does not deny that he owed and breached a fiduciary duty to Plaintiffs, and

21

because he fails to articulate how the pleaded allegations lack specificity as to this particular claim, I recommend that the court DENY Urquijo's motion to dismiss Count VI.

### E. Civil Conspiracy (Count V) and Aiding and Abetting a Breach of Fiduciary Duty (Count VII)

The FAC alleges civil conspiracy against Krasovec, Ziv, Urquijo, and the Beauty Fund. (D.I. 84 at ¶¶ 326-35) Under Delaware law, a claim for civil conspiracy requires: "(1) [a] confederation or combination of two or more persons; (2) [a]n unlawful act done in furtherance of the conspiracy; and (3) [a]ctual damage." *In re Am. Int'l Grp., Inc.*, 965 A.2d 763, 805 (Del. Ch. 2009). "To maintain a civil conspiracy claim, the plaintiff must allege an underlying actionable tort by each defendant." *Abbott v. Gordon*, 2008 WL 821522, at *17 (Del. Super. Ct. Mar. 27, 2008), *aff'd*, 957 A.2d 1 (Del. 2008). Here, the civil conspiracy claims in the FAC are based on the underlying allegations of fraud. (D.I. 84 at ¶¶ 327-33) For the reasons set forth at § III.B, *supra*, the FAC fails to state a plausible claim for fraud against Krasovec, Ziv, Urquijo, and the Beauty Fund. Because there is no underlying tort to sustain the civil conspiracy claims against these Defendants, I recommend that the court GRANT the motions to dismiss Count V.

The FAC includes a claim for aiding and abetting a breach of fiduciary duty against Krasovec, Ziv, and Urquijo, but not the Beauty Fund, in the alternative to the cause of action for breach of fiduciary duty at Count VI. (D.I. 84 at ¶¶ 341-46) Aiding and abetting a breach of fiduciary duty requires demonstrating: "(i) the existence of a fiduciary relationship, (ii) a breach of the fiduciary's duty, (iii) knowing participation in the breach by a non-fiduciary defendant, and (iv) damages proximately caused by the breach." *Firefighters' Pension Sys. of City of Kansas City v. Found. Bldg. Materials, Inc.*, 318 A.3d 1105, 1169-70 (Del. Ch. 2024). The FAC alleges that Urquijo aided and abetted a breach of fiduciary duty by authorizing intercompany

22

loans and disbursing money from the Swiftarc Funds to Jawahar. (D.I. 84 at ¶ 344) The FAC also cites Krasovec and Ziv's continued involvement with Swiftarc Ventures after Jawahar had been sued for fraud, as well as their support for Jawahar to retain responsibility for the investment of the Telehealth Fund and the Labs Fund after the Beauty Fund Swap. (*Id.*) At this early stage of the proceedings, these allegations are sufficient to state a claim for aiding and abetting a breach of fiduciary duty against Krasovec, Ziv, and Urquijo.[10] Consequently, I recommend that the court DENY the motions to dismiss Count VII of the FAC.

## F. Liability of a Purported Partner (Count VIII)

Krasovec and Ziv seek dismissal of Count VIII of the FAC for liability of a purported partner, arguing that they were not general partners of the Swiftarc Funds and it would not be reasonable for Plaintiffs to rely on any representations that Krasovec and Ziv were general partners of the Swiftarc Funds. (D.I. 89 at 29-30) But Delaware law provides that:

> If a person, by words or conduct, purports to be a partner, or consents to being represented by another as a partner, in a partnership or with 1 or more persons not partners, the purported partner is liable to a person to whom the representation is made, if that person, relying on the representation, enters into a transaction with the actual or purported partnership. If the representation, either by the purported partner or by a person with the purported partner's consent, is made in a public manner, the purported partner is liable to a person who relies upon the purported partnership even if the purported partner is not aware of being held out as a partner to the claimant. If a partnership obligation results, the purported partner is liable with respect to that obligation as if the purported partner were a partner.

6 Del. C. § 15-308(a). For the reasons previously discussed at § III.D, *supra*, the FAC adequately alleges that Krasovec and Ziv were general partners or held themselves out to be general partners, and it was reasonable for Plaintiffs to rely on these representations as stated in

---

[10] As with Count VI, Urquijo argues for dismissal of the civil conspiracy and aiding and abetting claims at Counts V and VII of the FAC solely based on Plaintiffs' alleged failure to satisfy the heightened pleading standard of Rule 9(b). (D.I. 94 at 18) Urquijo's position is deficient for the same reasons stated in § III.D, *supra*.

23

the FAC.[11]  Consequently, I recommend that the court DENY Krasovec and Ziv's motion to dismiss Count VIII of the FAC.

### G.  Unjust Enrichment (Count IX)

The elements of common law unjust enrichment in Delaware are, "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).  Krasovec and Ziv's sole argument for dismissal of the unjust enrichment claim rests on their position that the cause of action for aiding and abetting a breach of fiduciary should not survive.  (D.I. 89 at 28-29)  Having recommended that the aiding and abetting claim at Count VII of the FAC should survive Krasovec and Ziv's motion to dismiss, *see* § III.E, *supra*, I further recommend that the court DENY Krasovec and Ziv's motion to dismiss Count IX of the FAC for unjust enrichment.

The Beauty Fund contends that Count IX should be dismissed because the LPA and Subscription Agreement govern its relationship with Plaintiffs, and Delaware law generally holds that when "a contract comprehensively governs the parties' relationship, then it alone must provide the measure of the plaintiff's rights and any claim of unjust enrichment will be denied." (D.I. 91 at 20) (quoting *BAE Sys. Info. and Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, 2009 WL 264088, at *7 (Del. Ch. Feb. 3, 2009)).  Plaintiffs argue that their unjust enrichment claim should survive because the FAC alleges the agreements were procured by fraud and that

---

[11] When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiffs. *Umland*, 542 F.3d at 64.  The merits of whether Plaintiffs' reliance on representations regarding Krasovec and Ziv's status as general partners was reasonable, and whether Plaintiffs actually relied on the representations, are questions of fact and not suitable for resolution in a 12(b)(6) motion to dismiss.

24

they are legally unenforceable. (D.I. 109 at 20) But "merely suggesting that the validity of a contract may be in doubt is insufficient to support a claim for unjust enrichment[.]" *Haney v. Blackhawk Network Holdings, Inc.*, 2016 WL 769595, at *9 (Del. Ch. Feb. 26, 2016). Instead, the complaint must allege that the underlying agreement(s) are subject to rescission due to the fraudulent conduct. *Id.* The FAC does not seek rescission or any other equitable remedies pertaining to the Beauty Fund's LPA or Subscription Agreement. Plaintiffs' suggestion that intercompany loans enriched the Beauty Fund at the expense of the other funds is not supported by the cited paragraph of the FAC, which does not mention the Beauty Fund. (D.I. 109 at 20) (citing D.I. 84 at ¶ 123). Therefore, I recommend that the court GRANT the Beauty Fund's motion to dismiss Count IX of the FAC.

Urquijo contends that Count IX of the FAC should be dismissed because it alleges he was unjustly enriched "by collecting compensation, which may include salary and bonuses, from Swiftarc Ventures at a time when it was funded primarily by intercompany loans[,]" and allegations of enrichment based on collecting compensation are generally insufficient. (D.I. 94 at 22-23) (quoting D.I. 84 at ¶ 363). According to Urquijo, this averment is deficient both because it is based on Urquijo's receipt of compensation and because there is no direct relationship between the alleged enrichment and the impoverishment. (D.I. 113 at 10) As Plaintiffs explain, however, the FAC draws a connection between the misuse of Plaintiffs' funds and Urquijo's conduct disguising the misuse of funds in his capacity as President of Swiftarc Ventures. (D.I. 107 at 18-20) Specifically, the FAC alleges that Urquijo attempted to hide Jawahar's alleged fraud, and that Urquijo's salary was "funded primarily by intercompany loans." (D.I. 84 at ¶¶ 93, 121-22, 363) At this stage of the proceedings, these averments are sufficient to establish a relation between the enrichment and the impoverishment. *See Chumash*

25

*Capital Investments, LLC v. Grand Mesa Partners, LLC*, 2024 WL 1554184, at *17 (Del. Ch. Apr. 10, 2024) (considering whether a defendant charged with unjust enrichment "knowingly facilitated the alleged fraud."); *see also Teachers' Ret. Sys. of La. v. Aidinoff*, 900 A.2d 654, 672 n.25 (Del. Ch. 2006) (explaining that a claim for unjust enrichment "is often deployed against persons who (although not acting with scienter themselves) are sufficiently aligned with a wrongdoer that they ought to disgorge an unearned benefit conferred upon them by the wrongdoer at the victim's expense."). Consequently, I recommend that the court DENY Urquijo's motion to dismiss Count IX of the FAC.

## IV.    CONCLUSION

For the reasons discussed above, I recommend that the court:

1. GRANT-IN-PART Krasovec and Ziv's motion to dismiss the FAC. (D.I. 88) Specifically, I recommend that the court GRANT the motion to dismiss Counts I, II, III, IV, and V and DENY the motion to dismiss Counts VI, VII, VIII, and IX as to Krasovec and Ziv;

2. GRANT-IN-PART Urquijo's motion to dismiss the FAC. (D.I. 92) Specifically, I recommend that the court GRANT the motion to dismiss Counts I, II, III, IV, and V and DENY the motion to dismiss Counts VI, VII, and IX as to Urquijo;

3. GRANT the Beauty Fund's motion to dismiss the FAC, (D.I. 90); and

4. DISMISS without prejudice the Non-Moving Entity Defendants under Federal Rules of Civil Procedure 4 and 12(b)(5).

For ease of reference, below is a chart identifying the recommended disposition for each cause of action asserted against the Movants:

26

|  | KRASOVEC & ZIV | URQUIJO | BEAUTY FUND |
|---|---|---|---|
| Count I: § 10(b) Securities Fraud | GRANT motion to dismiss. | GRANT motion to dismiss. | GRANT motion to dismiss. |
| Count II: § 20(a) Control Person Liability | GRANT motion to dismiss. | GRANT motion to dismiss. | N/A |
| Count III: Delaware Securities Act | GRANT motion to dismiss. | GRANT motion to dismiss. | GRANT motion to dismiss. |
| Count IV: Fraud | GRANT motion to dismiss. | GRANT motion to dismiss. | GRANT motion to dismiss. |
| Count V: Civil Conspiracy | GRANT motion to dismiss | GRANT motion to dismiss. | GRANT motion to dismiss. |
| Count VI: Breach of Fiduciary Duty | DENY motion to dismiss. | DENY motion to dismiss. | N/A |
| Count VII: Aiding and Abetting Breach of Fiduciary Duty | DENY motion to dismiss. | DENY motion to dismiss. | N/A |
| Count VIII: Liability of a Purported Partner | DENY motion to dismiss. | N/A | N/A |
| Count IX: Unjust Enrichment | DENY motion to dismiss. | DENY motion to dismiss. | GRANT motion to dismiss. |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: August 7, 2026

_____
Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

28